Rev. 3/19

FILED
LODGED
RECEIVED / **MAIL**

APR 14 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY

DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

*Nani Love Buckingham #5020508*
*Plaintiff's full name and prisoner number*

Plaintiff,

v. ~~scribbled out~~

*Federal Bureau of*
*Prisons, et al. See attached*
*Defendant's/defendants' full name(s)*

Defendant(s).

Case No.   2:25-cv-00701-RSM-DWC
(leave blank – for court staff only)

**PRISONER CIVIL RIGHTS
COMPLAINT**

Jury Demand?
☑ Yes
☐ No

(If you cannot fit all of the defendants' names in the space provided, please write "see attached" in the space above and attach additional sheets of paper, as necessary, with the full list of names. The names listed here must be identical to those in Section II. Do not include addresses here. **Individuals whose names are not included in this section will not be considered defendants in this action.**)

## WARNINGS

1.     Do not use this form if you are challenging the validity of your criminal conviction or your criminal sentence. If you are challenging your conviction or sentence, or if you are seeking restoration of good-time credits that would shorten your sentence, you must file a Petition for Writ of Habeas Corpus. If you use this form to challenge your conviction or sentence, you risk having your claim dismissed. Separate forms are available for filing a habeas petition.

2.     Under the Prison Litigation Reform Act ("PLRA"), you are required to exhaust all remedies in your institution's grievance system that are available to you before filing suit. This generally means that you must file a grievance and, if it is denied, appeal it through all available levels of review. Your case may be dismissed if you fail to exhaust administrative remedies, unless the administrative grievance process was not "available" to you within the meaning of the PLRA. You are not required to plead or show that you have exhausted your claim in this complaint.

3.      Please review your complaint carefully before filing.  If your case is dismissed, it may affect your ability to file future civil actions while incarcerated without prepaying the full filing fee.  Under the PLRA, a prisoner who has had three or more civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim cannot file a new action without first paying the full filing fee, unless the prisoner is in imminent danger of serious bodily injury.

4.      Under Federal Rule of Civil Procedure 5.2, papers filed with the court, including exhibits or attachments to a complaint, may not contain certain information, which must be modified as follows:

Do not include:
- a full social security number
- a full birth date
- the full name of a minor
- a complete financial account number

Instead, use:
→ the last four digits
→ the birth year
→ the minor's initials
→ the last four digits

5.      You may, but do not need to, send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.  Any documents you submit *must relate directly to the claims you raise in this lawsuit.*  They will become part of the court record and *will not be returned to you.*

---

## I.    PLAINTIFF INFORMATION

Buckingham, Nani, L
Name (Last, First, MI)

Buckingham, Brian, P
Aliases/Former Names

50205086
Prisoner ID #

Federal Detention Center Seatac
Place of Detention

PO Box 13900
Institutional Address

King, Seattle            WA            98198
County, City          State          Zip Code

*Indicate your status:*

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee

☐  Convicted and sentenced state prisoner
☑  Convicted and sentenced federal prisoner

## II.    DEFENDANT INFORMATION

*Please list the following information for each defendant.  If the correct information is not provided, it could delay or prevent service of the complaint.  Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page of the complaint. Attach additional sheets of paper as necessary.*

Defendant 1:    ~~Trump, Donald~~  Federal Bureau of Prisons
Name (Last, First)

~~President, USA~~
Current Job Title

~~White House 1600 Pennsylvania Ave~~ 320 First Street, N.W.  ~~NW~~
Current Work Address                                                20534

Washington        DC                    ~~250 20500~~
County, City                State                Zip Code

Defendant 2:    ~~Bondi, Pam~~ Doe 10, John
Name (Last, First)

Director, Department of Justice
Current Job Title

~~Unknown 950~~ 950 Pennsylvania Avenue N.W.
Current Work Address

Washington        DC            20530
~~Unknown~~
County, City        State            Zip Code

Defendant 3:    Doe, John
Name (Last, First)

Director, Bureau of Prisons
Current Job Title

~~Unknown~~ 320 First Street, N.W.
Current Work Address

~~Unknown~~ Washington    DC        20534
County, City        State            Zip Code

See attached additional defendants        Page 3 of 9

Nani Love Buckingham Prisoner Civil Rights Complaint
Defendant Information Continued Page 1

FILED
LODGED
RECEIVED
MAIL

APR 14 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY
DEPUTY

Defendant 4  Doe$^2$, John
Medical Director, Bureau of Prisons
320 First Street, N.W.
Washington, DC 20534

Defendant 5  Cooper, A.
Warden, Federal Detention Center Seatac
Federal Detention Center 2425 South 200th Street,
Seatac  WA  98198

Defendant 6  Posalski
Health Services Administrator
Federal Detention Center 2425 South 200th Street
Seatac  WA  98198

Defendant 7  McGinnis
Clinical Director
Federal Detention Center 2425 South 200th Street
Seatac  WA  98198

Defendant 8  Bowlin
Associate Warden, Special Populations Supervisor
Federal Detention Center 2425 South 200th Street
Seatac  WA  98198

Defendant 9  Doe$^3$, John
US Marshal's Service (Director)

Defendant 10  ~~Federal Bureau of Prisons~~          Trump, Donald
~~320 First Street, N.W.~~                    President of USA
~~Washington, DC 20534~~                       1600 Pennsylvania Ave. N.W.
                                             Washington, DC 20500

Defendants Continued  Page 2

Defendant 11  Epplin, J.
National Policy and Program Coordinator, FBOP
320 First Street, N.W.
Washington, DC 20534

Defendant 12  Doe, John
Director, Women and Special Populations Branch
320 First Street, N.W.
Washington, DC 20534

Defendant 13  Doe 5, John
Director, Psychology Services Branch
320 First Street, NW
Washington, DC 20534

Defendant 14  Doe 6, John
Director, Health Services Division
320 First Street, NW
Washington, DC 20534

Defendant 15  Doe 7, John
Director, Designation and Sentencing Computation Center
320 First Street, NW
Washington, DC 20534

Defendant 16  Doe 8, John
Senior Deputy Assistant Director, Health Services
320 First Street, N.W.
Washington, DC 20534

Defendant 17  Doe 9, John
Director, Correctional Programs Division
320 First Street, NW
Washington, DC 20534

Defendant 18  United States of America
1600 Pennsylvania Avenue, NW
Washington, DC 20500

Defendants page 3

Defendant 19: Department of Justice
1600 Pennsylvania Avenue, NW
Washington, DC 20500

Defendant 20: McKone
Trust Fund Supervisor
Federal Detention Center 2425 South 200th St.
Seatac, WA 98198

Defendant 21: Bondi, Pam
Attorney General
1600 Pennsylvania Avenue NW
Washington, DC 20500

Defendant 22: Doe II, John
Secretary of Homeland Security
1600 Pennsylvania Avenue NW
Washington, DC 20500

Defendant 23: Haynice
Supervisor, Psychology Services
Federal Detention Center 2425 South 200th St
Seatac, WA 98198

Defendant 24: Transgender Executive Council (TEC)
950 Pennsylvania Avenue N.W.
Washington, DC 20534

Defendant 25: Pulley
TEC
950 Pennsylvania Avenue
Washington, DC 20534

Defendant 26: Rios-Marques, M
Regional Director FBOP
Western Regional Office
7338 Shoreline Drive
Stockton, CA 95219

— Defendant Roles:

10. Trump issued EO 14168. He creates policy directing the DOJ and FBOP.

2. Doe 10 oversees and creates policy directing the FBOP.

3. Doe 1 Runs the FBOP. Creates and implements FBOP policy and practices that directly impacts me.

4. Doe 2 Oversees and approves GD surgery, Medical oversite of the FBOP

5. Cooper runs the FDC Seatac, Responsible to ensure inmates' rights are protected, and approval of GD surgery referral, and approval of ~~FDC~~ accommodations for female clothing and grooming items.

6. Rosalski administrates all medical care at ~~FDC~~ FDC Seatac. Responsible to ensure inmates have access to necessary medical care, ensuring access to appropriately qualified clinicians, scheduling and triaging inmate requests to see a provider, Scheduling and coordinating outside referrals in a timely manner.

7. ~~McGinn~~ McGinnis is responsible for all medical care at FDC Seatac, including ensuring inmates receive appropriate treatment in a timely manner.

8. Bowlin is responsible for transgender issues at ~~FDC~~ Seatac

9. Doe 3 is ultimately responsible for ensuring the rights of inmates in their custody are protected.

1. ❶ FBOP is the agency that houses and provides services for incarcerated people.

11. Epplin is the main contact person for the TEC. She is responsible for GD surgery approval and all issues impacting transgender inmates in the FBOP. She ensures ~~FDC~~ FBOP facilities do not violate the rights of transgender inmates, TEC

12. Doe 4 Approves GD surgery. Creates and implements policy impacting transgender policy in the FBOP, TEC

13. Doe 5 Approves GD surgery, TEC

14. Doe 6 Approves GD surgery, TEC

15. Doe 7 Approves GD Surgery, TEC

16. Doe 8 Approves GD, ~~TEC~~ Surgery, TEC

17. Doe 9 Approves GD Surgery, ~~TEC~~ TEC

18. USA controls all agencies.

19. DOJ agency controls the FBOP policy

20. McKone is responsible for direct oversite of the FDC commissary.

21. Bondi directs DOJ policy, direct oversite of the DOJ, creates FBOP policy (and approves FBOP policies and procedures), controls GD treatment and accommodation options

22. Doe 11 responsible for implementing parts of EO regarding transgender inmates

23. Haynick directly oversees psychology services at FDC Seatac, including staff psychologists. Directs staff on GD treatment, including which gender pronouns to use for inmates.

24. TEC is the official decision making body for all transgender issues, including approving GD Surgery. Each member had the authority to grant my surgery and other prescribed treatments (hair removal). The TEC as an entity denied my surgery

25. Pullen had the authority to grant my surgery and hair removal and was aware of the harm I've been experiencing without it.

26. Rios-Marques had the authority to grant my surgery and consult with a GD specialist for evaluation and management of my GD, but he showed deliberate indifference by failing to do so.

### III.    STATEMENT OF CLAIM(S)

*In this section, you must explain what you believe each defendant did to violate your civil rights, and if you know, identify the federal statutory or constitutional right you believe was violated.*

*If you believe the defendant(s) violated your civil rights in more than one way, explain each violation under a different count.  For example, if you believe you received constitutionally inadequate medical care and your religious rights were substantially burdened, include one claim under "Count I" (i.e., medical) and the other claim under "Count II" (i.e., religion).*

*Number your paragraphs.  For example, in Count I, paragraphs should be numbered 1.1, 1.2, 1.3, etc., and in Count II, paragraphs should be numbered 2.1, 2.2, 2.3, etc.  The first two paragraphs of each Count have been numbered for you.*

*If you have more than three counts, attach additional pages and follow the same format for each count.*

*If you attach documents to support the facts of your claim(s), you __must__ specify which portion of the document(s) (i.e., page and paragraph) you are relying on to support the specific fact(s) of your claim(s).  If you do not specify the portion of the supporting document(s), the Court may disregard your document(s).*

### <u>COUNT I</u>

*Identify the first right you believe was violated and by whom:*

1.1 The above defendants have acted with deliberate indifference to my serious medical need violating my Eighth Amendment rights.

*State the __facts__ of your first claim below.  Include all the facts you consider important.  Be specific about dates, times, locations, and the names of the people involved.  Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong.  If you need additional space, you may attach extra sheets.*

1.2 I am a transgender female incarcerated in the Federal Bureau of Prisons (FBOP) since 2020. I have been diagnosed with gender dysphoria (GD), which is an undisputed serious medical condition. Campbell v. Kallas, 936 F.3d 536, 538 (7th Cir. 2019). I began socially transitioning in 2016, and I have been living fully

as female in FBOP since 2022 (I wear long, femaninely styled hair with female hair accessories; I wear female clothing; I wear makeup; I present myself as female; and staff and inmates treat me as female).

1.3  I have been medically transitioning with hormone replacement therapy (HRT) since 2023 and now have visible female secondary sex characteristics, including female breasts, which cannot be concealed from other inmates or staff. I am post transition.

1.4  I have a very severe form of GD. Since my incarceration in the FBOP starting in 2020, I have had over thirty Suicide Risk Assessment (SRA) crisis interventions by Psychology Services (PS), nine placements on suicide watch once in full restraints, three suicide attempts, two incidents of self-mutilation, and urges to perform self surgery to remove my genitalia.

1.5  The World Professional Association for Transgender Health Standards of Care 8 (WPATH SOC 8) are universally accepted guidelines for the treatment of GD. Edmo 935 F.3d at 769. In 2024, my FBOP health providers determined that my GD would not improve further with social female presentation and HRT alone, and they determined that my individualized treatment required surgical treatment, professional hair removal, and voice and communication therapy. See attached continuation page 1

*State with specificity the injury, harm, or damages you believe you suffered as a result of the events you described above in Count I. Continue to number your paragraphs.*

1.10
Denial of my medically necessary GD treatment is causing me to feel hopeless, and I am having increasing urges to kill myself or perform self-surgery on my genitalia. I am losing the resiliency I had to resist these urges. I feel like I am being tortured every day by the pain this is causing me.

