District Judge Ricardo S. Martinez
Magistrate Judge David W. Christel

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

NANI LOVE BUCKINGHAM f/n/a BRIAN P.
BUCKINGHAM,

                  Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, *et al.*,

                  Defendants.

Case No. 2:25-cv-00701-RSM-DWC

**AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. JURISDICTION AND VENUE ............................................................................. 2

III. PARTIES ............................................................................................................... 3

    A. Plaintiff ....................................................................................................... 3

    B. Defendants .................................................................................................. 3

IV. FACTUAL ALLEGATIONS ................................................................................. 4

    A. Gender dysphoria is a serious medical condition that can cause significant harm if left untreated. ................................................................ 4

    B. Before Executive Order 14168, BOP policies allowed individualized treatment for gender dysphoria. ....................................... 6

    C. After Executive Order 14168, BOP policies prohibit treatment for gender dysphoria. ...................................................................................... 8

    D. Before and after Executive Order 14168, Plaintiff did not receive medically necessary care. ....................................................................... 10

        1. Plaintiff's pre-EO 14168 care in custody .............................................. 10

        2. Plaintiff's post-EO 14168 care in custody ............................................ 15

V. CLAIMS FOR RELIEF ....................................................................................... 19

    COUNT ONE — Deprivation of Equal Protection of the Laws .................................. 19

    COUNT TWO — Failure to Provide Adequate Medical Treatment ........................... 21

    COUNT THREE — Disability Discrimination .......................................................... 24

    COUNT FOUR — Contrary to Constitutional Right, Power, Privilege, or Immunity .......................................................................................................... 25

    COUNT FIVE — Arbitrary and Capricious, Abuse of Discretion .............................. 26

VI. PRAYER FOR RELIEF ....................................................................................... 29

VII. DEMAND FOR JURY TRIAL ............................................................................ 29

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - i

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Plaintiff Nani Love Buckingham ("Ms. Buckingham" or "Plaintiff"), by and through her undersigned counsel, hereby files this Amended Complaint against Defendants Federal Bureau of Prisons ("BOP" or "Bureau"); Pamela J. Bondi, Attorney General of the United States; William K. Marshall III, Director of BOP; Dana R. DiGiacomo, Acting Assistant Director of the Reentry Services Division of BOP; Shane Salem, Assistant Director of the Correctional Programs Division of BOP; Christopher A. Bina, Assistant Director of the Health Services Division of BOP;  Andrew Cooper, Warden at Federal Detention Center SeaTac ("FDC SeaTac"); Kevin Posalski, Health Services Administrator at FDC SeaTac; and Robert McGinnis, Clinical Director at FDC SeaTac, (collectively "Defendants") and alleges, upon information and belief, as follows:

## I.    INTRODUCTION

1.    Ms. Buckingham is a transgender woman, currently incarcerated by BOP in FDC SeaTac in Seattle, Washington. She has been in BOP custody since June 2020. Ms. Buckingham is an enrolled member of the federally recognized Makah Tribe. Prior to her incarceration, Ms. Buckingham lived on the Makah Reservation in Neah Bay, Washington.

2.    Ms. Buckingham has been diagnosed with gender dysphoria, a condition that causes certain transgender people to suffer clinically significant distress because their sex designated at birth does not line up with their gender identity. Ms. Buckingham requires medically necessary care to treat her gender dysphoria and her psychological distress, which includes feelings of hopelessness, anxiety, and suicidal ideation.

3.    After she was diagnosed with gender dysphoria, Ms. Buckingham sought appropriate medical treatment, was prescribed hormonal therapy, began using female pronouns, and was given access to feminine-typical clothing, grooming, and hygiene products. A BOP provider placed a consult request for Ms. Buckingham to see a clinician who could further evaluate and manage her dysphoria. Another BOP medical provider also recommended that Ms. Buckingham receive consultations for gender-affirming surgery, voice and communication speech therapy, professional facial hair removal, and other medically necessary gender-affirming care as recommended. Though Ms. Buckingham continues to receive hormonal therapy, BOP has

denied her requests for consultations for further medically necessary gender-affirming care, no longer uses her preferred pronouns, and has denied her access to feminine-typical clothing, grooming, and hygiene products.

4.      In refusing her requests for consultations for gender-affirming surgery, voice and communication speech therapy, professional facial hair removal, and denying her access to feminine-typical clothing, grooming, and hygiene products, Defendants have denied Ms. Buckingham necessary medical care, causing life-threatening suffering and harm to Ms. Buckingham, including attempted suicide.

5.      Defendants have continued to deny Ms. Buckingham access to medically necessary care under Executive Order 14168 ("EO 14168" or the "Executive Order"),[1] which prohibits BOP from providing inmates access to gender affirming care.

6.      Through this action, Ms. Buckingham seeks the provision of medically necessary treatment for her gender dysphoria, including consulting with a gender dysphoria specialist and gender-affirming surgery.

7.      Ms. Buckingham seeks injunctive and declaratory relief and damages to remediate Defendants' violations of her constitutional and statutory rights.

## II.      JURISDICTION AND VENUE

8.      Plaintiff brings this suit under the Fifth and Eighth Amendments of the United States Constitution; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a; and the Administrative Procedures Act of 1946, 5 U.S.C. § 706(2)(A), (B). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

9.      This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and 65, and this Court's inherent equitable powers.

---

[1] Exec. Order No. 14168, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025).

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

10.    Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred in this District.

### III.    PARTIES

**A.    Plaintiff**

11.    Plaintiff Nani Love Buckingham[2] is a transgender adult woman. Ms. Buckingham is an enrolled member of the federally recognized Makah Tribe. She is a convicted and sentenced federal prisoner incarcerated in FDC SeaTac.

**B.    Defendants**

12.    The term "Defendants" refers to all Defendants named herein jointly and severally.

13.    Defendant Federal Bureau of Prisons is the government entity tasked with medical care for Ms. Buckingham while in custody.

14.    Defendant Pamela J. Bondi is the Attorney General of the United States. As the Attorney General, Ms. Bondi oversees the United States Department of Justice, including BOP. She is responsible for enforcing and implementing the Executive Order in federal prisons. She is sued in her official capacity.

15.    Defendant William K. Marshall III is the Director of BOP. As the Director of BOP, Mr. Marshall is responsible for enforcing and implementing the Executive Order in federal prisons. He is sued in his official capacity.

16.    Defendant Dana R. DiGiacomo is the Acting Assistant Director of the Reentry Services Division of BOP. She co-issued BOP's February 21, 2025, implementing memorandum titled "Compliance with Executive Order 'Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government.'" She is sued in her official capacity.