    See attached continuation page 2

## COUNT II

*Identify the second right you believe was violated and by whom:*

2.1 The FBOP has violated my right under Title II of the ADA by denying me access to medically necessary care based on my GD ~~and Rehabilitation Act~~

*State the facts of your second claim below. Include all the facts you consider important. Be specific about dates, times, locations, and the names of the people involved. Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong. If you need additional space, you may attach extra sheets.*

2.2 I am a transgender female AIC in the FBOP ~~is~~ at Federal Detention Center (FDC) Seatac. I have been incarcerated here since 2020. I have been diagnosed with GD, a disability, am therefore protected by the ADA and RA. The defendants have denied me access to medically necessary care on the basis of my disability in deliberate indifference to my serious medical need despite the very high risk of irreparable harm.

2.3 See facts in count 1.
Generally, the same legal principles govern ADA and RA ~~claims~~ claims. They will be combined here.

~~2.4~~ See continuation pages

_____

_____

_____

_____

_____

_____

_____

*State with specificity the <u>injury, harm, or damages</u> you believe you suffered as a result of the events you described above in Count II.  Continue to number your paragraphs.*

My mental health, psychological well being, and my ability to function have been severely damaged. I am in constant pain, I feel like I'm being tortured, and I am very close to killing myself to make it stop.

### COUNT III

*Identify the third right you believe was violated and by whom:*

3.1 The defendants have denied me access to medically necessary care on the basis of my GD violating RA Section 504

*State the <u>facts</u> of your third claim below.  Include all the facts you consider important.  Be specific about dates, times, locations, and the names of the people involved.  Describe exactly what each specific defendant did or failed to do that caused you injury or violated your rights, and include any other facts that show why you believe what happened was wrong.  If you need additional space, you may attach extra sheets.*

3.2 I am a transgender female, with GD, AIC in the FBOP Federal Detention Center SeaTac. The defendants have been deliberately indifferent to my serious medical needs on the basis of my disability. They have denied my medically necessary care and accommodations,

solely on the basis of my disability.

3.3  Please see claims I and II For the facts of this claim.
See continuation pages

*State with specificity the underline{injury, harm, or damages} you believe you suffered as a result of the events you described above in Count III. Continue to number your paragraphs.*

— My mental health, psychological wellbeing, and my ability to function have been severely damaged. I'm in constant emotional pain, feel incredibly hopeless, and am on the verge of suicide because of this.

## IV.    RELIEF

*State exactly what you want the Court to do for you. For example, you may be seeking money damages from an individual defendant, you may want the Court to order a defendant to do something or to stop doing something, or you may want both kinds of relief. Make no legal arguments. Cite no cases or statutes.*

I want an emergency Temporary Restraining order and Preliminary injunction requiring the FBOP to resume my life-saving, medically necessary GD treatment and accommodations before I kill myself. See specific requests on continuation page. See Exhibit B (notes from my psychiatrist).

## V.    SIGNATURE

*By signing this complaint, you represent to the Court that you believe the facts alleged to be true to the best of your knowledge, that you believe those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.*

~~_____~~  4/9/25

Dated                                                    Plaintiff's Signature

I

Nari Love Buckingham    Prisoner Civil Rights Complaint

Count 1    Continued page 1

1.5 continued. These treatments were also indicated by the WPATH SoC 8 as my GP symptoms were still severe, including strong urges to remove my genitals (see attached electronic medical record (EMR)), Exhibit A high suicidality, depression and anxiety. (EMR 2)

1.6 On 1/20/2025, President Donald Trump, executive order (EO) issued 14168 "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." As a result of this, all of my referred GD treatments have been cancelled, and my social transitioning accommodations (female clothing and grooming items) have been taken away. This has The FBOP has stopped my individualized GD treatment, denying me access to an life-saving medically-necessary care and causing me serious, irreparable harm. As part of my GD treatment, I have been wearing female clothing and grooming items (e.g. makeup) for years, and this has been helpful at alleviating my GD to some extent.

1.7 Denial of my current individualized GD treatment is causing me to feel extremely hopeless, and I am having increasing urges to kill myself or cut off my genitalia (see EMR 3). I am losing the resiliance I had to overcome these urges

1.7 On 1/20/2025, Trump's EO 14168 mandates a categorical, across-the-board ban on GD treatment for adults in custody (AIC) in the FBOP, regardless of medical necessity, or the fact that they were already being provided such care for their health by FBOP clinicians and depend on such care for their health. It prohibits FBOP health care providers from evaluating and treating GD on a patient-centered individualized basis, according to their professional judgment following and generally accepted guidelines.

1.8 On 2/21/2025, the FBOP issued a memorandum implementing

I

Nani Love Buckingham ~~Prisoner Civil Rights Complaint~~

Count I Continued ~~page 7~~

1. ~~continued~~ EO 14168 entitled "Compliance with EO 14168." This specifically prohibits the purchase of "any items that align with transgender ideology"; prohibits granting requests for other accommodations to address GD such as "undergarments that do not align with an inmate's biological sex; and mandates that FBOP staff "must refer to individuals with pronouns that correspond to their biological sex."

1.9 On 2/28/2025, the FBOP issued a second memorandum entitled "EO 14168 Compliance," which states that no FBOP funds may be used for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite ~~gender~~ sex. A categorical ban on GD treatments is unconstitutional. "A blanket, categorical denial of medically indicated surgery is the paradigm of deliberate indifference." Colwell v. Bannister, 763 F. 3d 1060 (9th Cir. 2014).


Injury, harm, or damages continued

1.10 Continued: I have had multiple recent SRA crisis interventions by PS, and my FBOP Mental Health Care Level was recently increased from a 1 to a 2. This is being caused by denying me appropriate GD treatment.

1.11 My FBOP psychiatrist, Dr. Haven, MD, has had over thirty visits with me since I became incarcerated here five years ago and knows me very well. Doctor Haven's FBOP EMR clinical notes from my most recent visit on 2/26/2025 ~~indicates~~ indicates that taking away my GD treatment is worsening my GD, damaging my mental health, and risking my life. (See ~~EMR~~ Exhibit B). I am on ~~the~~ the verge of suicide. My desperation since ~~having~~ having my GD treatment taken away is increasing my compulsion to remove my own genitalia (see ~~EMR~~ SRA in response Exhibit A to my seeking help for self castration).

I

Nani Love Buckingham Prisoner Civil Rights Complaint
~~Count I Continued~~ Page 4

1.12 President Trump issued EO 14168 ~~and~~ despite knowing fully the harm it would cause to transgender inmates in the FBOP. I have been directly and irreparably harmed by his actions. This harm is ongoing and will continue unless the court grants a temporary restraining order and preliminary injunction granting my requested relief.

1.13 The DOJ Director, Bondi, is responsible for the FBOP. The FBOP Director, Doe[1], dictates FBOP policy directives, including the memoranda "Compliance with EO 14168" and "EO 14168 Compliance," which directed that my GD treatment and accommodations be immediately stopped and taken away. Doe[1] was fully aware of the irreparable harm it would cause transgender inmates. Warden Cooper, A.W Bowling, and HSA Posalski have denied many requests begging for help, despite being aware I was becoming increasingly suicidal.

# ~~Count~~ I

## Eighth Amendment Claim

1.14 "Deliberate indifference to ~~a~~ serious medical needs of prisoners" violates the Eighth Amendment. Estelle, 429 U.S. at 104. Because "society takes from prisoners the means to provide for their own needs," Brown, 563 U.S. at 510, the government has an "obligation to provide medical care for those whom it is punishing by incarceration," Estelle, 429 U.S. at 103.

1.15 To establish a claim of inadequate medical care, a prisoner must first "show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs can relate to "physical, dental and mental health." Hoptowit v. Ray, 682 F.2d 1237, ~~12~~ 1253 (9th Cir. 1982).

1.16 Gender dysphoria (GD) is a "serious ... medical condition" that causes "clinically significant distress"- ~~distress~~ that impairs or severely limits an individual's ability to function in a meaningful way. DSM-5 at 453, 458. I have provided evidence of my ~~GD~~ being a sufficiently serious medical need to implicate the Eighth Amendment. See Rosati v. Igbinoso, 791 F.3d 1037, 1039-40 (9th Cir. 2015); Kosilek, 774 F.3d at 86; De'lonta, 708 F.3d at 525; Battista v. Clarke, 645 F.3d 449, 452 (1st Cir. 2011); Allard v. Gomez, 9 F. App'x 793, 794 (9th Cir. 2001); White v. Farrier, 849 F.2d 322, 325 (8th Cir. 1988); Meriwether v. Faulkner, 821 F.2d 408, 412 (7th Cir. 1987); Norsworthy, 87 F. Supp. 3d at 1187; Konitzer v. Frank, 711 F. Supp. 2d 874, 905 (E.D. Wis. 2010); Edmo v. Corizon Inc, 935 F.3d 757 (9th Cir. 2019)

1.17 If, as here, a prisoner establishes a sufficiently serious medical need that prisoner must then "show the officials' response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment. Estelle, 429 U.S. at 105-06; see also Farmer v. Brennan, 511 U.S. 825, 835, 114 S.ct. 1970, 128 L. Ed. 2d 811 (1994)("ordinary lack of due care" is insufficient to establish an Eighth Amendment claim). In other words, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle

I

429 U.S. at 106. To "show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the prisoner's health." Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016).

1.18  Medical Necessity of Gender Affirming Surgery for My Individualized GD Treatment:

1.19  Given that it has clearly been established that my GD is a serious medical need requiring treatment, I will further prove the medical necessity of the gender-affirming surgery my provider requested on 8/13/24. "Gender dysphoria is a serious but treatable medical condition. Left untreated, however, it can ~~either~~ lead to debilitating distress, depression, impairment of function, substance use, self-surgery to alter one's genitals or secondary sex characteristics, self-injurious behaviors, and even suicide. Edmo v. Corizon, 935 F.3d 757 (9th Cir. 2019). The World Professional Association of Transgender Health Standards of Care (WPATH SoC) 8 "are the internationally recognized guidelines for the treatment of individuals with gender ~~dys~~ dysphoria." Edmo v. Idaho Dept. of Corr., 358 F. Supp. 3d 1103, 1111 (D. Idaho 2018). The majority of major medical and mental health groups in the United States, including the American Medical Association, American Psychiatric Association, American Psychological Association and the Endocrine Society recognize the WPATH SoC as representing the consensus of the medical and mental health communities regarding the appropriate treatment for transgender and gender dysphoric individuals. (Edmo).

1.20  The WPATH SoC identify the following evidence-based treatment options for GD: (1) "changes in gender ~~role~~ expression and role (which may involve living part time or full time in another gender role, consistent with one's gender identity); (2) "psychotherapy ~~(individual, couple, family, or group) for purposes such as exploring gender identity, role, and expression, addressing the negative impact of gender dysphoria and stigma on mental health, alleviating internalized transphobia, enhancing social and peer support, improving body image, or promoting resilience; hormone therapy to feminize or masculinize the body; one~~

I

(4) "Surgery to change primary and/or secondary sex characteristics (e.g. breast/chest external and/or internal genitalia, facial features, body contouring."

1.21  The WPATH SoC state that many individuals "find comfort with their gender identity, role and expression without surgery." For others however, "surgery is essential and medically necessary to alleviate their gender dysphoria." that group cannot achieve "relief from gender dysphoria ... without modification of their primary and/or secondary sex characteristics to establish greater congruence with their gender identity." See also Jae Sevelius & Valerie Jenness, Challenges and Opportunities for Gender-Affirming Health care for Transgender Women in Prison, 13 Int'l J. Prisoner Health 32, 36 (2017) ("Negative outcomes such as genital self-harm, including autocastration and autopenectomy, can arise when gender-affirming surgeries are delayed or denied."); George R. Brown & Everett McDuffie, Health Care Policies Addressing Transgender Inmates in Prison Systems in the United States, 15 J. Corr. Health Care 280, 287-88 (2009) (describing authors' first hand knowledge of completed autocastration and/or autopenectomy in six facilities in four states").

1.22  The medical and mental health communities agree that GCS is safe, effective, and medically necessary in appropriate circumstances. See, e.g., U.S. Dep't of Health & Human Servs., No. A-13-87, Decision No. 2576, (Dep't Appeals Bd. May 30, 2014); ~~De Lonta, 708 F. 3d at 525 ("Pursuant to the Standards of Care, after.~~

1.23  The WPATH SoC 8 criteria for ~~surgery~~ gender-affirming surgery include the following: (1) "gender incongruence is marked and sustained; (2) meets diagnostic criteria for gender incongruence prior to gender-affirming surgical interventions in regions where a diagnosis is necessary to access health care; (3) demonstrates the capacity to consent for the specific ~~surgical intervention~~ gender-affirming surgical intervention; ~~as reproduction and the have explored reproductive options; (4)~~ (4) understands the effects of gender-affirming surgical intervention on reproduction and they have explored reproductive options; (5) other possible causes ~~of~~ apparent gender incongruence have been identified and excluded; (6) mental health and physical ~~health~~ conditions that could negatively impact the outcome of gender-affirming surgical intervention have been assessed, with risks and benefits have been discussed; (7) stable on their gender-affirming hormonal treatment regime (which may include at least 6 months of hormone treatment or longer period if required to achieve the ~~de~~

I

desired surgical result, unless hormone therapy is either not desired or medically contraindicated).

24. Regarding criteria six, the WPATH SOC8 provide that coexisting medical or mental health concerns unrelated to the person's gender dysphoria do not necessarily preclude surgery. But those concerns should be managed prior to, or concurrent with, treatment of a person's gender dysphoria. Coexisting medical or mental health issues resulting from a person's gender dysphoria are not an impediment under the fourth criteria. Note my psychiatrist, Dr Itwen, notes "She had been stable with gradual progress in gender transition. Recent policy changes are detrimental to her mental health and have increased suicide ideation. Exhibit B page 2 paragraph 4 clinical encounter 2/26/25.