---

[2] Plaintiff is transgender and as such uses her chosen, legal name wherever possible. For identification purposes, Nani Love Buckingham was formerly known as Brian P. Buckingham. Her BOP Register Number is 50205086.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 3

17.     Defendant Shane Salem is the Assistant Director of the Correctional Programs Division of BOP. He co-issued BOP's February 21, 2025, implementing memorandum titled "Compliance with Executive Order 'Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government.'" He is sued in his official capacity.

18.     Defendant Christopher A. Bina is the Assistant Director of the Health Services Division of BOP. On February 28, 2025, he issued a memorandum titled "Executive Order 14168 Compliance." He is sued in his official capacity.

19.     Defendant Andrew Cooper is the Warden at FDC SeaTac. He is responsible for enforcing and implementing Executive Order 14168 ("EO 14168"), and the two BOP memoranda, issued on February 21, 2025, and February 28, 2025, that implement EO 14168 at FDC SeaTac, where Ms. Buckingham is in custody. He is sued in his official capacity.

20.     Defendant Kevin Posalski is the Health Services Administrator at FDC SeaTac. He is sued in his official capacity.

21.     Defendant Robert McGinnis is the Clinical Director at FDC SeaTac. He is sued in his official capacity.

## IV.     FACTUAL ALLEGATIONS

**A.     Gender dysphoria is a serious medical condition that can cause significant harm if left untreated.**

22.     BOP medical providers have diagnosed Ms. Buckingham with gender dysphoria.

23.     According to the American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders, Fifth Edition, Text Revision ("DSM-5-TR"), "gender dysphoria" is a condition that causes certain transgender people to suffer clinically significant distress because their sex designated at birth does not line up with their gender identity. To be diagnosed with gender dysphoria, the incongruence between one's birth sex and gender identity must have

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

persisted for at least six months and be accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning.[3]

24.     If left untreated, gender dysphoria causes serious physical and psychological harm. Symptoms of untreated gender dysphoria can include anxiety, depression, eating disorders, socially isolating behavior, self-harm, and suicidality.[4]

25.     The widely accepted treatment of gender dysphoria aims to resolve the distress associated with the incongruence between a transgender person's designated sex at birth and their gender identity by enabling the individual to live consistently with that identity. This can involve social transition (such as dressing, styling one's hair, and using a name and pronouns that match one's gender identity); hormone treatment to masculinize or feminize the body; and surgeries to change primary and/or secondary sex characteristics.[5]

26.     Clinical practice guidelines for the treatment of gender dysphoria in adults have been published by the World Professional Association for Transgender Health ("WPATH") and the Endocrine Society. WPATH is a professional organization of medical and mental health professionals focused on transgender health care that has issued these guidelines since 1979. The current version, the *Standards of Care for the Health of Transgender and Gender Diverse People*, Version 8 ("WPATH SOC 8"), was published in 2022.[6] The Endocrine Society, a professional association of endocrinologists, first issued guidelines for the treatment of gender dysphoria in 2011 and updated its guidelines in 2017.[7] Major U.S. medical and mental health associations—

---

[3] Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders, Text Rev. F64.0 (5th Ed. 2022).

[4] *Id.*

[5] *Id.*

[6] Eli Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People,* Version 8, 23 Int. J. Transgender Health S1, (2022), https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644.

[7] *See* Wylie C. Hembree et al., *Endocrine Treatment of Gender Dysphoric/Gender Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. of Clinical Endocrinology & Metabolism 3869, (2017), available at https://www.endocrine.org/,clinical-practice-guidelines/gender-dysphoria-gender-incongruence.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 5

1   including the American Medical Association, the American Psychiatric Association, and the
2   American Psychological Association—support the WPATH SOC 8 guidelines; providers
3   regularly refer to them to deliver evidence-based best-practice gender affirming care.

4   **B.    Before Executive Order 14168, BOP policies allowed individualized treatment for
5          gender dysphoria.**

6          27.    BOP "provides essential medical, dental, and mental health (psychiatric) services"
7   to the incarcerated "in a manner consistent with community standards for a correctional
8   environment."[8]

9          28.    Gender-affirming health care (social transition, hormone therapy, and surgeries)
10  effectively alleviates gender dysphoria, as decades of peer-reviewed research and clinical
11  experience have shown.

12         29.    At least since 2016 and until the issuance of EO 14168 on January 20, 2025, BOP's
13  express policy was to provide incarcerated persons with individualized treatment for gender
14  dysphoria. Before the implementing memoranda, EO 14168, BOP most recently updated its
15  policies in 2023.

16         30.    BOP's 2016 Clinical Guidance states: "Healthcare for [transgender] individuals
17  requires a multidisciplinary approach. . . . The treatment and management of the [transgender]
18  individual requires individualized care guided by treatment goals to allow for successful transition
19  through education, counseling, real-life experience, medical evaluation, hormone treatment, and
20  in some cases, sex reassignment surgery."[9]

21         31.    BOP's 2023 Clinical Guidance states: "A patient-centered multidisciplinary team
22  approach is recommended for managing issues associated with the incarceration of [transgender]
23  individuals. . . . It is important to have a system in place to allow for individualized treatment.

---

[8] *Custody & Care Medical Care*, Federal Bureau of Prisons,
https://www.bop.gov/inmates/custody_and_care/medical_care.jsp (last accessed May 28,
2025).

[9] *Medical Management of Transgender Inmates*, p. 6, Fed. Bureau of Prisons,
https://perma.cc/K7RQ-8NTU (Dec. 2016).

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 6

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Individuals requesting care for gender dysphoria should have access to a diverse range of treatment services. Patient-centered care explores individualized therapeutic options, which may vary from person to person." Elsewhere the policy states: "[g]ender-affirming health care involves supporting individuals through social, psychological, behavioral, or medical (including hormonal treatment or surgery) treatments—to support and affirm an individual's experienced gender identity." It also notes that "appropriate gender-affirming care, including medical and surgical care, can lessen psychiatric symptoms" associated with gender dysphoria. [10]

32.     Under BOP's 2016 and 2023 clinical guidance policies and until issuance of EO 14168, BOP had a Transgender Utilization Review Advisory Group comprised of "physicians, psychiatrists, pharmacists, and social workers assigned by the Medical Director to provide clinical review of gender-confirming surgical requests." BOP also had a Transgender Clinical Care Team comprised of "physicians (primary care and psychiatrists), pharmacists, and social workers devoted to advocating and advancing the treatment options for this population. The team provided education and the tools to institutional staff to develop clinical treatment plans for the [transgender] and gender nonbinary population." BOP's Transgender Executive Council ("TEC") was "the agency's official decision-making body on all issues affecting the transgender population," including for individuals' gender-affirming surgery. The TEC met "a minimum of monthly to offer advice and guidance on unique measures related to treatment and management needs of transgender inmates and/or inmates with [gender dysphoria]."[11]

33.     Another policy, BOP's "Transgender Offender Manual," initially issued in 2017, and updated on January 13, 2022, provided for individualized assessment for hormone therapy and other medical treatment in accordance with the clinical guidance policies. Health care needs,

---

[10] *Gender-Affirming Care of Transgender and Gender Nonbinary Persons*, p. 4, Fed. Bureau of Prisons, https://perma.cc/U5UT-S9PN, (June 2023).