25. WPATH SOC8 chapter 11 provides recommendations specifically for prisons. Statement 11.1 "we recommend health care professionals responsible for providing gender-affirming care in institutions (or associated with institutions) (or associated with institutions or agencies) recognize the entire list of recommendations of the SOC-8 apply equally to TGD people living in institutions." WPATH SOC8 states "If the assigned health care providers lack the expertise to assess and/or treat gender diverse persons under their charge, outside consultations should be sought from professionals with expertise in the provision of gender-affirming care health care. Brömdal, A., Clark, K.A., Hughto, J., DeBattista, J., Phillips, T.M., Mullens, A.B., Gow, J., & Daken, K. (2019) Whole-incarceration-setting approaches to supporting and upholding the rights of incarcerated transgender people. The International Journal of Transgenderism, 2020, 341-350; Sevelius, J., & Jenness, V. (2017) Challenges and opportunities for gender-affirming healthcare for transgender women in prison, International J. of Prisoner Health. WPATH SOC8 Note Exhibit R & G (1 was referred for gender affirming surgery 8/13/24). "The consequences of abrupt withdrawal of hormones... include a significant likelihood of negative outcomes outcomes (Brown, 2010; Soundy and fields v. Frank, 2011) such as surgical self treatment by autocastration, depressed mood, increased gender dysphoria, and/or suicidality (Brown, 2010; Maruri, 2011)" WPATH SOC 8. Statement 11.4 states "we recommend staff and professionals charged with providing health care to TGD individuals living in institutions recommend and support gender-affirming surgical treatments in accordance with SOC-8 when sought by the individual, without undue delay."

I

WPATA SOC 8 States "the consequences of denial or lack of access to gender-affirming surgeries for residents residing in institutions who cannot access such care outside of their institutions may be serious, including substantial worsening of gender dysphoria symptoms, depression, anxiety, suicidality, and the possibility of surgical self-treatment (e.g., autocastration or autopenectomy; Brown, 2010; Edmo v. Idaho Department of Corrections, 2020; Maruri, 2011)." Note: The TEC denied my surgery on 10/11/24, and Warden Cooper denied my surgery via memo on 3/4/25 ~~3/4/25~~. Regarding social transition in present, the WPATA SOC ~8, 107, States "to allow for expressing gender identity, these recommendations (11.5) include being allowed to wear gender congruent clothing and hairstyles, to obtain and use gender-appropriate hygiene and grooming products, ... and to be addressed by a pronoun consistent to one's identity. These elements of gender expression and social transition, individually or collectively as indicated by the individuals needs, reduce gender dysphoria/incongruence, depression, anxiety, self-harm ideation and behavior, suicidal ideation and attempts (Russell et al., 2018)."

¶.26 Edmo v. Corizon finds "the broad medical consensus in the area of ~~of~~ transgender health care requires providers to individually diagnose, assess, and treat individuals' gender dysphoria, including for those individuals in institutional environments. Treatment can and should include GCS when medically necessary. Failure to allow an appropriate treatment plan can expose transgender individuals to a serious risk of psychological and physical harm." Note: Exhibit I, Dr. McGinnis fails to change treatment plan despite acknowledging increasing suicidality and ineffectiveness of current HRT; Exhibits A, B, D, E, F, J, J, ~~L~~

¶.27 ~~My Individual Treatment~~ My Individualized GD Treatment:

¶.28 I am a transgender female in FBOP custody since June, 2020. My sex assigned at birth was male, but I identify as female. I am serving a 21-year sentence. I viewed myself as female and began growing my hair out ~~to~~ ten years ago.

¶.29 Due to fear for my safety, I did not initially notify the FBOP. My GD was worsening, ~~suicidal~~ and after attempting suicide multiple times

I

and being subjected to frequent crisis intervention suicide Risk Assessments by FBOP psychologists, in 2023 I notified the FBOP that I was transgender so I could get help for treating my GD. I had been living as female in my gender expression since 2022, and upon becoming eligible for transgender accommodations in 2023, I have been wearing female underwear, jumpers, and makeup, and have been using female pronouns. This helped some.

.30 In 2024, I changed my legal name to Nani Love Buckingham and have submitted a request to change my birth certificate to female.

.31 I began HRT to medically transition in 2023, and I have been continuously compliant with my treatment since then. HRT has provided some help with my GD (Exhibit B), I now have female secondary sex characteristics, e.g. female breasts, and have reached the maximum benefit possible with HRT. My GD is still severe.

.32 Despite receiving some benefit from HRT, I still have severe GD, including strong urges to suicide or remove my testicles, extreme hopelessness and dispair, and debilitating depression and anxiety.

.33 Since becoming incarcerated in the FBOP in 2020, I have worked closely with my FBOP psychiatrist, Dr. Haven, to stabilize my mental health. My co-occurring mental health problems were stabilized. See Exhibit D (Dr. Haven clinical note).

~~On 3/26/24, FBOP provider Dr. Keverino-Flores, then clinical director,~~
~~referred me to a GD specialist to evaluate and manage my~~
~~GD treatment because he believed I could not receive appropriate~~
~~treatment from current FBOP providers due to their lack of~~
~~GD experience and understanding (Exhibit M).~~

~~My consult was approved, but despite many requests to~~
~~Warden Cooper, AW Bowlin, HSA Posalski, and Clinical Director~~
~~McGinnis, my consult was never scheduled.~~

~~On 3/26/24, Dr. Day ordered follow up labs for 6/24/24,~~
~~9/26/24, and 12/26/24 per FBOP clinical guidance and WPATH~~
~~SOC 8 recommendations for HRT. Despite many requests to~~
~~Cooper, Bowlin, Posalski, and McGinnis, pleading for labs and a~~
~~follow-up visit to address severe GD problems, I was refused~~
~~Timeline.~~

I

1.34 Prior to my incarceration in 2020, ~~the~~ symptoms of my GD were steadily worsening. In 2018, I lost my job as director of a project to ~~create~~ create a community-driven, tribal centric behavioral health system for the prevention, treatment and recovery ~~of~~ from substance abuse, mental illness, and related problems. Due to increasing internalized transphobia and GD, I had a complete mental breakdown. My parents took me in in 2018 because I had become unable to take care of my basic needs ~~and~~ In the years leading to my arrest, I developed extreme anxiety and depression, I didn't leave my room for two years except for medical emergencies. During this time, my GD was so severe that I attempted suicide several times, began self-medicating with alcohol so my mental pain would go away, and I was committed to a mental hospital three times. I was growing my hair out and expressing myself as female ~~the~~, but this was insufficient to treat my GD. ~~my suicide attempt I arrived~~ ~~at the state, and I was committed to suicide watch for~~ ~~nine times for more than thirty days.~~

1.35 Since my incarceration at FDC Seatac starting in 2020, My severe GD has caused thirty five suicide Risk Assessments by FBOP psychologists, ~~the ops~~ I was committed to suicide watch nine times, including once in full ~~ons~~ hand and leg restraints, three suicide attempts, and three incidents of self mutilation. I have very strong urges to kill myself or remove my genitals so I can be more feminine, and try to get relief from the torture I am subjected to every waking hour of every day. I can't look at myself or think about how I look without intense feelings of anxiety, disgust, hopelessness and despair. Despite achieving maximum benefits from living fully as female, psychotherapy psychiatric treatment, and HRT, my GD remained severe and life threatening.

1.36 On 8/13/24, I was evaluated by an FBOP ~~and I~~ medical provider. She determined my GD was life threatening and the only treatment that would help was gender affirming surgery, which was also required according to the WPATH SOC8, and she prescribed this for me at that time. Exhibit G.

I

~~On 3/26/24, I was evaluated for my GD with my treating FBOP provider, I was evaluated for My GD by the then Clinical Director, doctor Severino Flores.~~

1.37 Despite overwhelming evidence of active suicidality, severe mental distress, and the fact that my HRT was insufficient to treat my GD, Dr. McGinnis has ~~failed to~~ no refused to change my treatment plan or ensure that I had access to a provider competent in treating GD ("Dr. McGinnis told me "I've never ~~been~~ treated GD before"). Pozalski has continued to refuse to schedule my 3/26/24 approved referral ~~that~~ with an outside GD specialist for evaluation and management of my GD, he has refused to schedule my other GD treatments I was referred and approved for (voice and communication ~~the~~ speech therapy and professional facial hair removal), and has refused to allow me to see a provider since my visit with Dr. McGinnis on 12/26/24 (where Dr. McGinnis refused to change my GD treatment) despite knowing of my worsening GD, increasing suicidality and high risk for self-castration.

1.38 Unlike with Edmo, where FBOP providers did not believe GCS was necessary, my FBOP provider followed WPATH SOC 8 and ~~of~~ FBOP clinical guidance and did refer me for surgery. ~~Nobody~~ No provider has denied that my gender affirming surgery is medically necessary. The FBOP ~~has medical dire~~ TEC members have denied my surgery for no valid medical or penological reason despite being informed that I meet all requirements and ~~have been~~ that my GD has been increasingly life-threatening without surgery. ~~Every state~~ Members of the TEC responsible for ~~the~~ inappropriately denying my surgery include: Pullen, Epplin, Doe 4, Doe 5, Doe 6, Doe 7, Doe 8, Doe 9.

1.39 Similar to Edmo, Dr. McGinnis has demonstrated clear deliberate indifference to my serious medical needs. He knew at my 12/26/24 evaluation that my GD was severe and getting worse. He was aware that as recent as 12/23/24 I had required psychologist intervention for suicide. He knew I had clinically significant distress that was a risk to ~~the~~ my life and was impairing my ability to function. Despite all of this, Dr. McGinnis refused to change my treatment ~~plan~~ even though he knew it was ineffective and I would continue to get worse. He was aware of

I

of multiple subsequent suicide interventions and the ~~highest~~ escalating risk of self castration yet he failed to reevaluate and change my treatment. As found in _De'lonta_, 708 F.3d at 526 "just because officials have provided De'lonta with some treatment consistent with GID Standards of Care, it does not follow that they have necessarily provide her with constitutionally adeq treatment." He was aware oral form of estradiol was contraindicated due to age.

1.40 HSA Posalski has demonstrated ongoing deliberate indifference ~~s~~ to my serious medical needs despite knowing in detail that I have been suffering, that I have been getting progressively worse, and that I am at very high risk of suicide and/or self harm. It is his job to ensure I have access to care for my serious medical needs, and to ensure that off site consultations are scheduled in a timely manner, that there is adequate staff, that ~~orders labs are~~ labs are done as ordered, and to ensure I get to see a provider for urgent and emergency medical care.

1.41 AW Bowlin is responsible for transgender issues at FDC Seatac. He has been deliberately indifferent to my serious medical need because I approached him for help many times regarding inappropriate medical care for my GD, ~~inc~~ including timely labs and follow up visits, he knew that I was suicidal and getting worse due to ineffective GD treatment and he chose not to do his job and help make sure I had access to medically necessary care by liasing with Health Services and the Warden.

1.42 Warden Cooper has been deliberately indifferent to my serious medical needs by failing to ensure I had access to medically necessary care and appropriate GD treatment. He failed to ensure appropriate healthcare providers were available, and he failed to ensure my off site treatment consults were scheduled. I asked him for help many times and told him of the pain and suffering I have been enduring due to inappropriate GD treatment. On 3/4/25, Cooper sent me a memo stating my gender affirming surgery ~~to~~ had been cancelled and that there is now a blanket ban on all GD surgical treatments, ~~so~~ despite knowing this is life-saving medically necessary treatment for me. On 3/26/25, he gave me a memo stating I could no longer have ~~female~~ access to female clothing or grooming products despite knowing this has been part of my GD treatment for years and ~~xxxx~~ denying it to me would make my GD worse.

I

1.43  Mckone supervices Trust fund and runs the commisary. He has been deliberately indifferent to my serious medical needs by ~~not doing~~ denying my access to medically necessary items with full knowledge I have ~~GD~~ and depend on these items for my treatment.

re: Cooper, Pogalski, McGinnis: "Access to medical staff has no meaning if the medical staff is not competent to deal with the prisoner's problems." <u>Hoptowit v. Ray</u>, 682 F. 2d ~~1137~~ 1237, 1252-53 (9th Cir. 1982)

1.44  Cooper, Pogalski, McGinnis ~~and members of TEC~~ were deliberately indifferent to my serious medical needs by refusing to authorize GD treatment in accordance with WPATH SOC8, failing to use individualized medical judgment, and instead recited anti-trans discriminatory policy denying all forms of GD treatment.

1.45  Cooper, Pogalski, and McGinnis showed deliberate indifference to my serious medical needs by instructing FDC Seatac healthcare workers not to recommend GD treatments or ~~to~~ make referrals for GD specialist evaluations and to ignore their professional medical judgment regarding appropriate treatment under the WPATH SOC8

1.46  I am seeking injunctive relief and damages pursuant to Bivens ~~and~~ ~~such litigation~~ against defendants in their official and individual capacities.

1.47  The following defendants had the authority to ~~grant~~ grant my GD surgery but ~~to~~ refused to do so despite fully knowing the harm such denial would cause me: ® Clinical Director McGinnis, ~~HS~~ HSA Pogalski, Warden Cooper, all members of the TEC, and FBOP Medical Director DOE2, Regional Director Rios-Marquez.