[11] *Transgender Offender Manual – Program Statement*, p. 4, U.S. DOJ, (Jan. 13, 2022).

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

clothing, commissary items, and other accommodations were to be provided to incarcerated transgender persons "based on an individualized assessment."[12]

**C.    After Executive Order 14168, BOP policies prohibit treatment for gender dysphoria.**

34.    On January 20, 2025, President Donald Trump issued EO 14168, titled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government."[13] The EO bans gender-affirming health care for individuals in BOP custody regardless of the impact on their health.

35.    EO 14168 declares that it is federal policy to recognize only two sexes. It defines "sex" as "an individual's immutable biological classification as either male or female." In turn, "male" is defined as "a person belonging, at conception, to the sex that produces the small reproductive cell," and "female" is defined as "a person belonging, at conception, to the sex that produces the large reproductive cell." The EO mandates that BOP "revise[] its policies concerning medical care to be consistent with this order" and prohibits BOP from expending any federal funds on any "medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." EO 14168 §§ 2(a), 4(c).

36.    The stated purpose of the EO is to protect women from "men [who] self-identify as women . . . gain[ing] access to intimate single-sex spaces and activities designed for women," which the EO says "fundamentally attack[s] women by depriving them of their dignity, safety, and well-being." The EO's title reflects this purpose of purportedly protecting women.[14]

37.    President Trump has issued multiple other Executive Orders targeting transgender persons.[15]

---

[12] *Id*. at 12.

[13] EO No. 14168, *supra* note 1.

[14] *Id*.

[15] *See, e.g.*, Exec. Order No. 14148, *Initial Rescissions of Harmful Executive Orders and Actions*, 90 Fed. Reg. 8237 (Jan. 20, 2025) (rescinding several Biden administration orders that recognized rights of transgender people in schools, the workplace, housing, health care, and other settings,

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 8

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

38.     On information and belief,[16] BOP has implemented EO 14168 through two implementing memoranda ("Memoranda").

39.     On February 21, 2025, Defendant DiGiacomo and Defendant Salem issued the first of BOP's two implementing memoranda, "Compliance with Executive Order 'Defending Women from General Ideology Extremism and Restoring Biological Truth to the Federal Government.'"[17] The policy (1) prohibits purchase of "any items that align with transgender ideology"; (2) prohibits granting requests for other accommodations to address gender dysmorphia such as "undergarments that do no align with an inmate's biological sex"; and (3) requires that all BOP staff members refer to inmates using "pronouns that correspondence to their biological sex."[18]

40.     The February 28, 2025, implementing memorandum carves out medical treatments from BOP's enforcement of EO 14168, citing a nationwide temporary restraining order.[19]

_____

consistent with the Supreme Court's decision in *Bostock v. Clayton County*); Exec. Order No. 14183, *Prioritizing Military Excellence and Readiness*, 90 Fed. Reg. 8757 (Jan. 27, 2025) (banning transgender people from serving in the U.S. military, accusing transgender servicemembers of expressing a "false" gender identity, and stating that being transgender "conflicts with a soldier's commitment to an honorable, truthful, and disciplined lifestyle, even in one's personal life"); Exec. Order 14187, *Protecting Children from Chemical and Surgical Mutilation*, 90 Fed. Reg. 8771 (Jan. 28, 2025) (ordering the federal government to withhold all federal funding from any institution that provides gender-affirming care to people under the age of 19); Exec. Order No. 14190, *Ending Radical Indoctrination in K-12 Schooling*, 90 Fed. Reg. 8853 (Jan. 29, 2025) (banning K-12 schools in the U.S. from recognizing youth's identities by using names or pronouns that align with their gender; threatening teachers who do not comply with criminal prosecution laws banning sexual exploitation of minors and the unlawful practice of medicine without a license); Exec. Order No. 14201, *Keeping Men out of Women's Sports*, 90 Fed. Reg. 9729 (Feb. 5, 2025) (applying definitions from EO 14168 to "clearly specify[] and clarify[] that women's sports are reserved for women).

[16] Plaintiff makes this allegation on information and belief because BOP has purposely kept its implementing memoranda offline: "As we [Federal Bureau of Prisons] continue to ensure compliance with the Executive Order on "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," policies will gradually become available as they are cleared through our review process." Fed. Bureau of Prisons, Policy & Forms, https://www.bop.gov/PublicInfo/execute/policysearch (last accessed May 19, 2025).

[17] Exhibit 1.

[18] *Id.*

[19] Exhibit 2.

41.     Defendant Bina issued BOP's second implementing memorandum on February 28, 2025, directing that "[c]onsistent with Executive Order (EO) 14168 . . . no Bureau of Prison funds are to be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."[20]

42.     On information and belief, BOP has implemented EO 14168 by disbanding the Transgender Utilization Review Advisory Group, the Transgender Clinical Care Team, and the TEC.

43.     On information and belief, BOP has implemented EO 14168 by rescinding as policy BOP's 2016 clinical guidance policy, 2023 clinical guidance policy, and Transgender Offender Manual.

**D.     Before and after Executive Order 14168, Plaintiff did not receive medically necessary care.**

**1.     Plaintiff's pre-EO 14168 care in custody**

44.     Prior to EO 14168 and BOP's Memoranda, and while in custody at FDC SeaTac, Ms. Buckingham received gender-affirming medical treatment; accessed feminine-typical clothing, grooming, and hygiene items; and used her preferred pronouns to address her gender dysphoria.

45.     While Ms. Buckingham began socially transitioning over a decade ago, it was only in 2022 that she began living as a woman while in custody. Not until 2023 did Ms. Buckingham feel secure in notifying BOP of her transgender identity to seek medical treatment.

46.     In December 2023, BOP providers diagnosed Ms. Buckingham with gender dysphoria and determined that hormone therapy was medically indicated for treatment. She has continuously received hormone therapy since that date.

---

[20] *Id.*

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 10

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

47.    To further address her gender dysphoria, BOP permitted Ms. Buckingham to access bras, typically feminine underwear, and gender-affirming commissary items, including make-up.