1.48  My allegations are sufficient to state a claim. See <u>Edmo v. Corizon, Inc.</u>, 935 F. 3d 757 (9th Cir. 2019); <u>Rosati v. Igbinoso</u>, 791 F. 3d 1037 (9th Cir. 2015); <u>Kosilek v. Spencer</u>, 774 F. 3d 63, 91 (1st Cir. 2014); <u>De'lonta</u>, 708 F. 3d at 525-27; <u>Norsworthy v. Beard</u>, 87 F. Supp. 3d 1164, 2015 U.S. Dist. LEXIS 47799, 2015 WL 1478264, at 7-9 (N.D. Cal. Mar. 2015); <u>Soneeya v. Spencer</u>, 851 F. Supp. 2d 228, 245-52 (D. Mass. 2012); See also <u>Fields v. Smith</u>, 653 F. 3d 550, 554-59 (7th Cir. 2011) (affirming a district court's determination that a statute barring hormone treatment and gender reassignment surgery was unconstitutional).

I

~~Deliberate Indifference cont.~~

1.49 | Any failure I made to name the correct defendants arises directly from the lack of information provided to me. Despite the fact that I first requested gender affirming surgery over a year ago, it is not entirely clear to me who all has been involved in considering my request, what evidence they are reviewing, or why it has been denied ~~for so~~ or delayed so long. Until I am provided this information, it may not be possible to identify all proper defendants ~~or~~ or clarify my claims. I require discovery to determine the names and addresses of the named defendants, and information to determine who all ~~participated~~ in depriving ~~my constit~~ me of my constitutional rights by delaying or denying medical care for my G.D.

1.50 | My claim of deliberate indifference is even more clear than it was in ~~Edmo~~. ~~Edmo~~ involved disagreement of ~~medical necessity~~ medical necessity for Edmo's surgery, whereas here, there is no question or ~~no~~ disagreement on the fact that my surgery is medically necessary. My FBOP health care provider prescribed this surgery, and it is also required under the WPATH SOC8. I meet all FBOP and WPATH SOC8 criteria for surgery, and I have no medical or mental contraindications. ~~The TEC~~ Each member of the TEC, the FBOP, FBOP Medical Director, Warden Cooper, HSA Posalski ~~and Clinical~~ were deliberately indifferent when they failed to ~~approve~~ ~~and provide~~ provide my prescribed surgery and other prescribed treatments (Exhibit G1, 2).

I

1.51   Failure to respond to my serious medical needs;

1.52   TEC: The nine members of the TEC ~~received a~~ were thoroughly aware of the severe and life threatening GD symptoms I have been experiencing. On 10/11/24, the TEC reviewed my FBOP records, ~~the~~ and the 9/12/24 Memo from AW Bowlin, in which he provides details including the number of suicide risk assessments, suicide watch, self mutilation and my urges to remove my testicles. I sent them an electronic message (copout) on 7/28/24 in which I tell them I'm "suffering the ~~effects~~ effects of ongoing denial of medically necessary care, including gender-affirming care." and "I'm overwhelmed ~~by~~ anxiety, depression, and thoughts of self-harm." I said "I attribute all of this to being denied necessary care here at FDC Seatac." I sent a copout to the TEC ~~an extensive copout in resp~~ on 10/28/24 in response to being notified the TEC denied my surgery. I told them about my issues with suicide. On 10/28/24 Epplin confirmed she ~~co~~ gives my copouts to TEC members. On 12/19/25, I sent the TEC an extensive copout going into great detail about why I believed they needed to change their denial. ~~There~~ I described the harm denying my surgery was causing me.

1.53   12/20/25 The TEC, despite being explicitly and thoroughly aware of the severe, irreparable harm it would cause me, and with being fully aware I met all FBOP and WPATH SoC-8 Criteria, they upheld their denial of my surgery on the false claim that "your hormones are not on target." NOTE: They were informed of my current lab values and knew they were in fact "on ~~target~~."

1.54   Warden Cooper, AW Bowlin, HSA Posalski, and Clinical Director McGinnis were thoroughly and

~~not~~ intimately aware of the severe, irreperable harm
I was ~~so~~ experiencing ~~because~~ caused by lack of
appropriate GD treatment. ~~Warden Cooper failed to ensure I received care.~~

1.55 Warden Cooper was thoroughly and intimately aware
of the ongoing severe, irreperable harm I've been experiencing
due to lack of appropriate GD treatment. ~~scribbled out~~
~~scribbled out~~
~~scribbled out~~

I thoroughly explain the medical necessity of this
surgery and the ~~high risk of~~ irreperable harm
I am experiencing without it. I even state "I am fearful
that the strength I've had to stop myself from suicide
or self-harm will soon be weakened to the point I act
on these urges unless I get effective treatment for my GD."
He was aware of the increasing number of SRA's I've
been having, and he was aware my FBOP Mental Health
Care Level had recently increased because of this. I informed
him of the ways denying surgery were clearly violating
my constitutional rights ~~scribbled out~~. He denied, by
memo, my request to receive the outside consult I
was referred for to see an outside GD surgical specialist
and to see an outside GD treatment specialist for evaluation
and management of my GD, including my HRT. He was aware
my FBOP providers referred me for these consults on ~~this~~
8/13/24 and 3/16/24, respectively.

1.56 AW Bowlin is responsible for transgender issues at FDC Seatac.
He failed to respond to my pleas for help. He did not
ensure I had access to necessary care. He was very informed
of the severe, irreperable harm I've been experiencing.

1.57 HSA Posalski was fully aware of the severe, life threatening
problems I was having because my GD treatment wasn't

~~coth~~ working. I sent him ~~after~~ many copouts throughout the past year telling him that my GD treatment wasn't working and requesting to see a medical provider about ~~the~~ life-threatening problems with my medical GD ~~treat~~ treatment. As shown in the timeline of communication, I ~~am~~ begged and pleaded desperately for help. He refused to even allow me to see a provider ~~and~~ and has actively prevented me from access to any providers. As HSA, it is his responsibility to ensure I have access to urgent and emergency care. He failed to ensure my labs and referrals were processed and completed.

1.58  Clinical Director McGinnis, has failed to provide even the most basic GD treatment appropriately. He has failed to provide clinically indicated GD treatment or in accordance with FBOP and WPATH SOC-8 guidelines. He has been aware that my GD treatment isn't working and that my treatment has been unchanged since March, 2024, yet he refuses to address any GD-related medical problems. My timeline provides many specific examples.

1.59  United States, President Trump, Attorney General, Department of Justice Director, FBOP Director, FBOP Medical Director have all acted to deny me access to medically necessary GD treatment with full knowledge of the severe, irreparable harm it would cause.

~~1.60   Executive order #14168~~

I

~~Count 1   Page 12~~

~~1.3~~ 1.6 of BOP  Transgender/GD Policies.

The FBOP has published policies specifically addressing transgender and GD issues.

1.61 ~~1.3~~  Transgender Resource Guide, August, 2024 states the following. "It is the policy of the FBOP to provide gender affirming care and support to transgender people in its custody through individualized treatment, management, and/or accommodations, as appropriate." Introduction, 10. "FBOP is required to provide support and necessary treatment options," and it lists some treatment options available, including "Gender-affirming medical care, to include hormones and medical supplies, and gender confirmation Surgery."(5). "Employees interacting with transgender people in custody, must use... the pronouns associated with the individual's identified gender."(7). "Clothing and commissary items: Every attempt is made to allow individuals who identify as transgender to dress as their identified gender, regardless of the facility in which they are housed."(9). "Pat searches:... transgender women residing in men's institutions may request 'Female only' pat searches."(11). "Hormone Therapy:... If hormone therapy is medically appropriate for the transgender person, hormone treatment will be provided in accordance with FBOP policy, PS 6031.04 and FBOP Clinical Guidance, Gender-Affirming Care of Transgender and Gender Nonbinary Persons."(12)

I

Count 1 ~~page 13~~

.62/~~188~~ FBOP Clinical Guidance: Gender-Affirming Care of Transgender and Gender Nonbinary Persons, June, 2023. "Mental Health Concerns and Suicidality: As reported by Valentine, et al (2018), a higher prevalence of depression, anxiety, and suicidality is seen among TG adults compared to the general population. It has been suggested these elevated rates are linked to complex trauma, stigma, violence, and discrimination. A recent study by Baker, et al (2021) suggests that appropriate gender-affirming care, including medical and surgical care, can lesson psychiatric symptoms. Transgender adults with GD are at increased risk of suicidal ideation and suicide prior to initiation of their gender transition, regardless of the clinical endpoint of their transition - whether that endpoint is living as the psychologically identified gender, hormone therapy, cosmetic treatments, breast augmentation/removal, and/or gender-affirming surgery (Wolford-Clevenger et al 2018). For many individuals, the risk of suicide may decrease after receiving the appropriate, individualized treatment (Turben et al 2022)." (4). "Prison Rape Elimination Act (PREA): Per the national PREA Resource center, being transgender is a known risk factor for being sexually victimized in confinement settings. Consequently, PREA regulations and BOP Program Statements provide ways to protect the transgender population." (6). "Gender Dysphoria (GD) criteria:... Because untreated or undertreated GD is associated with increased morbidity and mortality

~~Count~~ ~~Page 17~~

~~138~~ ~~Continued~~:". (Jackson et al 2023), ~~for section~~ .. Without treatment, this population may experience higher rates of depression, anxiety, self-harm, and suicidality. Gender-affirming treatment supports TG people throughout their lifespan. Treatment modalities are designed to meet the individual's unique goals and may include social supports, mental health treatment, and medical treatment (including hormone therapy and surgery). These interventions may improve medical and psychological health, ~~and~~ increase social support, decrease GD, treat mental health comorbidities, and improve TG individuals' overall quality of life." (8). "Hormone Therapy: Eligibility, Goals, Overview. Hormone therapy is an important part of gender-affirming care." (11). "Minimally Invasive and Non-Invasive Gender Affirming Treatment Modalities: There are several minimally invasive and non-invasive gender-affirming treatment modalities available to TG patients such as voice and communication training, professional ~~xx~~ facial hair removal... Lesser invasive or ~~xxxxx~~ minor surgical procedures may be deemed medically necessary." (22). "Invasive and Complex Gender-Confirming Surgeries: Gender confirming surgery may be medically necessary and is considered on a case-by-case basis. The BOP strives to provide community standard medical and surgical care within the confines of its systems." (23). "While many individuals may not require any surgery, for some it is medically necessary to complete more than a single procedure to alleviate their gender dysphoria/incongruence." (23). I meet all criteria the F BOP lists for surgery (24-25). "Medical Evaluation:... the medical evaluation will

I

~~Count I  Page 5~~

~~1.38  continued~~ "... address both gender non-binary consolidation medical needs according to WPATH, as well as a general pre-surgical evaluation according to community standard."(20) "Appendix I, Transition Pathway for Transgender Patients: ... After 12 months of living in the identified gender at the gender-affirming institution or the original institution if the TG patient does not request transfer, compliance with continuous gender affirming hormone treatment and with documentation of persistent incongruence, the patient may benefit from lesser/non-invasive gender affirming treatment modalities or invasive/complex gender confirmation surgery."(33).

~~1.39~~ 1.63 Providing some GD treatment does not relieve the FBOP from abiding by my Eighth Amendment rights. "If prison officials knowingly refuse to provide medically necessary treatment - even if they provide other treatment consistent with the applicable standards of care - they fail to provide constitutionally adequate treatment." De'lonta, 708 F.3d at 526.7.

1.64  FBOP GD surgery protocol: FBOP Clinical Guidance Gender-Affirming Care of Transgender and Gender Nonbinary Persons describes the ~~require~~ requirements and process. ~~for eligible~~ "After 12 months of living in the identified gender at the gender-affirming institution or original institution if the TG patient does not request transfer, compliance with continuous gender affirming hormone treatment and with documentation of persistent gender incongruence, the patient may benefit from lesser/non-invasive gender affirming treatment modalities

I

out or invasive/complex gender confirmation surgery. For invasive/
complex gender confirmation surgery, the warden at
the respective institution will first request administrative
review by the TEC. The TEC determines whether
administrative criteria for gender confirming surgery is
met and refers the case to the Medical Director for
a medical review. The Medical Director will request review
by the Transgender Utilization Review Advisory Group
who will clinically refer the surgical packet referral packet
submitted by the Clinical Director. If the patient meets
the clinical criteria for surgery, a memo, with all
accompanying clinical supporting materials will be sent
to the Medical Director, who is the final authority in approving
a patient for referral to the gender confirming Surgeon."

1.65  NOTE: The FBOP has dissolved the TEC and the TURAG
in response to EO 14168. Despite the fact the TEC
members are not Clinicians or transgender or GD specialists,
they have the authority to deny prescribed medically necessary
surgery. The TEC has a history of denying such surgeries for no
medical or penological reasons. See Iglesias v. Federal Bureau of Prisons,
598 F. Supp. 3d 1089, 2022. There, the TEC and the FBOP violated preliminary
injunction to provide Iglesias with a surgical consultation for gender confirmation
surgery. The Court noted, "throughout this litigation the FBOP has employed
tactics similar to the game of Plinko on The Price is Right... Now BOP's tactics are
turning into a game of "Whack-a-mole." Indeed, it appeared the last of BOP's moles
had been "Whacked." Then another one 'popped-up'...