48.    Between 2020 and 2022, prior to notifying BOP of her transgender identity, Ms. Buckingham was the subject of 28 suicide risk assessments and placed on suicide watch 7 times. After transitioning socially and openly living as a woman in custody, up until September 2024, Ms. Buckingham had a singular suicide risk assessment. That one instance occurred just after Ms. Buckingham began her hormone therapy.

49.    During her January 2024 Suicide Risk Assessment, Ms. Buckingham discussed with a BOP provider "the loose trajectory of evolving her identity within BOP and the importance of maintaining the structural integrity of her male genitalia for her future gender-affirming surgery." Upon hearing this, Ms. Buckingham stated that learning this information was "'a huge deterrent' to acting on distress related to her genitalia," as she had hope that fulsome gender-affirming care would be available to her during her time in BOP custody at FDC SeaTac.

50.    Still, in spring 2024, Ms. Buckingham expressed concern that she was "falling through the cracks" and requested adjusting her medication for her gender dysphoria treatment. In a note to Defendant Cooper, Warden at Federal Detention Center SeaTac, around the same time, Ms. Buckingham stated that "[h]aving issues with physical transitioning is causing me extreme stress and anxiety."

51.    On March 26, 2024, a BOP provider entered a new consultation request on behalf of Ms. Buckingham to "Other OB/Gynecology, NOS." The BOP provider stated that their reasoning for the request was that Ms. Buckingham was a patient with "transgender dysphoria; requesting an increase in the Estradiol; concern for BP elevation; blood clots and breast cancer with high doses; request for GYN to further evaluate and manage."

52.    In their notes from that clinical encounter, the BOP provider stated the scheduled target date for the "GYN" consultation request was less than a month later, on April 17, 2024. Ms. Buckingham was not seen by a gynecologist or any other medical provider by that date.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 11

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

53.     That summer, on July 31, 2024, Ms. Buckingham legally changed her name. Despite taking this gender-affirming step, in a note sharing the update to the TEC just over a week later, Ms. Buckingham stated, "my mental and physical health has continued to fester and deteriorate due to lack of access to care."

54.     On August 13, 2024, a BOP provider determined that Ms. Buckingham needed a more robust gender dysphoria treatment plan.  The BOP provider entered several new medically necessary consultation requests on Ms. Buckingham's behalf, including setting scheduled target dates for a consultation with a transgender surgical specialist to evaluate Ms. Buckingham for facial feminization surgery by February 13, 2025, for professional facial hair removal by December 13, 2024, and for voice and communication speech therapy by November 13, 2024.

55.     On September 4, 2024, a different BOP provider who assessed Ms. Buckingham stated that her gender affirming surgery had been "approved" for facial feminization surgery.

56.     The next step in Ms. Buckingham's progress toward receiving this medically necessary surgical consultation lay with the Associate Warden. On September 12, 2024, under the direction of the Warden, the Associate Warden wrote a memorandum to the TEC conveying Ms. Buckingham's request for facial feminization surgery.

57.     Upon asking for an update about her facial feminization surgery request and learning a decision had not been made, Ms. Buckingham experienced suicidal thoughts—something she had not done for almost a year. During the consequent Suicide Risk Assessment on October 24, 2024, Ms. Buckingham stated to a BOP provider that she was "feeling disappointed by the news that her gender-affirming surgery had not yet been approved as she desires to no longer look like a man."

58.     On October 25, 2024, Ms. Buckingham stated in a note to the TEC that, "I have severe distress and thoughts of suicide every time I look in the mirror and see a man staring back at me. What I see does not match what I feel." Ms. Buckingham informed the TEC that her gender dysphoria had not been effectively treated through hormone therapy and psychiatric medication—

consulting with a surgeon about gender-affirming surgery was medically necessary to treat her gender dysphoria and critical for her overall well-being and health.

59.     On October 28, 2024, Ms. Buckingham received a message from the TEC stating that Ms. Buckingham's "[h]ormones not on target. TEC recommends AIC Buckingham remain at a male institution, work with health services to maximize hormone levels, and follow institution rules."

60.     Ms. Buckingham disputed the TEC finding, initiating a BOP provider request for additional lab testing. Ms. Buckingham asserted that her hormone levels were presumably on target given that since her most recent blood draw—six months prior to the Associate Warden's memorandum to the TEC—her hormone replacement therapy dosage had been increased. An individual affiliated with the TEC told Ms. Buckingham she would share Ms. Buckingham's concerns about her lab work with the TEC.

61.     On October 28, 2024, Ms. Buckingham expressed a desire to self-castrate "because at least that would be some improv[e]ment if theres [sic] nothing else to look forward to." As a result, BOP performed another Suicide Risk Assessment on Ms. Buckingham. A BOP provider noted that Ms. Buckingham's "suicidality was associated with her surgery request not yet being approved." BOP then increased Ms. Buckingham's care level to "CARE2-MH";[21] she then was seen monthly by BOP's Psychology Services.

62.     On October 30, 2024, Ms. Buckingham learned that based on the decision from the TEC, efforts would be made to try to have additional lab work done to reevaluate her hormone levels and her gender-affirming surgery request would be "re-reviewed by the TEC at least yearly. The final decision [was] not 'no,'" and that she would "remain status quo."

63.     On December 21, 2024, Ms. Buckingham wrote to Defendant Posalski, Health Services Administrator at FDC SeaTac, inquiring about "[w]hy was I never scheduled for my

---

[21] The BOP explained that the increase in Ms. Buckingham's care level from Care1-MH to Care2-MH was "due to…difficulty managing her mental health symptoms."

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

referred consult to have a transgender specialist to evaluate and manage my gender-affirming care."

64.    The next day, Ms. Buckingham followed up to share that she was not able to access a refill option for her estradiol and informed Defendant Posalski that "[a]ll of the problems with my gender affirming care are causing me severe distress every single day."

65.    Near the end of the month, on December 26, 2024, Defendant McGinnis, Clinical Director at FDC SeaTac, had a clinical encounter with Ms. Buckingham, in which he noted that she had expressed some thoughts of self-harm related to her "frustration that [she had] not had an increase in [her] estradiol dose in about 9 months." Ms. Buckingham also informed Defendant McGinnis of her "feelings of frustration and bodily discomfort in terms of lack of physical transformation of [her] body." In Defendant McGinnis's report of this clinical encounter, he recorded Ms. Buckingham's "perceived need for eventual breast augmentation and body sculpting because of the lack of desired effects of the hormone therapy." Defendant McGinnis also wrote that "there has been little desired bodily change on the 8 mg daily dose, just some slight breast development."

66.    At the end of Defendant McGinnis's December 26, 2024, clinical encounter note he wrote that he sent an email to Ms. Buckingham informing her that he wanted to "try to find and consult with others in BOP with more expertise." Defendant McGinnis also stated that he had conferred with Dr. Pelton, who said he would attempt to help Defendant McGinnis identify and confer with a BOP affiliate with "more expertise," as described above.