I

Count I ~~facts and citation~~; page ~~2~~ 3.

~~132~~ The Ninth Circuit court of appeas has found ~~the~~ We hold ~~that~~ where, as here, the record shows that the medically necessary treatment for a prisoner's gender dysphoria is gender confirmation surgery, and responsible prison officials deny such treatment with full awareness of the prisoner's suffering, those officials violate the Eighth Amendment's prohibition on cruel and unusual Punishment." Edmo v. Corizon, Inc. 2019, 935 F.3d 757 (9th Cir. Appeals).

1.66

~~133~~ My surgical, professional hair removal, and voice and communication therapy treatments were ordered by my FBOP health care provider on 8/13/2024. ~~See BMRH page 2 "New~~ Exhibit G1,2. ~~consultation requests"~~ I have asked many times for updates from Posalski on whether or not these have been scheduled since this time, and I was eagerly awaiting to be called out for these appointments. I've told my psychologist and psychiatrist many times that this surgery was "the light at the end of my very dark tunnel" that I was working towards, and that it was the only thing preventing me from killing myself. The only thing keeping me alive is hope that with apprspriate Gb treatment I won't feel like I am being tortured every hour of every day.

1.67

~~134~~ The WPATH SoC ~~recommends~~ Chapter 11:Institutional Environments; make the following recommendations that are relevant to my claim:(11.1) We recommend health care professionals responsible for providing gender-affirming care to individuals residing in

I

~~Count 1~~  ~~Facts and Citations~~ ~~Page 10~~
~~24 continued~~  institutions (or associated with institutions or agencies) recognize the entire list of recommendations of the SOC-8 apply equally to people living in institutions." (11.3) "We recommend medical professionals charged with prescribing and monitoring hormones for TGD individuals living in institutions who need gender-affirming hormone therapy do so without undue delay and in accordance with the SOC-8." (11.4) "We recommend staff and professionals charged with providing health care to TGD individuals living in institutions recommend and support gender-affirming surgical treatments in accordance with the SOC-8 when sought by the individual, without undue delay." (11.5) "We recommend administrators, health care professionals, and all others working in institutions charged with the responsibility of caring for TGD individuals allow those individuals who request appropriate clothing and grooming items to obtain such items concordant with their gender expression." (11.6) "We recommend all institutional staff address TGD individuals by their chosen names and pronouns at all times." (11.7) "We recommend institutional administrators, health care professionals, and other officials responsible for making housing decisions for TGD residents consider the individual's housing preference, gender identity and expression, and safety considerations rather than solely their anatomy or sex assigned at birth."

1.35—1.68 The WPATH SOC 8 states "the consequences of denial or lack of access to gender-affirming surgeries for residents of institutions who cannot access such care outside their institutions may be serious, including substantial worsening of gender

I

Count 1 ~~Facts and Citations~~ page II
~~I~~ ~~continued~~ dysphoria symptoms, depression, anxiety, suicidality, and the possibility of surgical self-treatment (e.g. autocastration or autopenectomy)." It further states "denial of medically necessary evaluations for and the provision of gender-affirming surgical treatments and necessary aftercare is inappropriate." Also, the WPATH SoC8 states that appropriate gender expression, including clothing and grooming products that align with an inmate's gender "reduces gender dysphoria, depression, anxiety, self-harm ideation and behavior, suicidal ideation and attempts."

I

1.69   Timeline of GD Events at FDC Seatac:

.70   ~~March, 2022:~~ December, 2023: I began HRT. Doctor Dy prescribed 4mg/d estradiol and 50mg spironolactone.

1.7   1/26/24 Suicide Risk Assessment (SRA) by Psychology Services (PS) Dr. James. Crisis intervention because I wanted to remove my testicles. I told Dr. James I wanted gender affirming surgery.

1.71   3/26/24 Clinical encounter with Dr. Dy. She increased my estradiol to 8mg/d, and spironolactone to 100 mg/d. Note: FBOP Clinical Guidance: Gender Affirming Care of Transgender and Gender Nonbinary Persons, June, 2023 states max. recommended estradiol dose 6mg/d. 3/26/24

Exhibit 10.72
—   3/26/24 Clinical encounter with new doctor, Dr. Yeverino-Flores, to assume my GD treatment because Dr. Dy was leaving. Doctor Yeverino-Flores said "I don't have any experience treating GD so I'm going to refer you to an outside specialist to evaluate and manage your GD." He ordered this referral the same day.

1.73   7/13/24 copout to HS "I should have had ~~follow~~ new labs to check my hormone levels and a follow up for HRT I recently started seven months ago." "I'm concerned that I should possibly require a specialty consult for transgender issues, including HRT (I was previously referred to ob/gyn specialist for this but nothing ever came of it)."
~~7/22~~ Note: FBOP Clinical Guidance recommends follow up labs every three months for the first year of HRT.

1.74   7/22/24 copout to HS requesting sex reassignment surgery, breast augmentation, facial feminization surgery, voice and communication therapy, and professional facial hair removal. I noted I had persistent GD since 2014, and I have been living fully as female since 2022

I

Timeline ~~Continu~~

~~cont.~~ (hair, make-up, wearing female jumpers, etc.).

I stated "I have been waiting for years for medically necessary gender-affirming care, and not being provided this treatment has been, and continues to be, extremely detrimental to my physical and mental health."

1.75  7/27/24 copout to HS stating that I have "untreated GD and I continue to be denied medically necessary care that continues to cause devastating physical and mental health damages." Sent to HS Clinical Director McGinnis, Health Services Administrator Posalski, Psychology Services Supervisor Haynick, Associate Warden of Programs and Special Populations (including trans inmates), ~~and~~ Bowlin, and Warden Cooper.

1.76  7/22/24 copout to Cooper requesting the same surgical treatments that I requested in 7/22/24 copout to HS. NOTE: This is out of order in the above timeline.

1.77  7/28/24 copout to Timethea Pullen; J. Epplin, National Policy and Program Coordinator; John Doe 1, Director, Women and Special Populations Branch; John Doe 2, Director, Psychology Services Branch; John Doe 3, Director, Health Services ~~Branch;~~ Division; John Doe 4, Director, Designation and Sentencing Computation Center (DSCC); John Doe 5, Senior Deputy Assistant Director, Reentry Services (team lead); John Doe 6, Director, Correctional Programs Division; and John Doe 7, Senior Deputy Assistant Director, Health Services. Note: These people comprise the FBOP Transgender Executive Council (TEC). The TEC is the agency's official decision making body on all issues affecting transgenders. These are administrative staff who are not clinicians, nor are they GD experts, yet the FBOP Transgendor

cont Offender Manual and FBOP Clinical Guidance
For Gender Affirming Care... both state that GD
Surgery referrals require TEC recommendation before
They can be screened by the FBOP Medical Director, John
Doe 8, for medical contraindications and Final approval.
I informed them that I was suffering from the effects
of ongoing denial of medically necessary care, including
gender-affirming care, by staff at FDC Seatac. I notified
them that I was being denied the specialist consult
for evaluation and management of my GD that I was
referred for on 3/26/24. I told them "I have many issues
caused by my untreated GD, including severe body image
and self-esteem problems... I'm overwhelmed by anxiety,
depression, and thoughts of self-harm. I attribute all of this
to being denied necessary care here at FDC Seatac."
I said "The issues I've told you about so far are directly
related to denial of access to important medically necessary
care as a transgender female incarcerated at FDC Seatac,
but the harm caused by this is complex and is interwoven
with other trauma I've experienced here as a transgender
female, including being raped and ongoing transphobic
treatment by staff. Please help me in any way you
are able to. My situation involves a clear violation of
my rights that have caused clear harm. The BOP policies
for providing gender-affirming care are very clear, and
my situation involves clear violation of policy that
has caused and continues to cause pain and suffering,
including the specific mental health problems and physical
health problems I've mentioned." NOTE: These people
are responsible for ensuring trans inmates in the FBOP
do not have our rights violated.

1.78 8/11/24 copout to the TEC letting them know I still hadn't heard back on any of my requests for help to Cooper and Bowlin. I also let them know "all administrative remedies I've tried to initiate have been stymied by staff at FDC seatac." ~~NOTE: I had made several attempts to get help for my GD, but none all of my requests were swept under the rug and were never acknowledged.~~

Exhibit G 1.79 8/13/24 clinical encounter with Smith, APRN/IIOP/IDC, a ~~tra~~ visiting provider, to evaluate and manage my GD. She determined that my HRT benefits had peaked, that I still had severe GD, and the next step should be surgical treatment because my GD was unlikely to improve without it. ~~ide dite~~ She ordered an ~~exd~~ off site transgender surgical specialist evaluation, ~~to~~ professional facial hair removal, and voice and communication speech therapy. She documented medical necessity for each, and she stated I met surgical criteria in the "Transgender Health clinical practice guidelines."

1.80 8/22/24 I made formal requests to Cooper and Bowlin for GD surgical treatment. NOTE: Getting referred for surgery made me happier than I had been in years. The future all of a sudden wasn't so dark. I eagerly researched FBOP policy for how GD surgery happens, but I found conflicting information. The FBOP Transgender Resource Guide, August 2024 stated I make a formal request to the AW, Bowlin, who then sends a memo to the TEC referring me for surgery. FBOP P§5290.08 Transgender Offender Manual states the Warden, Cooper, must submit the referral to the TEC. I requested from both, just to be safe. Also note: At this time I met all FBOP and WPATH SoC8 criteria for surgery.

1.81   9/12/24 copout to Bowlin asking for a copy of his referral memo. 9/12/24 Memo signed by Bowlin

1.82   10/23/24 Bowlin verbally informed me that the TEC had denied the surgery because my "hormones were too low." I was devastated, and I told Bowlin they needed to get current labs because I had been taking higher than the max dose since March and that my actual current levels would be on target. By this time, I had been requesting my labs for months, and Posalski and AW Bowlin kept telling me "we're working on it." NOTE: On 3/26/24 Dr. Dy ordered new lab requests into the EMR for 6/26/24, 9/26/24, and 12/26/24. The FBOP, FDC Seatac and HS (FBOP Director, John Doe 8; Warden Cooper; AW Bowlin; HSA Posalski; and Clinical Director McGinnis) failed to ensure my labs were drawn as medically necessary despite my many requests in which I informed them of the harm I was experiencing because they would not do the labs.

1.83   10/23/24 copout to the TEC requesting a copy of their recommendation

1.84   10/28/24 J. Epplin informed me the TEC reviewed my surgery referral on 10/11/24 and recommended "hormones not on target" and AIC Buckingham should "work with HS to maximize hormone levels." NOTE: At this point I was starting to think the FBOP GD surgery approval was a sham designed to deny medically necessary surgery. It didn't make sense to me that they would deny such important and life-saving treatment by using clearly outdated lab information (they reviewed 3/18/24 labs when they knew I had been on a very high dose since then for 7 months) to fabricate a non-medical reason to deny my surgery. NOTE: WPATA Soc 8 does NOT have a target hormone level requirement, and FBOP Gender-Affirming

~~out 10/24/24 conti~~ Care Clinical Guidance requirement states "compliance with continuous gender affirming hormone treatment."

The FBOP Transgender offender Manual, 11.13.22 (9) Surgery, states after one year of "compliance with mental health, medical" ~~FBOP~~ FBOP Clinical Guidance Medical Management of Transgender Inmates, December, 2016 (12) Gender-Affirming Surgery states "Criteria: In addition to the eligibility and readiness criteria for hormone therapy, general criteria for consideration of Surgery include at least 12 months of Successful use of hormone therapy, participation in psychotherapy as clinically indicated, full-time experience in their preferred gender, and consolidation of gender identity."

1.85  The BOP has a history of playing games to avoid allowing ~~some~~ inmates to obtain medically necessary GD surgery. For example, in the case of Iglesias v. FBOP, Iglesias was successful in getting a preliminary injunction on the basis of her deliberate indifference claim. To the great frustration of the Court, the FBO employed Numerous tactics to ~~avoid Iglesias~~ Prevent Iglesias from getting GD surgery, despite clear orders from the court to do so. The court found the FBOP violated its ~~or~~ order. The Court noted "throughout this litigation the BOP has employed tactics similar to the game of Plinko on The Price is Right," and "Now the BoP's tactics are turning into a game of "Whack-a-Mole". Indeed, it appeared the last of the BOP's Moles had been 'whacked." Then another one "popped-up" Iglesias v. Federal Bureau of Prisons, 598 F. Supp. 3d. 689. No. 19-cv-415-NJR, 2022. As the FBOP and the TEC did with Iglesias, I have no doubt that once ~~so~~ they could no longer justify denying surgery because of my hormone levels, then they would fabricate another, Non-medical, reason to deny it.

1.86  10/28/24 copout to Eppin stating "I believe that there has been an error and my current hormone levels are ~~%~~ on target."

"Since my most recent blood draw (9 months ago): estradiol increased 2mg (47 to 8mg (and) spironolactone increased 50mg to 150 mg." I requested that the TEC please reconsider when I get my current hormone levels checked." I also said "it would be incredibly unfair to deny me this because of inaccurate information. This is an absolutely essential and medically necessary component of my treatment for GD. As I've mentioned, I've struggled with major suicide and self-harm issues over my GD with my body appearance. This is the light at the end of my tunnel that helps me get through the day."

1.87  10/28/24 copout to Dr. Harris (my treating staff psychologist) due to feeling like my surgery would never happen- I said "This is so unfair and upsetting that I feel like I can't breath..... I really feel like cutting my testicles off because at least that would be some improvement if there's nothing else to look forward to."