67.    In an email to Ms. Buckingham after their December 26, 2024, clinical encounter, Defendant McGinnis relayed his treatment plan for her:

> I want to hold off on the dose increase for now and get some more expert advice as to what to do for your situation. Whomever I consult with, I will give them the particulars of your situation: being on the 8mg daily oral dose for 9 months, the still suboptimal level of blood estrogen of 78 pg/ml, the lack of satisfactory change in body characteristics, etc. And I will see what they say.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

> Having said the above, I will move as expeditiously as I can to try to help
> you achieve what you desire in terms of gender affirming care.

68.    Ms. Buckingham followed up with Defendant McGinnis that evening, conveying
her desire for her care team to explore alternative options and consider starting her on a high dose
of any alternative option they may select. She went on to inform Defendant McGinnis in her
December 26, 2024, evening note that "[t]he potential risks of ineffective or undertreatment
(suicide, self harm, self surgery) [sic] outweigh the potential risks of starting with too high a dose
(there are no specific strong risks associated with a temporary elevation of estradiol). The risks of
further ineffective treatment of my GD are very real."

69.    On December 28, 2024, Defendant McGinnis replied to Ms. Buckingham:

> I have determined that there is a team in BOP of people that are expert in
> Transgender Clinical Care. I will forward information on your case to them
> to get their advice, although they may not be able to start fully weighing in
> until after the holidays (Jan. 1, 2025).

70.    In a January 6, 2025, note to Defendant McGinnis, Ms. Buckingham stated that
"[i]t has been more than a year without effective treatment of my GD despite my many, many
requests for help throughout the year." She also informed Defendant McGinnis that in March
2024, she was "referred by my provider to have an outside transgender specialist assume
evaluation and treatment of my GD due to lack of in-house providers with the required expertise.
This was rejected/not scheduled."

## 2.    Plaintiff's post-EO 14168 care in custody

71.    On January 23, 2025, Ms. Buckingham wrote to Defendant Posalski, relaying that
she had been referred to a transgender specialist to manage her care in March 2024 because the
BOP provider "did not believe he could do it himself," and stating that "I was denied this because
you said 'we can handle this in house.'"

72.    That same day, Ms. Buckingham also wrote to Defendant McGinnis and stated
that Defendant McGinnis "has said that he is uncomfortable doing [her transgender care] himself
because he doesn't know how."

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 15

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

73.     In a note addressed to Defendant Cooper on January 25, 2025—soon after EO 14168 went into effect—Ms. Buckingham stated, "I am very concerned that whatever resilience I've had in the past to give me enough of a fight to keep living will soon be gone because I don't see any light at the end of the tunnel in getting the help I need."

74.     Ms. Buckingham again wrote to Defendant Cooper on January 31, 2025, to inform him that "[Defendant] Posalski told me directly that he would not allow me to see a provider because he told me about my HRT [hormone replacement therapy] himself and the doctor wouldn't be doing anything else."

75.     The following day, February 1, 2025, upon reading a statement on a bulletin board at FDC SeaTac, Ms. Buckingham wrote to Defendant Cooper that she had learned that "BOP will comply with the executive order Defending Women from Gender Ideology Extremism and Restoring Biological Truth by removing access to the TEC. I am very distressed and scared about this and how else this will effect [sic] me."

76.     On February 2, 2025, Ms. Buckingham described in writing to Defendant Posalski her interest in seeing "a doctor from Region (Dr. Rutlidge) with experience in providing GS [gender affirming] care[,]" who Ms. Buckingham knew to be at the FDC SeaTac for a couple of weeks. Ms. Buckingham shared that "I think of suicide and self surgery daily and it's getting harder for me to control these urges. I've literally been begging for help with my medical GD [gender dysphoria] treatment." She directed her letter to you [Defendant Posalski] personally because several staff have told me that you seem to have a personal vendetta in making sure I can't see a provider for the GD [gender dysphoria] treatment problems I'm having. Please don't deny me this opportunity to see a provider with experience in TG [transgender] care."

77.     Also on February 2, 2025, Ms. Buckingham sent a note to Health Services stating that Defendant McGinnis told Ms. Buckingham that she is his first transgender patient and that "he has no training or experience with gender affirming (GA) care."

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

78.     On February 3, 2025, Defendant Posalski told Ms. Buckingham that she would not be permitted to see a provider about her gender dysphoria treatment until her next chronic care visit in six months' time.

79.     When the first of BOP's Memoranda was enforced on February 23, 2025, Defendants denied Ms. Buckingham access to bras, feminine-typical underwear, and gender-affirming commissary items including makeup. In a clinical encounter with a BOP provider mere days later, the BOP provider noted that Ms. Buckingham "has been having more suicidal thoughts as she sees a loss of progress towards her gender transition. Surgery has been delayed and may be cancelled due to [the] EO…. She questions now if life is worth living…. Her gender dysphoria was improving, but now is worsening." Furthermore, the same BOP provider went on to note that Ms. Buckingham's chronic suicidal ideation had been absent while taking a particular medication, "except for resurgence in recent months with denial of medically necessary gender affirming care." They further stated that "[r]ecent policy changes are detrimental to her mental health and have increased suicidal ideation."

80.     On February 27, 2025, a BOP provider informed Ms. Buckingham that "he [sic] has been receiving treatment in accordance with directives currently being provided, and he [sic] will continue to be updated if any future changes occur."

81.     On March 4, 2025, Defendant Cooper informed Ms. Buckingham that individuals would no longer be referred for gender-affirming surgeries due to EO 14168. This update came nearly two months after the Warden's Office received Ms. Buckingham's Request for Administrative Remedy regarding her facial feminization surgery, on January 6, 2025.

82.     Later, Ms. Buckingham reported to a BOP provider that having the ability to express her gender identity with make-up, hair accessories, and hygiene products is necessary for her gender-affirming care. On March 6, 2025, that provider responded to Ms. Buckingham's above-described "[g]oal" by identifying the following "[i]nterventions": "Ms. Buckingham will continue to wear make-up, hair accessories, and clothing that align with her self-identified gender of female." The BOP provider further noted that "Ms. Buckingham has indicated that being

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

1    afforded this opportunity has been helpful in alleviating her distress regarding her physical

2    appearance."

3        83.    On March 20, 2025, Ms. Buckingham wrote to Defendants McGinnis and Posalski

4    that she is "highly sensitized to unexpected changes in my medical GD [gender dysphoria]

5    treatment due to the Trump EO trying to eliminate GD treatment in BOP." She also informed

6    Defendants McGinnis and Posalski in another writing dated March 25, 2025, that she "had a lot

7    of increasing distress and mental health problems caused by fear due to Trump's anti-trans

8    executive orders."