1.88  10/28/24 copout to AW Bowlin "I believe there has been a factual error and my current hormone levels are on target. Please help."

1.89  10/28/24 Epplin says she will give the TEC my copouts.

1.90  11/12/24 Bowlin says "your request with the TEC was not approved at this time due to your hormone levels."

1.91  11/18/24 Labs were finally collected (five months overdue). Estradiol 78 pg/ml. ~~Spironolactone~~ Testosterone 9 ng/dl.

1.92  12/2/24 copout to Bowlin "Will you please help ensure that I am seen by a HS provider ASAP"

1.93  ~~[struck out text]~~ requested a follow up ~~[ ]~~ with HS provider for my GD treatment. Note: I should have had a follow up June, 2024

1.94  12/19/24 copout to TEC notifying them of updated labs and requesting they revise their recommendation accordingly. I made several considerations for the TEC.

1.95 cont "Please note that it is recommended against delaying or denying medically necessary gender affirming surgery for treatment of GD unless there is a specific reason medical reason to do so. There is no such medical reason contraindication for my FFS. I've met all WPATH and BOP criteria." "It has been clearly shown that denial, delay, or undertreatment of GD in transgender people increases morbidity and mortality, including suicide, self harm (including self surgery), depression, anxiety, and causes many other problems. I've struggled with these issues in the past, and inappropriately delaying this component of my medically care for my GD would cause me harm in many ways. I've already experienced a lot of distress caused by what I perceive to be an unfair and unnecessary delay in having access to this treatment. My overall mental health has continued to worsen."

1.96 12/20/24 Epplin response. "You will be reviewed again by the TEC in October, 2025. I would suggest you work with your institution staff to meet your gender affirming goals."

1.97 12/20/24 My reply. "What appeal options do I have for this? I don't believe that it is right or legal to unnecessarily deny me access to medically necessary gender affirming care for at least a year for no legitimate reason. There must be an appeal process short of a lawsuit for the TEC's wrongful denial of my right to timely access to medically necessary care, especially since the information used as justification for their decision was out of date and inaccurate." Note: At to this point

1.98 12/20/24 But copout to Bowlin forwarding my previous message to the TEC. "What appeal options do I have for this? I want my voice heard about this, but I don't know the most appropriate way to state the reasons I believe

~~et.~~ that this is unfair, unjust, illegal, and medically negligent."

1.99  12/21/24 copout to Posalski. "Why was ~~my~~ I never scheduled for my referral to have a transgender specialist evaluate and manage my gender affirming care?" "Dr. Yeverino-Flores submitted a new consultation request for this on 3/26/24, but it was never scheduled. Health Services here at FDC Seatac have continued to inappropriately and ineffectively manage treatment of my GD, ~~instead~~." I continue to have suicidal ideation, urges to self-harm (self-surgery), depression, anxiety, and other problems related to ineffective treatment of my GD... I am continuing to mentally deteriorate and need medical ~~body~~ help."

1.100  12/22/24 copout to Posalski and McGinnis. "As I mentioned to you when we spoke earlier, my mental health has been deteriorating due to ineffective treatment of my GD. During the past three months, my mental health care Level has increased, I've had increased suicide ideation and urge to treat with self-surgery (I've had multiple SRRs and contacts with Psychology), and my general mental health is worsening due to ineffectively treated GD. All of the problems with my gender affirming care are causing me severe distress every single day."

1.101  12/23/24 copout to PS. "I need help. I've been mentally declining due to all the problems trying to get effective treatment for my GD. It seems like one problem after another. I feel like I've been ~~treating~~ struggling to tread water dealing with my self hate over my appearance and my body. My thoughts of suicide and self-surgery are getting worse, I'm worried I'm being pushed to the point I won't be able to control these urges."

1.102  12/24/24 copout to HS and ~~&~~ sick call. "I've been having increasingly bad mental and emotional problems."

Exhibit J 1.103   12/23/24 SRA EMR. "She explained She is "getting tired" of not receiving the gender-affirming care She wants."

Exhibit K 1.104   12/26/24 Clinical Encounter with McGinnis for GD treatment. "Feelings of frustration and body discomfort in terms of lack of physical transformation of their body. AIC brought up perceived need for eventual breast augmentation and body sculpting because of the lack of desired effects of the hormone therapy." NOTE: McGinnis made no change to my GD treatment despite knowing the HRT wasn't working and I was suicidal.

1.105   1/6/2025 Copout to Posalski, McGinnis, Sick call. "I request a follow up because McGinnis made no changes on 12/26/24. I request a new treatment plan because HRT wasn't working.

1.106   1/15/25 copout to Bowlin notifying him HS wouldn't change my GD treatment despite the fact it ~~was currently ineffective~~ had been ineffective for over a year!!

1.107   1/21/25 CCARE Team meeting. ~~Fac~~ Cooper, AW Grass, AW Bowlin, Supervisory Attorney Cho, Chief Psychologist ~~Ha~~ Haynick, Acting Captain Alverado, Pharmacist McMullen, Staff psychologist Van Ness, Staff psychologist Harris. They met briefly to discuss me. They noted "Inmate Buckingham continues to request and inquire about increasing hormone ~~therapy~~ treatment for gender dysphoria, as well as consideration for gender affirming surgery." They said they had no concerns.

1.108   1/23/25 copout to HS, Posalski, McGinnis asking for help with my GD treatment. Still no change to treatment plan. I told them "I live in torture daily because of my male body and you are ~~not~~ not effectively treating me for this. It is treatable, it is medically necessary, it is life-saving, and it is my right. You are responsible to help me ~~for~~ with this. I've been told for months on end that you are 'working on it'"

1.109   1/23/25 copout to Cooper telling him I still need help, and talked

~~Cont.~~ about suicide concerns

1.110 1/24/25 spoke with Posalski. I told him "I need help." "I need treatment." "It's medically necessary. Posalski said "you aren't going to get what you want." Me "It's not 'what I want', it's BOP clinical guidance and WPATH guidelines." Me, "what can I do? Him "talk to the clinical director." Me "that's what I want. How can I speak with him?" Him "You can't. You aren't going to be able to see him until your next Chronic Care visit next year." Me "I'm having problems with my GD treatment that are urgent." Him "I just told you the outcome. We aren't changing anything." NOTE: Posalski's clinical training is as a paramedic. It is outside of his scope to make clinical decisions about treatment. He seems to be making it his personal mission to prevent me from getting ~~a~~ GD treatment.

1.111 1/24/25 copout to Posalski and McGinnis following up on our verbal conversation. I stated, "Mr. Posalski, you told me today that HS is refusing to see me to address my concerns regarding my ~~G~~ GD and gender affirming care... This is unacceptable and illegal. As I told you, I desperately need to speak with a clinical provider about my GD symptoms and treatment. I don't know why you are refusing to let me do this."

1.112 ~~1/24~~ 1/25/25 copout to Cooper and Bowlin forwarding my ~~so~~ above copout. I told them "HSA Posalski told me on Friday that HS' final word is that they ~~are~~ will not change anything or help me get effective treatment for my GD... Please help... I am very concerned that whatever resiliance I've had in the past to give me enough of a fight to keep living will soon be gone because I don't see any light at the end of the tunnel in getting the help I need."

1.113 1/27/25 copout to Posalski, McGinnis and SickCall stating "I am having problems with my medical gender transitioning and would like to be seen ASAP, please."

1.114    1/29/25 to copout to HS a requesting information about self surgical castration. At this point I lost all hope for any other type of surgical treatment. I was thinking about killing myself because I couldn't imagine living in my body with no option for other surgical treatment. I figured before I killed myself I should give self surgery a chance to see if it helped first.

1.115    1/29/25 SRA by Harris in response to my suicidality.
Exhibit A   Ms Harris noted "She stated she felt like she was being crushed;... Ms. Buckingham reported her intent to explore other avenues for receiving gender-affirming care, including performing self-castration... Ms. Buckingham affirmed her belief that a desire to self-castrate is not an act of self-harming behavior rather it would assist with her intent to transition to a woman."

1.116    1/31/25 copout to Cooper following up on a conversation I had with him and Ms. Taylor, a traveling HSA from Region, during which I stated Posalski was not letting me see a provider despite the fact I've been in crisis and suicidal due to ineffectively treated GD. Ms. Taylor said she would look into it. NOTE: I never received a follow up on this conversation."

1.117    1/31/25 Haynick told me she was arranging a meeting with Psychology and HS and me so I could get answers to my questions

1.118    2/1/25 FBOP posted a notice that in response to President Trump's Executive Order Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government # 16148 the FBOP was disbanding the TEC. I didn't know what this meant and I became extremely distressed.

1.119    2/1/25 copouts to Haynick, Bowlin and Cooper asking what EO 14168 means for me. I told them "I've already been mentally destabilizing due to problems getting the transgender care I need and this is making it worse."

1.120 2/4/25 copout to Posalski trying to advocate for myself. Here is some of what I told him: "Courts have determined that delaying to change individual treatment of GD when it isn't working is considered deliberate indifference of a serious medical need and places the individual with GD at serious risk to their wellbeing (Iglesias v. BOP staff). This has been determined to be a clear violation of the 8th amendment of the constitution, and BOP staff can be held responsible in your individual capacities. Courts have found that just because you provide some treatment consistent with WPATH SoC, it does not mean that they provide constitutionally adequate treatment (De'lonta). My GD treatment isn't working. I'm getting worse and suffer torture every single day. My GD hasn't improved with current treatment and it's been a year, so things clearly need to change. I think of suicide and self surgery daily and it's getting harder to control these urges. I'm directing this to you personally because several staff have told me that you seem to have a personal vendetta ~~against me~~ in making sure I can't see a provider for the GD treatment problems I'm having. Even my basic HRT has been inappropriately administered to me. In fact, my current treatment using oral estradiol is contraindicated by both FBOP clinical guidance and the WPATH due to my age (>40) putting me at high risk for life-threatening thromboembolic events. I should be using IM or transdermal (which I requested many times). I am respectfully notifying you and ~~putting you~~ requesting your help".

1.121 ~ Mid February commissary stopped allowing me to purchase female clothing and grooming items. This made me cry. Wearing female clothes and makeup help me feel more feminine and are an essential part of my GD treatment.



1.1⁊⁊ 3/26/25 Warden Cooper denied my request referencing
national policy in response to EO 14168 (female items).

1.12₃ 3/20/25 cop out to Cooper and Bowlin asking for more information
on FBOP changes in response to EO 14168 and letting them know
"all of the changes in BOP ~~policy~~ trans policy in response
to Trump's administration's anti-trans EOs have been causing
me a lot of distress and fear."

1.1⁊⁴ 4/1/25 Spoke with Durano ARNP at Pill Line. Told him I've been
needing to see someone for problems with my ~~GD~~ treatment
for months. I asked him how I can get help. He said Kite
Psasalski. I said "I have about a million times but he never answers."

Exhibit F 1.12₅ 4/1/25 cop out (kite) to Posolski pleading again for help.
Sent ~~to~~ McGinnis as well. "I really need help with my GD. It's been
~~a year~~ over a year since there have been any changes to my
GD treatment plan, and, as I've mentioned many times, over
the past year, ~~or~~ my current GD treatment isn't working.
My mental, emotional and psychological health are
~~worsening~~ continuing to worsen due to inappropriate
GD treatment. My thoughts and urges to suicide and
self castration continue to get worse, I'm feeling
increasingly sad, depressed and anxious, and I feel
physical pain every time I think about how my body
looks or I see myself in the mirror... My access to
appropriate and timely GD treatment is medically
necessary, it is life-saving, and it is my constitutional
right. According to universally accepted GD treatment
guidelines by the medical and mental health
communities (WPATH SOC-8), and as indicated by

~~cont.~~ by my 8/13/24 referral ordered by my FBOP provider in my medical record, surgical treatment is required and is the next step in my treatment. The WPATHSOC-8 and an abundance of scientific literature make it clear that my GD will not improve without this." It is both of your jobs to ensure that my serious medical conditions are timely and appropriately treated. It is your jobs to ensure that I am not denied life-saving medically necessary care. I am being irreperably harmed and my constitutional rights are being violated each and every day that I don't receive appropriate GD treatment. Please help me."

Exhibit D 1.126 — 3/26/25 Psychology EMR "Clinical Contact": Dr. Harris noted "<u>Mr. Buckingham endorsed experiencing suicidality</u>. He reported that "things are feeling more hopeless... the cons of living are starting to outweigh the pros".

xhibit E 1.127  3/26/25 SRA Harris EMR notes; ~~He step~~ "He has been having recurring thoughts of death and is 'trying to find a reason to live'." ~~the em~~ "He it still appt.

1.128    Note: Psychology EMR using male pronouns. This devastated me.

1.129  ~~3/4/25 Psychology EMR "Mr. Buckingham~~

3/4/25 1.130  ~~still has undergone prerequisites my surgery.)~~

Cooper denies surgery, ~~stating "In response to BOP 141668, individuals~~

1.131  1/21/25 Cooper memo denying my requests for ~~a~~ an outside consult with a transgender surgical specialist and a consult with an outside ~~team~~ GD specialist for evaluation and management of my GD care, including HRT. My request detailed medical necessity ~~#~~ ~~the,~~ and irreperable harm caused by denial.