9        84.    The next day, March 26, 2025, Defendant Cooper responded to Ms. Buckingham's

10   Request for Administrative Remedy regarding access to female-typical undergarments and

11   grooming items. The Warden's Office had received Ms. Buckingham's Request a few weeks

12   prior, on March 7, 2025. Defendant Cooper's response was as follows:

13
            In accordance with national policy, Trust Fund will offer gender specific
14          items for sale on commissary. Sports bras are still available for purchase on
            commissary, but all other items have been restricted by policy. This is in
15          response to the Executive Order titled *Defending Women from Gender
            Ideology Extremism and Restoring Biological Truth to the Federal*
16          *Government*.

17       85.    Less than a week later, on April 1, 2025, Ms. Buckingham described in writing to

18   Defendants McGinnis and Posalski that her "thoughts and urges" to die by suicide and self-

19   castrate "continue to get worse," and that she felt "increasingly" hopeless, sad, depressed and

20   anxious," when looking at herself in the mirror.  In that same note, Ms. Buckingham wrote that,

21   "[a]s indicated by my 8/13/24 referral ordered by my FBOP provider in my medical record,

22   surgical GD treatment is required and is the next step in my treatment. The WPATH SoC-8 and

23   an abundance of scientific literature make it clear that my GD will not improve without this."

24       86.    On April 5, 2025, Ms. Buckingham wrote to Defendant Cooper, alerting him that

25   "I really need help with my GD treatment, but Health Services has refused to change my treatment

26   despite the fact that my GD continues to worsen. Defendant McGinnis made no changes when he

saw me in December because he was not competent in evaluating and managing GD (he said he'd never done it before [sic])."

87.    BOP has caused Ms. Buckingham severe and irreparable harm by denying her medically necessary care following EO 14168. She is experiencing anxiety, thoughts of self-harm and suicide, and thoughts of self-castration, as her gender dysphoria worsens.

88.    Defendants Cooper, McGinnis, and Posalski all knew that Ms. Buckingham suffered from physical and emotional distress stemming from her gender dysphoria and denial of access to medically necessary care.

89.    Despite knowing of Ms. Buckingham's medical need for gender-affirming care, Defendants Cooper, McGinnis, and Posalski failed to take necessary steps to ensure Ms. Buckingham received consultations for gender-affirming surgery, voice and communication speech therapy, and professional facial hair removal, as well as access to female-typical clothing, grooming, and hygiene products.

90.    To remedy the harm caused from delayed and denied medical treatment for her serious medical condition of gender dysphoria, Ms. Buckingham's constitutional and statutory claims follow.

## V.    CLAIMS FOR RELIEF

### COUNT ONE — DEPRIVATION OF EQUAL PROTECTION OF THE LAWS
### (INJUNCTIVE RELIEF)
### Fifth Amendment to the United States Constitution
### Against All Defendants in Their Official Capacities

91.    Plaintiff repeats and re-alleges all allegations in the preceding paragraphs of this Complaint.

92.    The Due Process Clause of the Fifth Amendment guarantees equal protection of the laws equivalent to the Equal Protection Clause of the Fourteenth Amendment. Under the Fifth Amendment, discrimination based on sex is presumptively unconstitutional and subject to heightened scrutiny.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 19

93.    EO 14168, as applied to BOP medical care and accommodations through Section 4(c), and the Memoranda violate the Fifth Amendment's guarantee of equal protection under the law.

94.    EO 14168 and the Memoranda facially classify based on sex and transgender status.

95.    Whether a person may receive certain medical treatments or accommodations depends on that person's sex, as defined by the EO. Thus, EO 14168 and the Memoranda facially classify based on sex.

96.    EO 14168 and the Memoranda also facially classify based on sex by enforcing stereotypes. To wit, EO 14168 and the Memoranda prohibit medical treatment prescribed "for the purpose of conforming an inmate's appearance to that of the opposite sex." This prohibition is based on the underlying stereotype that a person must look a certain way because of their sex assigned at birth.

97.    EO 14168 and the Memoranda also facially classify based on transgender status. The order and memoranda deny medical treatments and accommodations to individuals solely because they are transgender, not because of any underlying medical advice.

98.    Discrimination based on transgender status or gender identity is sex discrimination subject to heightened scrutiny.[22]

99.    Discrimination based on transgender status is further subject to heightened scrutiny because transgender status is a quasi-suspect class under the Fifth Amendment.[23]

100.    EO 14168 and the Memoranda cannot meet heightened scrutiny because they are not substantially related to an important government objective.

101.    EO 14168 states that its purpose is to protect women from "men [who] self-identify as women…gain[ing] access to intimate single-sex spaces and activities designed for women." Prohibiting gender-affirming medical care and accommodations for individuals in BOP custody

---

[22] *Hecox v. Little*, 104 F.4th 1061, 1079 (9th Cir. 2024).

[23] *Karnoski v. Trump*, 926 F.3d 1180, 1200-01 (9th Cir. 2019).

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 20

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

is not substantially related to the Executive Order's stated purpose. Nor is this prohibition on gender-affirming medical care rationally related to any legitimate government interest. Accordingly, EO 14168 and the Memoranda—as applied to BOP medical care and accommodations—violate the right to equal protection guaranteed by the Fifth Amendment.

102.    EO 14168 and the Memoranda are motivated by discriminatory animus and are unconstitutional under any level of scrutiny.

103.    As a result of EO 14168 and the Memoranda, Defendants have disrupted Ms. Buckingham's necessary medical care by restricting her access to gender-affirming care, including rejecting her requests for consultations for gender-affirming surgery, voice and communication speech therapy, professional facial hair removal, and denying her access to feminine-typical clothing, grooming, and hygiene products.

104.    EO 14168 and the Memoranda—as applied to BOP medical care and accommodations—are causing and will continue to cause irreparable harm to Ms. Buckingham, including serious physical, psychological, and emotional harm, distress, and mental anguish.

## COUNT TWO — FAILURE TO PROVIDE ADEQUATE MEDICAL TREATMENT (INJUNCTIVE RELIEF)
### Eighth Amendment to the United States Constitution
### Against All Defendants in Their Official Capacities

105.    Ms. Buckingham repeats and re-alleges all allegations in the preceding paragraphs of this Complaint.

106.    In prohibiting the government from inflicting cruel and unusual punishment on individuals accused or convicted of crimes, the Eighth Amendment prohibits deliberate indifference by government officials to the serious medical needs of incarcerated individuals.