1.132  3/26/25 Cooper memo denying my request for female ~~under~~ clothing and grooming items. My request detailed the medical necessity of these items and the irreperable harm that

cost I would be caused by denying me these items. I attached
WPATH SoC 8 (11.5) pg page 107 showing necessity and
harms including.

1.133 Exhibit B 2/24/25 Psychiatry visit with Dr. Haven.
He noted; "she hadn't been suicidal since... late 2022,
except she has been having more suicidal thoughts
as she sees loss of progress towards her gender transition.
Surgery has been delayed and may be cancelled due to EO.
She lost the ability to obtain make up from the commissary
due to new rules. She can't buy a bra. She questions now
if life is worth living. Thinks more about killing herself.
She notes less self-hate since making progress on her gender
transition. Her gender dysphoria was improving, but now is
worsening. Chronic suicidal ideation absent... (except
for resurgence in recent months due to with denial of
gender affirming care). She had been stable with gradual
progress in her gender transition. Recent policy changes are
detrimental to her mental health and have increased suicide
ideation"

1.134 3/6/25 Psychology EMR treatment plan. "Ms. Buckingham
has reported that having the ability to express her gender identity
through the use of make-up, hair accessories, clothing, and
hygiene products is necessary for her gender affirming care.
Interventions: Ms. Buckingham will continue to wear make-up,
hair accessories, and clothing that align with her self-identified
gender of female. Ms. Buckingham has indicated that being
afforded this opportunity has been helpful in alleviating her
distress regarding her physical appearance

exhibit 1.135 4/5/25 I forwarded my copout to Pssarli and McGinnis to Cooper
and Bowlin notifying them of my serious condition again
and begging for help to get appropriate GD treatment –

Case 2:25-cv-00701-RSM-DWC   Document 9   Filed 04/22/25   Page 56 of 78

Timeline Cont.

1.136 Exhibit J   12/26/24  McGinnis follow up email.
I tell McGinness I'm currently at high risk for suicide and/or
self-harm. Dr. McGinnis acknowledges I should be on
non-oral estradiol (because people over 40 are at risk
for life-threatening thromboembolic events on oral
estradiol); he consulted with a Regional level doctor
about me; he planned to consult for expert advice
about what to do for me. Note: I subsequently made
multiple requests to Posalski and McGinnis to change
my oral estradiol to injection (this form has no similar
risks) but they never changed my estradiol.

1.137 Exhibit L   4/5/25  I requested help from Cooper and
Bowlin because Posalski won't let me see a provider
and McGinnis continues to refuse to change my
treatment even though it hasn't been changed in
over a year, it's clearly not working, and I'm getting worse.

## ~~Count~~ Claim II
### Americans With Disabilities Act ~~(X~~(ADA)

~~2.1 To state a claim under the ADA, Title II, a plaintiff must~~

2.4 The ADA provides that "no qualified individual with a disability shall, by reason of the disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination ~~under any program or activity~~ by such entity." 42 U.S.C. 12132.

2.5 To state a claim under Title II of the ADA a plaintiff must allege: (1) she "is an individual with a disability"; (2) she "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities"; (3) she "was either excluded from participation in or receive the benefit of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity"; and (4)" such exclusion, denial of benefits, or discrimination was by reason of her disability." O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007).

2.6 Official capacity claims against individual defendants may be allowed. See Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003). Claims against agencies may also be allowed. Armstrong v. Schwarzenegger, 622 F.3d 1058, 1065 (9th Cir. 2010)

~~2.7 Gender dysphoria (GD) is not excluded from the under the ADA. See U.S. v. Watkins, 278~~

2.7 The Eleventh Amendment does not bar ADA suits against officials in their official capacities for injunctive relief or damages. See Kohn v. State Bar of California, 169 F.4th 693, 695-96 (9th Cir. 2024).

2.8 Gender dysphoria (GD) is not excluded under the ADA. See Williams v. Kincaid, 45 F.4th 759, 766 (4th Cir. 2022). Section 12211(b) does not explicitly exclude GD. See U.S. v. Watkins, 278 F.3d 961, 965 (9th Cir. 2002). Gender dysphoria is a disability. See ~~Kincaid~~ Williams.

2.9 See Claim III (RA) because the applicable provisions of the ADA and RA are co-extensive. See Count I timeline for more facts.

2.10 Injury, Harm, or Damages I have suffered because of Discrimination

2.11 Denying me medically necessary care and accommodations have caused me extensive psychological harm. See Exhibits A, B, D, E, F, H, L documenting my increased suicidality, damage to my mental health, and increased urges to self-castrate. Count I 1.10-11

II

2.12 | The summary of my ADA claim: (1) I have GD, and GD is a disability; (2) I am otherwise qualified to receive medically necessary care as an inmate in the FBOP; (3) my medically necessary care was denied because of my disability; (4) the only reason I was denied such care was because of my disability.

2.13 | Injury, harm and damages ~~that~~ I ~~was (am being)~~ received (am receiving. See 1.10H ~~(claim~~ Count I)

2.14 | Additional ~~discrimination~~ : See 1,6-8 ~~claim~~ Count I.

2.15 | Waiver of sovereign imunity in 5 U.S.C. 702: "the waiver of sovereign immunity ~~is~~ in 702 is not limited to ~~claims~~ brought under the APA and instead constitutes 'a broad, unqualified waiver for all non-monetary claims for relief against federal agencies'." ~~Agri~~ Navajo Nation v. Dep't of Interior, 876 F.3d 1144-72 (9th Cir 2017).

2.16 | See Count I 1-6-9: U.S.A. via President Trump and FBOP, FDC Seatac via Director Doe1 discrimination because of my GD. See Count I for details about FDC Seatac's discrimination against me via Warden Cooper, HSA Posalski and Clinical Director McGinnis

Count III

Rehabilitation Act

3.3    The Rehabilitation Act (RA) provides: "No otherwise qualified individual with a disability... shall, solely by reason of their disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal ~~funds~~ financial assistance." 29 U.S.C. 794(a). ~~Generally~~ To establish a claim, Plaintiffs ~~at Trees~~ must establish (1) they have a disability; (2) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity; (3) the exclusion, denial, or discrimination was by reason of their disability. Where Do We Go Berkley v. Cal. Dept of Transp., 32 F.4th 852, 860 (9th Cir 2022).

3.4 _ Gender dysphoria is a disability. ~~Doe v. Horne, No. cv 23~~ Williams v. Kincaid, 45 F.4th 759, 766 (4th Cir. 2022). I have been ~~dx~~ diagnosed with GD.

3.5 _ I was ~~excluded~~ denied medically necessary services and accommodations by the FBOP, FDC Seatac, Trustfund, and Health Services, and the United States based on my disability (GD).

3.6 _ On 1|20|25, President Trump issued Executive Order 14168 Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government. EO 14168 mandates an across-the-board ban of gender affirming health care and accommodations, regardless of medical necessity or irreparable harm that doing so would cause. Section 4(c) focuses on the FBOP, specifically prohibiting the use of federal funds for "any medical procedure, treatment, or drug for the purpose of confirming an inmate's appearance to that of the opposite sex." This categorically bans GD treatment for ~~inmates in the FBOP~~, me, regardless of medical necessity, or the fact that I was already being provided this care, or was in the process of receiving such care, ~~to by~~ by FBOP staff, and am depending on this care for my life. It prohibits FBOP health care providers from evaluating and treating GD on ~~an~~ a patient-centered ~~basis~~ individualized

III

basis, according to their professional judgment, and in a manner consistent with accepted community standards.

3.7   On 2/21/25, the DOJ and the FBOP issued a memorandum entitled "Compliance with [EO 14168]," which prohibits the purchase of "any items that align with transgender ideology; prohibits granting requests for other accommodations to address GD such as "undergarments that do not align with an inmate's biological sex", and mandates that FBOP staff "must refer individuals to individuals" with "pronouns that correspond to their biological sex." See count I timeline for discrimination facts.

3.8   On 2/28/25, the DOJ and FBOP issued another memorandum entitled "[EO] 14168 Compliance," which states that "consistent with EO 14168 ... no FBOP funds may be used for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." Both memoranda were directed to all FBOP CEOs.

3.9   The Trump administration has been begun instructing all FBOP officials to ignore previous enforcement of the 2002 Prison Rape Elimination Act (PREA) and to confiscate clothing, commissary, or other personal items "inconsistent" with their assigned sex at birth. See <https://www.npr.org/2025/02/21/nx-s1-5305282/trans-inmates-federal-prison-policy-transfers>. NOTE: John Does 1, 10, and 11 are responsible for these memoranda, and AG Bondi.

3.10   Warden Cooper took away my GD treatments and accommodations, because of GD ~~see my timeline clearly denying female clothing and~~ ~~granting trans accommodation 2/11 (GD treatment). 3/11/25 because I have GD~~ ~~never denying all medically necessary surgery for GD. Other inmates are still allowed~~

3.11   Health Services Administrator Posalski verbally informed me 3/5/25 that Health Services would not provide me medically necessary GD treatment due to a blanket ban on surgery specifically for GD.

3.12   Clinical Director McGinnis will not provide treatment for my GD, but he continues to provide care for non-GD needs.

III

3.13 Federal Bureau of Prisons is denying medically necessary treatment and accommodations for my GD, but allows it for other conditions

3.14 All members of the TEC and their respective agency programs are denying me medically necessary GD treatment

3.15 Trust Fund Supervisor has denied me from purchasing ~~mostly~~ female clothing and grooming products (GD treatment items) from the commissary, denying accommodations only for GD.

3.16 Haynick, Psychology Services Supervisor, is refusing to use female pronouns for me ~~is~~ in ~~letter~~ EMR and other communication (part of my GD treatment is being addressed as female).

3.17 All of the ~~above~~ are ~~being~~ specifically discriminating against me on the basis of my GD.

3.18 All named defendants have discriminated against me on the basis of my GD, and they have refused to provide ~~medically~~ ^and^ necessary treatment and accommodations for GD ~~while~~ despite ~~status~~ being available for other disabilities and medical conditions.

3.19 By implementing a blanket ban on GD treatments, HSA Posaiski, FDC Seatac Warden Cooper, FBOP Medical Director Doe2, ~~or~~ FDC Seatac Clinical Director McGinnis, FBOP, FBOP Director Doe1, DOJ, USAG Bondi the USA, and President Trump have been deliberately indifferent to ~~people~~ me because of my GD ~~Hoptowit v. Ray, 682~~ ~~F.2d 1237, 1253 (9th Cir. 1982)~~ Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014)( holding that a "blanket categorical denial of medically ~~necessary~~ indicated surgery solely on the basis of an administrative policy that one eye is good enough for prison inmates is the paradigm of deliberate indifference"); Rosati v. Igbinoso, 791 F.3d 1037, (9th Cir. 2015). Note: This applies to my Eighth Amendment claim



3.20 Injury, Harm, or Damages I Have Suffered:

3.21 Being denied medically necessary care and accommodations have caused ~~me~~ increased suicidality (Exhibit B1; D2; E2; F1; H1,2).

It has increased my urge to self-castrate (Exhibits A1; F1;H1; J6; L2) I feel hopeless, disgusted about my ~~body~~, and my anxiety and depression are debilitating. I feel like I'm being tortured.

See ~~~~ 1.10-11 (Count I)

~~Claim~~ IV
Count

Bivens          Fifth Amendment Equal Protection

~~to Davis, an adm~~

4.1 — The defendants terminated my medically necessary care and accommodations because of my gender ~~to Protect~~ They denied me equal protection of the law in violation of the Fifth Amendment. In Davis, an administrative assistant brought suit against a Congressman and alleged she terminated because of her ~~gender~~ gender. Davis, 442 U.S. at 230-31.

4.2 — The following defendants terminated and removed my medical treatments and accommodations because of my gender and GD: President Trump ordered US AG Bondi to do this to me; Bondi ordered FBOP Director Doe 1 to do this; Doe 1 ordered Warden Cooper to do this; Cooper ordered HSA Fogalski, Clinical Director McGinnis, and Trust Fund Supervisor to do this.

4.3 — These actions have harmed me in the following ways: (1) reduced my quality of life, (2) caused mental and physical pain and suffering, (3) limited my ability to function and care for my basic needs. See Claim I 1.10-11

4.4 — Specific things that were terminated because of my gender and GD include the following: (1) gender affirming surgery, (2) HRT, (3) my ability to purchase gender affirming female clothing, hygiene, and grooming items from the commissary, (4) female pat search exceptions, (5) Prison Rape Elimination Act (PREA) protections, including ~~the housing~~ consideration that I am a transgender female in prison designation and housing decisions, (6) use of gender affirming pronouns. ~~When compar~~

~~4.5 Injury, harm, or Damages I have experienced because of this:~~

4.5 Injury, Harm and Damages I received, am receiving, and will continue to receive without a TRO and Preliminary Injunction. See ~~claim~~ I 1.10-11 (Count I).

~~Claim~~ ~~~~ V
Count

## 14th Amendment Equal Protection Clause

5.1 To state an equal protection claim, a plaintiff must allege that the defendant "acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class, _Furnace v Sullivan_, 705 F.3d 1021, 1030 (9th Cir. 2013).

5.2 As I have shown by this point, Clinical Director McGinnis, HSA Bogalski, Warden Cooper, FBOP Medical Director Doe2, TEC, FBOP Director Doe1, USAG Bondi, and President Trump intentionally and purposefully discriminated against me solely because I am a transgender female with GD. They have taken away and denied all treatments and accommodations for me and the medically necessary treatment of, and accommodation for, my GD. Other cis-gender inmates receive medically necessary care, including surgery and accommodations, based on generally accepted guidelines by medical and mental health communities. This unequal treatment is intentional and purposeful discrimination against my GD and being a transgender female. This is sex-based discrimination against transgender people that is intentional and arbitrary.