107.    To abide by the Eighth Amendment, government officials must provide incarcerated individuals adequate and necessary health care. The healthcare government officials must provide must meet accepted standards of care within the medical community.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 21

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

108.    Ms. Buckingham has been diagnosed with the serious medical condition of gender dysphoria, which causes her serious clinical distress. Without medically necessary treatment, her distress will result in serious and irreparable physical or psychological harm.

109.    Here, that medically necessary treatment includes gender-affirming surgery, voice and communication speech therapy, professional facial hair removal, and access to female-typical undergarments and grooming items, which enable her to live and physically present herself consistent with her gender identity, and which ameliorate her psychological symptoms, including feelings of hopelessness, anxiety, and suicidal ideation.

110.    Even before the EO 14168 was enacted, Defendants delayed and denied Ms. Buckingham the medically necessary treatment of gender-affirming care, including gender-affirming surgery, voice and communication speech therapy, and professional facial hair removal. Despite a BOP provider recommending consultation requests for facial feminization surgery, hair removal, and voice and communication speech therapy in August 2024, Defendants have not arranged for these consultations. Delaying and denying Ms. Buckingham access to such treatment was medically unacceptable under the circumstances.

111.    The EO 14168 and its Memoranda established a blanket ban on "any medical procedure, treatment, or drug for the purpose of confirming an inmate's appearance to that of the opposite sex" even when such treatment is medically necessary. In effect, the EO 14168 and Memoranda denies Ms. Buckingham medically necessary treatment without considering independent medical judgment formed by health care providers.

112.    By denying Ms. Buckingham medically necessary treatment for her gender dysphoria, Defendants have knowingly failed to provide adequate and necessary treatment that is consistent with prevailing medical standards of care for gender dysphoria. Further, by denying Ms. Buckingham medically necessary care, Defendants have knowingly caused and will continue to cause Ms. Buckingham harm by withholding effective treatment for a serious medical need.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 22

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

113.    By continuing to deny Ms. Buckingham medically necessary treatment for her gender dysphoria under the EO 14168 and Memoranda, Defendants have knowingly caused and will continue to cause Ms. Buckingham harm by withholding treatment for a serious medical need.

114.    Defendants have deliberately denied Ms. Buckingham medically necessary care and have caused and will continue to cause Ms. Buckingham serious physical and mental psychological harm, putting Ms. Buckingham at grave risk of worsening physical and psychological symptoms.

115.    Defendants have acted with deliberate indifference to Ms. Buckingham's serious medical needs and to the substantial risk of serious harm to Ms. Buckingham. Ms. Buckingham has continuously notified Defendants of her worsening gender dysphoria and resulting thoughts of suicide and self-castration. Despite knowing of these risks of serious harm, Defendants have not provided Ms. Buckingham with the medically necessary care she seeks, including gender-affirming surgery, voice and communication speech therapy, professional facial hair removal, and access to feminine-typical clothing, grooming, and hygiene products.

116.    Defendants remain deliberately indifferent to Ms. Buckingham's serious medical need to be adequately treated for gender dysphoria, including but not limited to evaluation for gender-affirming surgery by qualified medical personnel with expertise in the diagnosis and treatment of gender dysphoria and provision of such surgery, if determined appropriate, as well as other medical treatments and accommodations that would alleviate Ms. Buckingham's serious medical symptoms.

117.    As a result of Defendants' actions, Ms. Buckingham will continue to suffer irreparable harm unless injunctive relief is granted.

118.    By failing to provide necessary medical treatment to Ms. Buckingham, Defendants have violated the Eighth Amendment to the U.S. Constitution.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

119.     As a result of Defendants' actions and omissions, Ms. Buckingham has suffered and continues to suffer irreparable psychological and physical harm.

### COUNT THREE — DISABILITY DISCRIMINATION
### Rehabilitation Act of 1973, Section 504
### Against All Defendants in Their Official Capacities

120.     Ms. Buckingham repeats and re-alleges all allegations in the preceding paragraphs of this Complaint.

121.     Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a).

122.     Ms. Buckingham has a current record and diagnosis of gender dysphoria that is known to BOP officials.

123.     Gender dysphoria is a serious medical condition that qualifies as a disability. It is a physical impairment that substantially limits the major life activities of interacting with others, reproduction, social and occupational functioning, and caring for oneself.

124.     BOP is an executive agency that falls within the definition of a covered public entity that is responsible for providing benefits, services, and programs to all individuals in its custody.

125.     Before EO 14168 was enacted, Defendants discriminated against Ms. Buckingham because of her disability by failing to provide medically necessary treatment.

126.     Further, EO 14168 and its Memoranda categorically ban medical treatments and accommodations for people in BOP custody if the treatments and accommodations are provided to "conform[] an inmate's appearance to that of the opposite sex" —medical treatment for gender dysphoria. Thus, treatments and accommodations are banned *only* if they are prescribed to treat

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 24

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

people with gender dysphoria. This disparate treatment of Ms. Buckingham based upon her gender dysphoria discriminates against her because of her disability.

127.    Section 4(c) discriminates based on disability by excluding people with gender dysphoria, including Ms. Buckingham, from accessing medically necessary healthcare services that are provided to ***all other*** people in BOP custody based on medical need.

128.    Actions taken by Defendants are causing and will continue to cause irreparable harm to Ms. Buckingham, including serious physical, psychological, and emotional harm, distress, and mental anguish.

### COUNT FOUR — CONTRARY TO CONSTITUTIONAL RIGHT, POWER, PRIVILEGE, OR IMMUNITY
#### Administrative Procedure Act
**Against Defendants BOP, Defendant Marshall, Defendant DiGiacomo, Defendant Salem, and Defendant Bina (collectively the "Agency Defendants") in Their Official Capacity**

129.    Ms. Buckingham repeats and re-alleges all allegations in the preceding paragraphs of this Complaint.

130.    The APA provides that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity . . . ." 5 U.S.C. § 706(2)(B).

131.    BOP has taken concrete steps to implement EO 14168 by issuing the Memoranda.

132.    The Memoranda constitute final agency action. The Memoranda represent the consummation of the agency's decision-making process; they were issued by agency leadership and do not contemplate any further consideration by the agency prior to implementation and enforcement. Rather than merely clarifying its existing duties, the Memoranda determine the rights of Ms. Buckingham and BOP's obligations to Ms. Buckingham, both of which, as explained within, have direct and immediate legal consequences for her.

133.    Pursuant to the Memoranda, BOP will no longer provide complete gender-affirming health care for Ms. Buckingham, even when such care is medically indicated.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 25

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Regardless of need, treatment and accommodations will be denied due to Defendants' enforcement of the policies outlined in the Memoranda.

134.    For the reasons described in the preceding claims, and incorporated here, actions taken by BOP to enforce the mandates of EO 14168 and the Memoranda are "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). In particular, the actions violate the Eighth Amendment and the right to equal protection guaranteed by the Fifth Amendment of the Constitution.