5.3 The FBOP houses over two thousand transgender inmates, and the FBOP has been providing gender affirming care, including HRT and surgical GD treatments and accommodations, for many years. There is no valid penological reason to now deny such care to me. I require medically necessary, individualized care for my GD, including but not limited to HRT, surgical treatment, accommodations to purchase and use female clothing and grooming products, and to be referred to using female pronouns. These are all medically necessary according to WPATH SOC. There is no sufficient medical or penological reason for the FBOP and FDC Seatac and their staff to deny me medically necessary treatment and accommodations. My allegations have shown that I have a viable claim for violation of my right to equal protection under the fourteenth Amendment. Here, transgender people are explicitly classified based on sex and the law is facially neutral, but its administration or enforcement disproportionately affects one class of persons over another with discriminatory intent or animus.

5.4 Behaviors and policies created, implemented and enforced by all individual defendants irrationally differentiate between

V cont.

cisgender inmates, who get medically necessary care in accordance
with prevailing ~~current~~ standards of care, and transgender
inmates, who are not being allowed medically necessary care
according to prevailing standards of care. For example, prevailing
standards of care ~~for GD~~ (WPATH soc 8) for individual treatment
of my GD include the following medically necessary treatments:
surgery, HRT, use of female pronouns, access to female clothing,
hygiene and grooming products; but defendants have denied
me access, because I am transgender.

5.5  Injury, Harm and Damages caused by this.
     See ~~count~~ 1.10 - 1.11 (count I)

5.6  See count I for additional evidence of deliberate indifference to
     my serious medical needs by defendants 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12,
     13, 14, 15, 16, 17, 20, 25, 26.

~~Claim~~ VI
Court

Affordable Care Act (ACA) ~~@~~ 42 U.S.C. 18116
Section 1557

6.1 Section 1557 of the ACA provides: "An individual shall not, on the grounds prohibited under... the title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.)... be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, ~~including credits~~... The enforcement mechanisms provided for and available under such... title IX... shall apply for purposes of violations of this subsection." 42 U.S.C. 18116(a). Title IX prohibits discrimination "on the basis of sex" in education. 20 U.S.C 1681.

6.2 To make a claim under Title IX, I show that: (1) FBOP operates "a health program or activity, any part of which is receiving federal financial assistance"; (2) I was excluded from participation in, denied the benefits of, or is subjected to discrimination in the provision of that "health program or activity"; and (3) the latter occurred on ~~the~~ basis of sex. See Schwake v. Ariz. Bd. of Regents, 967 F.3d 940, 946 (9th Cir. 2020). At this point, I have demonstrated that: (1) FBOP operates a health program receiving federal financial assistance; (2) ~~I was denied the... I was excluded from participation in denied the benefits~~ I was "denied the benefits of" their health insurance plans or "subjected to discrimination" in the administration of their health program because I am transgender.

6.3 At this point, the facts I have stated are sufficient for a claim against Defendants under the ACA.

~~A claim under 706(1) "can only proceed where a plaintiff asserts that an agency failed to take a discrete action that it is [legally] required to take." Norton v. Utah Wilderness Alliance, 542 U.S. 55, 63-64, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004). Here, the FBOP and FDC Seatac failed to provide medically necessary GD surgery that was prescribed for me by on 8/13/24 by my FBOP medical provider. Because this prescribed and was/is medically necessary, these agencies are lawfully required to provide it. Similarly, these agencies are required to provide medically necessary HRT and accommodations to allow female clothing, hygiene and grooming products as required for my~~

VI Cont.

6.4
4.5

Damages, Harm, and Injury caused by this discrimination:
My mental health is being severely damaged. This has caused
overwhelming urges to kill my self or perform my own self-surgery.
My life is at risk because denied me medically necessary care
~~for the sole reason of~~ because of my disability. My OCD and
high risk of Suicide or self-surgery will only get worse without
appropriate treatment. See ~~Count I~~ 1.10-11 (Count I)

Claim VII
Count

Administrative Procedures Act (APA)

7.1 Under the Administrative Procedures Act (APA), a reviewing court shall hold unlawful and set aside agency actions when the court finds such actions to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power privilege, or immunity; or (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right..." 5 U.S.C. 706(2).

7.2 Further, pursuant to 5 U.S.C. 705, a court reviewing a final rule may stay the effective date of agency action pending conclusion of the review proceedings. In determining whether to stay the effective date of the final rule, the court applies the same four factors traditionally used to analyze a request for a preliminary injunction. The four factors to be shown by the plaintiff to obtain preliminary injunctive relief include: (1) the plaintiff is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public's interest. Factors (3) and (4) merge when the government is the opposing party. Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L. Ed. 2d 550 (2009).

7.3 The FBOP is an "agency" that is generally subject to the APA. Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1239 (10th Cir. 2005) cases cited; Kane v. Winn, 319 F. Supp. 2d 162, 210-211 (D. Mass. 2004). Courts have suggested that FBOP medical policies may be subject to APA review. Glaus v. Anderson, 408 F.3d 382, 387 (7th Cir. 2005) (suggesting plaintiff's remedy might be a "challenge to the BOP guidelines on treatment for hepatitis C"). They have also held or suggested that APA review may be available of such individual actions or decisions as denial of a course of medical treatment. Kane v. Winn, 319 F. Supp. 2d 162, 211 (D. Mass. 2004).

VII

APA cont.

7.4 The plaintiff here is substantially likely to succeed on the merits because her rights are clearly being violated under the Eighth Amendment and the RA.

7.5 The plaintiff will suffer irreparable injury without an injunction in the form of severe psychological harm, high risk for suicide or self castration, and ongoing violation of her constitutional rights. Exhibit B1-2.

7.6 The plaintiff's threatened injury substantially outweighs the injury the defendant will suffer under the injunction. The plaintiff is at very high risk of suicide, self harm and severe emotional pain. Exhibit, Exhibits A, B, D, E, F. Count I 6.10-1

7.7 The injunction will not be adverse to the public interest because it is in the public's highest interest to protect incarcerated individuals' rights.

7.8 The APA waives sovereign immunity in this claim, pursuant to 5 U.S.C. 702 at 1096: "An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party 5 U.S.C. 702. The Ninth Circuit has held that 702 serves as an unqualified waiver of sovereign immunity in actions seeking non-monetary relief against legal wrongs for which government agencies are accountable," including actions arising "out of the constitution." The Presbyterian Church, 820 F.2d at 523-25; Navajo Nation v. Dept of Interior, 876 F.3d 1144, 1170-72 (9th Cir. 2017)(reaffirming that the waiver of sovereign immunity in 702 is not limited to claims brought under the APA and instead constitutes "a broad, unqualified waiver for all non-monetary claims for relief against federal agencies").

7.9 Those ~~authorized to~~ who can authorize official action ~~to~~ to accommodate my relief include: Cooper Warden, HSA Padalski, Clinical Director McGinnis, FBOP Medical Director Doe 2, FBOP Director Doe 6

7.10 They unlawfully withheld GD surgery and appropriate GD treatments that were medically necessary and prescribed by my FBOP provider.

VII.

APA

~~ABA CRAFT~~

~~Individualized treatment for my GD~~

7.11  The APA generally limits judicial review to "Final agency action". 5 U.S.C 704. To be "Final" the agency action must be: (1) the "Consummation of the ~~agency's~~ agency's decision-making process," not merely a "tentative or ~~interlocutory~~ interlocutory" decision; and (2) an action "by which rights or obligations have been determined," or from which "legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L. Ed. 2d 281 (1997).

7.12  The FBOP and FDC Seatac's termination of GD treatment and accommodations are a "Final agency action." Here, I am requesting ~~to~~ for relief ~~ex~~ to compel agency action that was unlawfully ~~withheld~~ Withheld or unreasonably delayed. Specifically, I am requesting that the agencies here ~~resu~~ provide my GD surgery ~~sur~~ and resume medically necessary treatments and accommodations for my GD treatment. 5 U.S.C 706(1).

7.13  A claim under 706(1) "can only proceed where a plaintiff asserts that an agency failed to take a discrete action that it is [legally] required to take." Norton v. Utah Wilderness Alliance, 542 U.S. 55, 63-64, 124 S.Ct. 2373, 159 L. Ed. 2d 137 (2004). Here, the FBOP and FDC Seatac failed to provide the GD surgery prescribed by my FBOP provider on 8/13/24. Because this was prescribed and otherwise medically necessary according to the WPATH SOC8, these agencies are lawfully required to provide it. Similarly, these agencies are required to provide medically necessary HRT and accommodations to allow me access to female clothing, hygiene, and grooming products as required for my individualized GD treatment.

7.14  ~~&~~ I Injury, Harm, or Damages this Has Caused Me:

7.15  ~~Fecom~~ The FBOP and FDC Seatac's unlawful denial of medically necessary care has caused my GD to worsen. It has caused increased suicidality and urges to self castrate. It is causing extreme feelings of hopelessness, disgust at my body, and overwhelming anxiety. The harm I am experiencing is irreparable and will get worse without access to appropriate treatment. See Claim I 1.10-11.

7.15  Initiation of unlawful actions: See ~~Claim~~ Count I 1.6-1.13.

Count VIII

First Amendment

1   The defendants are violating my First Amendment right to freedom
    of expression by denying me access to female clothing, hygiene
    products, makeup, and other items available to female prisoners.
    <u>Renee v. Neal</u>, US.Dist. LEXIS 158533, 2018 WL 4468968(N.D. Ind.,
    Sept. 17, 2018); <u>Brown v. Kroll</u> No. 8:17CV294, 2018 WL 2363955, at (B. Neb. May 24, 2018)

2   The Turner Rule: Under the First Amendment, a prison regulation that
    stops you from speaking, expressing yourself, or interacting with
    other people must be reasonably related to a ~~valid penological~~
    a legitimate government interest." The court will consider whether
    the regulation leaves open other ways for you to express yourself,
    how the regulation impacts other prisoners and prison resources,
    and whether there are easy alternatives to the regulation that
    would not restrict your rights as much". Turner v. Safley, 482 U.S.
    78 (1987).

~~3   In Renee, the court found that a prison's denial to an incarcerated
    trans woman of access to feminine clothing was~~

3   Warden Cooper, ~~terminate~~ AW Bowler, and Trust Fund Supervisor
    Mckone each have terminated my ability to ~~f~~ access female
    clothing, hygiene, and grooming products. The FBOP has been allowing
    transgender females to purchase and wear these items for many
    years, including FDC Seatac, so there is clearly no legitimate
    penological interest. Female gender expression requires these items
    as indicated by WPATH SOC 8, ~~and this~~

4   Injury, Harm, and Damages this has caused: See Count I 1.10"11.

## Relief

1  A Temporary Restraining Order to have the FBOP and relevant defendants:

A) "Preserve the status quo" by resuming my GD treatment, including HRT, access to purchase female items on the commissary, use of female pronouns for me by staff

B) Schedule prescribed medically necessary surgical consult with a gender affirming surgeon who is qualified within ~~two~~ 2 weeks

2  An expedited preliminary injunction to include above relief as well as:

A) ~~Provide~~ The FBOP provide me with ongoing appropriate GD treatment in accordance with the WPATH SOC8

B) Approve and schedule ~~any recommended~~ surgery recommended by the gender affirming surgical specialist, if any, within 2 weeks of receiving such recommendation

3  Provide a permanent injunction for the above relief.

4  Money damages (nominal, compensatory, and punitive) from defendants in their official and individual capacities

5  Any additional relief the court deems just, proper and equitable

6  I am currently suffering severe, irreparable, ~~and~~ and highly life-threatening harm. See count I 1.10-11. Exhibits A, B, ~~C~~ D, E, F, H, I, L. This harm will continue without a TRO and preliminary injunction. ~~See~~ Exhibit B: My FBOP psychiatrist, Dr. Haven, notes "She has been ~~more suicidal~~ having more suicidal thoughts as she sees a loss of progress towards her gender transition. Surgery has been delayed and may be cancelled due to EO. She questions now if life is worth living." (1), and "recent policy changes are detrimental to her mental health and have increased suicidal ideation" (2).

7  Waiver of sovereign immunity does not apply to injunctive relief against federal agencies: Count II 2.16.



Vani Love Buckingham
50205086
Federal Detention Center
PO Box 13900
Seattle, WA 98198

Special
Legal Mail

FILED
LODGED
RECEIVED

MAIL

APR 14 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

Clerk, U.S. District Court
700 Stewart Street, Suite 2310
Seattle, WA 98101-1271

1 of 3

Nani Love Buckingham
50205086
Federal Detention Center
P.s Box 13900
Seattle, WA 98198



FILED
LODGED    MAIL
RECEIVED

APR 14 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                    DEPUTY

Special
Legal Mail

Clerk, U.S. District Court
700 Stewart Street, Suite ~~1330~~ 2310
Seattle, WA 98101-1271

2 of 3

Nani Love Buckingham
50205086
Federal Detention Center
PO Box 13900
Seattle, WA 98198

   

 

FILED
LODGED
RECEIVED
MAIL

APR 1 4 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

BY                    DEPUTY

Special
Legal Mail

Clerk, U.S. District Court

700 Stewart Street, Suite 2310

Seattle, WA 98101-1271

3 of 3