135.    Actions taken by BOP to enforce the mandates of EO 14168 and the Memoranda are causing and will continue to cause irreparable harm to Ms. Buckingham, including serious physical, psychological, and emotional harm, distress, and mental anguish.

### COUNT FIVE — ARBITRARY AND CAPRICIOUS, ABUSE OF DISCRETION
### Administrative Procedure Act
### Against the Agency Defendants in Their Official Capacity

136.    Ms. Buckingham repeats and re-alleges all allegations in the preceding paragraphs of this Complaint.

137.    The APA provides that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706(2)(A).

138.    BOP has taken concrete steps to implement EO 14168 by issuing the Memoranda.

139.    The Memoranda constitute final agency action. The Memoranda represent the consummation of the agency's decision-making process; they were issued by agency leadership and do not contemplate any further consideration by the agency prior to implementation and enforcement. Rather than merely clarifying its existing duties, the Memoranda determine the rights of Ms. Buckingham and BOP's obligations to Ms. Buckingham, both of which, as explained within, have direct and immediate legal consequences for her.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 26

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

140.    Actions taken by BOP to enforce the mandates of EO 14168 and the Memoranda are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

141.    The challenged agency actions are arbitrary, capricious, and an abuse of discretion, because they are unsupported by any reasoned explanation:

A.    The Agency Defendants have provided no meaningful explanation for the prohibition and denial of access to medically indicated treatment for gender dysphoria, including hormone therapy, surgery, and accommodations, and the withholding of funding for "any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." In fact, the Memoranda contain BOP's directives without any explanation for the policies beyond compliance with EO 14168, which itself provides no reasoned explanation or support for its mandates.

B.    The Agency Defendants have failed to explain what alternatives, if any, were considered to address potential legitimate interests that the policies implementing EO 14168 could serve, nor does EO 14168 do so.

C.    The Agency Defendants provide no explanation for their denial of access to gender-affirming health care and accommodations to people experiencing gender dysphoria or for treating people with gender dysphoria differently than any other person with a medically recognized diagnosis, nor does EO 14168 do so.

D.    The Agency Defendants provide no explanation for their withholding of funding for medically indicated treatment of gender dysphoria or for allocating funding for the treatment of gender dysphoria differently than any other medically recognized diagnosis, nor does EO 14168 do so.

E.    Relatedly, the Agency Defendants have failed to explain why the status quo ante—which BOP implemented for years prior to EO 14168—was in any way flawed, let alone sufficiently flawed, to warrant this abrupt and substantial change, nor does EO 14168 do so.

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 27

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

F.     The Agency Defendants have failed to explain why they are withdrawing medical treatment that BOP medical providers have deemed medically necessary from individuals in BOP custody.

142.    Further, the challenged agency actions are arbitrary, capricious, and an abuse of discretion because they are irrational and unreasonable:

A.     BOP's policies implementing EO 14168 as outlined in the Memoranda represent a prohibition on medically indicated gender-affirming health care for incarcerated people in BOP custody, people who rely exclusively on BOP to provide medical care. Such a prohibition contradicts current scientific and medical understandings of the required standard of care for individuals with gender dysphoria.

B.     Section 4(c) of EO 14168, which seeks to prohibit treatment prescribed "for the purpose of conforming an inmate's appearance to that of the opposite sex," as enforced by the Memoranda's proscriptions against access to medically indicated treatment and social accommodation and the use of "Bureau of Prisons funds …for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex," is not based on scientific or medical knowledge or evidence. To the contrary, it reverses without explanation BOP's longstanding formal internal health care policies governing the treatment of gender dysphoria which, in accordance with well-accepted protocols for treating this condition, provided for gender-affirming medical interventions including hormone therapy and surgeries when indicated for a patient, as well as clothing, grooming, and other accommodations.

143.    Pursuant to the Memoranda, BOP will no longer provide complete gender-affirming health care for Ms. Buckingham, even when such care is medically indicated. Regardless of need, treatment and accommodations will be denied because of Defendants' enforcement of the policies outlined in the Memoranda.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

144.    Actions taken by BOP to enforce the mandates of EO 14168 and the Memoranda are causing and will continue to cause irreparable harm to Ms. Buckingham, including serious physical, psychological, and emotional harm, distress, and mental anguish.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(1)    Issue a judgment under 28 U.S.C. §§ 2201-02 declaring that Section 4(c) of Executive Order 14168 violates Plaintiff's rights under the Fifth and Eighth Amendments to the United States Constitution, the Rehabilitation Act of 1973, and the Administrative Procedure Act for the reasons and on the Counts set forth above;

(2)    Enter a preliminary and permanent injunction prohibiting Defendants and their officers, employees, servants, agents, appointees, and successors from implementing Section 4(c) of Executive Order 14168; requiring Defendants to provide Plaintiff with adequate and necessary medical care; and requiring Defendants to provide Plaintiff equal access to clothing, cosmetic, and hygiene items available to inmates housed in female institutions; declaring Defendants' practices in denying Plaintiff adequate and necessary medical treatment unconstitutional and violative of federal law; maintain Plaintiff's medical treatment consistent with the advice of Plaintiff's medical providers; and schedule medical consultations regarding gender-affirming surgery; voice and communication speech therapy, and professional facial hair removal;

(3)    Award Plaintiff her costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412 and any other applicable laws; and

(4)    Grant such other and further relief as the Court deems just and proper.

## VII.    DEMAND FOR JURY TRIAL

Plaintiff, Nani Love Buckingham, demands a trial by jury of all issues so triable as a matter of right pursuant to Fed. R. Civ. P. 38(b).

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 29

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Dated: May 30, 2025.                    Respectfully Submitted,

                                        **KELLER ROHRBACK L.L.P.**

                                        By: _Chris N. Ryder_
                                            Chris N. Ryder, WSB No. 58732
                                            Benjamin B. Gould, WSB No. 44093
                                            Cari Campen Laufenberg, WSB No. 34354
                                            Nathan N. Nanfelt, WSB No. 45273
                                            Elizabeth W. Tarbell, WSB No. 62763
                                            Nicandro Iannacci, *pro hac vice*
                                            1201 Third Avenue, Suite 3400
                                            Seattle, Washington 98101
                                            Telephone: (206) 623-1900
                                            cryder@kellerrohrback.com
                                            bgould@kellerrohrback.com
                                            claufenberg@kellerrohrback.com
                                            nnanfelt@kellerrohrback.com
                                            etarbell@kellerrohrback.com
                                            niannacci@kellerrohrback.com

                                        ***Attorneys for Plaintiff***

AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 30

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900