# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| NANI LOVE BUCKINGHAM f/n/a BRIAN P. BUCKINGHAM, | Case No. 2:25-cv-00701-RSM-DWC |
| Plaintiff, | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | NOTE ON MOTION CALENDAR: July 30, 2025 |
| FEDERAL BUREAU OF PRISONS, *et al.,* | |
| Defendants. | ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   PROCEDURAL BACKGROUND ....................................................................... 1

III.  STATEMENT OF FACTS ................................................................................... 2

    A.    Medical providers care for persons diagnosed with gender dysphoria with evidence-based treatment. ........................................ 2

    B.    BOP policy requires treating individuals with gender dysphoria. ....................... 4

    C.    Ms. Buckingham seeks minimally invasive and non-invasive treatment for her gender dysphoria. .................................................... 4

    D.    BOP has delayed and/or denied Ms. Buckingham access to this medically necessary care. ..................................................................... 6

    E.    Defendants persist in delaying and/or denying Ms. Buckingham medically necessary care after Ms. Buckingham filed suit. ............................... 6

    F.    Ms. Buckingham's severe emotional distress will persist absent relief from this Court. .............................................................................. 7

IV.   LEGAL STANDARD ........................................................................................... 8

V.    ARGUMENT ......................................................................................................... 9

    A.    The traditional *Winter* test is satisfied. .................................................... 9

         1.    Ms. Buckingham is likely to succeed on her Eighth Amendment Claim. ................................................................ 9

             a.    Ms. Buckingham's gender dysphoria is a serious medical need because it causes her significant mental and physical distress. ............................... 10

             b.    Defendants were deliberately indifferent to Ms. Buckingham's gender dysphoria when they delayed and/or denied her recommended consultations for surgery, hair removal, and speech therapy. ......................................................................... 11

                  (i)    Defendants' decision to delay and/or deny Ms. Buckingham's recommended consultations was medically unacceptable under the circumstances. ..................................... 11

PL. MOT. FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - i

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

(ii)    Defendants have delayed and/or denied
Ms. Buckingham's recommended
consultations in conscious disregard of an
excessive risk to Ms. Buckingham's health.................. 13

2.    Ms. Buckingham is likely to suffer irreparable harm absent
an injunction.................................................................................. 17

3.    The balance of equities and the public interest both favor
granting an injunction. ....................................................... 18

B.    The "serious questions" or "sliding scale" test is also satisfied. ....................... 20

VI.    CONCLUSION ..................................................... 21

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ...................................................................9

*Anderson v. United States*,
612 F.2d 1112 (9th Cir. 1980) ............................................................8, 17

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ..................................................17, 19, 20

*Bernhardt v. L.A. Cnty.*,
339 F.3d 920 (9th Cir. 2003) ..................................................................18

*Brown v. Plata*,
563 U.S. 493 (2011) ....................................................................................8

*Colwell v. Bannister*,
763 F.3d 1060 (9th Cir. 2014) ..............................................................10

*De'lonta v. Johnson*,
708 F.3d 520 (4th Cir. 2013) ................................................................12

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022) ...................................................................9

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1037 (9th Cir. 2014) ................................................................8

*Edmo v. Corizon, Inc.*,
935 F.3d 757 (9th Cir. 2019) .........................................................*passim*

*Estelle v. Gamble*,
429 U.S. 97 (1976) ......................................................................................9

*Farmer v. Brennan*,
511 U.S. 825 (1994) ..................................................................................13

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
98 F.4th 1180 (9th Cir. 2024) ..........................................................9, 20

*Gammett v. Idaho State Bd. of Corrs.*,
No. CV05–257, 2007 WL 2186896 (D. Idaho July 27, 2007) .............19

PL. MOT. FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - iii

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

*Gordon v. Inslee*,
  No. 3:21-CV-5802-BJR-DWC, 2023 WL 2874062 (W.D. Wash. Feb. 6, 2023)..................10

*Hamby v. Hammond*,
  821 F.3d 1085 (9th Cir. 2016) ..........................................................................................9

*Hudson v. McMillian*,
  503 U.S. 1 (1992) ............................................................................................................19

*Hundley v. Aranas*,
  No. 21-15757, 2023 WL 166421 (9th Cir. Jan. 12, 2023)..................................................10

*Hunt v. Dental Dep't*,
  865 F.2d 198 (9th Cir. 1989) ...........................................................................................11

*Jett v. Penner*,
  439 F.3d 1091 (9th Cir. 2006) ...............................................................................9, 10, 13

*Kingdom v. Trump*,
  No. 25-cv-00691-RCL, Dkt. No. 68 (D.D.C. June 3, 2025)............................................1, 2, 4

*Lemire v. Cal. Dep't of Corr. & Rehab.*,
  726 F.3d 1062 (9th Cir. 2013) .........................................................................................13

*Lolli v. County of Orange*,
  351 F.3d 410 (9th Cir. 2003) ...........................................................................................13

*Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) .......................................................................................8, 17

*McGuckin v. Smith*,
  974 F.2d 1050 (9th Cir. 1992) ....................................................................................10, 13

*Norsworthy v. Beard*,
  87 F. Supp. 3d 1164 (N.D. Cal. 2015).........................................................................*passim*

*Ortiz v. City of Imperial*,
  884 F.2d 1312 (9th Cir. 1989) .........................................................................................12

*Porretti v. Dzurenda*,
  11 F.4th 1037 (9th Cir. 2021) .....................................................................................*passim*

*Preminger v. Principi*,
  422 F.3d 815 (9th Cir. 2005) ...........................................................................................20

*Riley's Am. Heritage Farms v. Elsasser*,
  32 F.4th 707 (9th Cir. 2022) ...........................................................................................20

PL. MOT. FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - iv

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

*Robinson v. Labrador*,
    747 F. Supp. 3d 1331 (D. Idaho 2024)...............................................................9

*Wakefield v. Thompson*,
    177 F.3d 1160 (9th Cir. 1999) .........................................................................14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................................*passim*

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983) ...........................................................................19

**OTHER AUTHORITIES**

Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders,
    Text Rev. F64.0 (5th Ed. 2022) .........................................................................3

Executive Order 14168, *Defending Women from Gender Ideology Extremism and
    Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615
    (Jan. 20, 2025)..................................................................................................1

Fed. Bureau of Prisons, *Gender-Affirming Care of Transgender and Gender
    Nonbinary Persons*, https://perma.cc/U5UT-S9PN, (June 2023)..........................5

Fed. Bureau of Prisons, *Medical Care*,
    https://www.bop.gov/inmates/custody_and_care/medical_care.jsp, (last visited
    July 2, 2025).....................................................................................................4

Fed. Bureau of Prisons, *Medical Management of Transgender Inmates*,
    https://perma.cc/K7RQ-8NTU, (Dec. 2016)........................................................4

World Professional Association for Transgender Health (WPATH), *Standards of
    Care for the Health of Transgender and Gender Diverse People, Version 8*,
    https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644,
    (2022) .............................................................................................................3

PL. MOT. FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - v

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

# I. INTRODUCTION

Plaintiff Nani L. Buckingham seeks a preliminary injunction to prevent irreparable injury caused by the Bureau of Prison's ("BOP") persistent failure to provide her with medically necessary care to treat her gender dysphoria and associated psychological distress. Specifically, Ms. Buckingham seeks an order requiring Defendants to schedule medical consultations regarding facial feminization surgery, laser hair removal, and speech therapy (collectively, "the consultations"). The consultations would merely maintain her medical treatment consistent with the advice of her medical providers. And they are needed to alleviate the severe psychological distress Ms. Buckingham suffers because of her diagnosed gender dysphoria.

Defendants' ongoing and intentional failure to provide Ms. Buckingham with access to the consultations constitutes deliberate indifference to her serious medical needs, placing Ms. Buckingham at substantial risk of serious, irreparable harm. Defendants should be preliminarily enjoined from withholding or further delaying such care and be required to schedule the medically recommended and necessary consultations to take place within 30 days of Ms. Buckingham's arrival in Butner, North Carolina.

# II. PROCEDURAL BACKGROUND

Ms. Buckingham filed her original complaint in this case on April 14, 2025. On May 5, 2025, the Court appointed counsel to represent Ms. Buckingham. Dkt. No. 26. On May 30, 2025, counsel for Ms. Buckingham filed the Amended Complaint. Dkt. No. 38.

Several days after the Amended Complaint was filed, a federal district court entered an order (the "*Kingdom* Order") certifying a class and granting a preliminary injunction that affects some of Ms. Buckingham's claims insofar as they challenge Executive Order 14168.[1] *See Kingdom v. Trump,* No. 25-cv-00691-RCL, Dkt. No. 68 (D.D.C. June 3, 2025) (filed here as Dkt. No. 40-1). The *Kingdom* Order, however, does not cover the relief sought by this Motion.

---

[1] Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

The *Kingdom* Order certified a class of those incarcerated by the BOP who have a current medical diagnosis of gender dysphoria or who receive such a diagnosis in the future. Ms. Buckingham is incarcerated by the BOP and has a current medical diagnosis of gender dysphoria, and therefore is a member of the *Kingdom* class. The *Kingdom* Order also granted a preliminary injunction enjoining Defendants from enforcing Executive Order 14168 as applied to medical hormone therapy and social accommodations for class members and from enforcing the BOP's policies that implement Executive Order 14168.

Counsel for Ms. Buckingham understand that following the *Kingdom* Order, BOP's policies have returned to a "pre-EO stance." Declaration of Nathan L. Nanfelt ("Nanfelt Decl.") ¶ 6. But even before the Executive Order, and continuing to the present, Defendants have intentionally and continuously failed to provide Ms. Buckingham with access to the medically referred and necessary consultations to treat her gender dysphoria.

Well before the Executive Order, on August 13, 2024, Ms. Buckingham was referred for consultations for speech therapy to take place by November 13, 2024; professional hair removal to take place by December 13, 2024; and facial feminization surgery to take place by February 13, 2025. None of these consultations were scheduled, and her request for gender-affirming surgery was expressly denied by the BOP's Transgender Executive Council ("TEC") in October 2024, some four months prior to the Executive Order. Since the *Kingdom* Order, Defendants have continued to delay providing this care, despite knowing that this ongoing delay is worsening the symptoms of her gender dysphoria, and despite requests by counsel to have these consultations scheduled by a date certain. *See* Declaration of Nani L. Buckingham ("Buckingham Decl.") ¶ 34, Exhibit 19; Nanfelt Decl. ¶¶ 3–11. *infra* Sections III.E, III.F.

## III.    STATEMENT OF FACTS

### A.    Medical providers care for persons diagnosed with gender dysphoria with evidence-based treatment.

Gender dysphoria is a serious medical condition that causes certain individuals to suffer clinically significant distress because their sex designated at birth does not align with their gender

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

identity.[2] The term "gender identity" is a well-established concept in medicine, referring to "a person's deeply felt, inherent sense of being a girl, woman, or female; a man, or male; a blend of male or female; or an alternative gender." Declaration of Dr. Dan H. Karasic ("Karasic Decl.") ¶ 39.

To be diagnosed with gender dysphoria, the incongruence between one's birth sex and gender identify must have persisted for at least six months and be accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning.[3] If left untreated, gender dysphoria causes serious physical and psychological harm. Symptoms of untreated gender dysphoria can include anxiety, depression, eating disorders, socially isolating behavior, self-harm, and suicidality. Karasic Decl. ¶¶ 48, 50–52.

To treat gender dysphoria, medical providers rely on the evidence-based guidelines of the World Professional Association for Transgender Health ("WPATH"), which has issued *Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People* since 1979. *Id.* ¶ 54. The current version, published in 2022, is "WPATH SOC 8", which provides guidelines for multidisciplinary care of transgender individuals and describes criteria for medical interventions to treat gender dysphoria, including hormone treatment and surgery when medically indicated. *Id.* The protocols and policies set forth by the WPATH Standards of Care and the Endocrine Society Guidelines are endorsed and cited as authoritative by the major professional medical and mental health associations in the United States and around the globe, including the American Medical Association, the American Academy of Pediatrics, the American Psychiatric Association, the American Psychological Association, the American College of Obstetrics and Gynecology, the American College of Physicians, and the World Medical Association, among others. *Id.* ¶ 63. The WPATH Standards and Endocrine Society Guideline are also relied upon by clinicians treating patients with gender dysphoria. *Id.*

---

[2] Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders, Text Rev. F64.0 (5th Ed. 2022).
[3] *Id.*

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

With access to medically indicated care, transgender people can experience significant and potentially complete relief from their symptoms of gender dysphoria. *Id*. ¶ 53. Under the WPATH SOC and the Endocrine Society Guideline, treatment is intended to eliminate the distress of gender dysphoria by helping the patient live consistently with their gender identity by aligning their presentation and body with their gender identity. *Id*. ¶ 64. Social transition is an integral part of addressing gender dysphoria for transgender people and involves changing appearance (e.g., garments, hair, make-up) and social role, with change of signifiers of gender, including name and pronouns, and public presentation in their identified gender. *Id*. ¶ 65. Medical interventions such as hormone therapy and surgeries may be indicated to address gender dysphoria. *Id*. ¶ 67. Like any other type of medical care, gender-affirming medical intervention only proceeds where recognized as safe, effective, and medically necessary. *Id*. ¶¶ 78–79.

**B.    BOP policy requires treating individuals with gender dysphoria.**

It is BOP policy to provide "essential medical, dental, and mental health (psychiatric) services in a manner consistent with accepted community standards for a correctional environment."[4]

Before Executive Order 14168, BOP's formal internal health care policies provided that inmates diagnosed with gender dysphoria would receive gender-affirming health care based on individualized patient need in accordance with well-accepted medical protocols, including the WPATH guidelines.[5] This "pre-EO stance," as Plaintiff understands it, is once again BOP's policy following the *Kingdom* Order. Nanfelt Decl. ¶ 6.

**C.    Ms. Buckingham seeks minimally invasive and non-invasive treatment for her gender dysphoria.**

Ms. Buckingham has been in BOP custody since 2020. Buckingham Decl. ¶ 3. She began socially transitioning before entering BOP custody and has been living as a woman in BOP custody since 2022. *Id.* ¶ 4.

---

[4] Fed. Bureau of Prisons, *Medical Care*, https://www.bop.gov/inmates/custody_and_care/medical_care.jsp (last visited July 2, 2025).

[5] Fed. Bureau of Prisons, *Medical Management of Transgender Inmates*, at p. 6, https://perma.cc/K7RQ-8NTU (Dec. 2016).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

On December 5, 2023, a BOP provider diagnosed Ms. Buckingham with gender dysphoria. *Id.* ¶ 7, Exhibit 1 at 000201. And since December 8, 2023, Ms. Buckingham has received hormone treatment for her gender dysphoria. *Id.* ¶ 8, Exhibit 2 at 000133.

Despite Ms. Buckingham's treatment to date, she has continued to suffer from the severe distress and anxiety caused by her gender dysphoria, which has manifested in suicidal ideation, thoughts of self-harm and self-castration. *Id.* ¶¶ 11–12, 20, 26, 28, 33–34, 37–38.

To alleviate these ongoing symptoms, Ms. Buckingham requested a formal evaluation and treatment plan for her gender dysphoria on July 22, 2024. *Id.* ¶ 13, Exhibit 3 at 000041. On August 13, 2024, a BOP provider saw Ms. Buckingham "to discuss plan of care as it relates to gender affirming care." *Id.* ¶ 14, Exhibit 4 at 000041. That provider then submitted three consultation requests: one for speech therapy, one for laser hair removal, and one for facial feminization surgery. *Id.* The consultation for speech therapy had a "Scheduled Target Date" of November 13, 2024. *Id.* at 000043. The consultation for laser hair removal had a "Scheduled Target Date" of December 13, 2024. *Id.* And the evaluation for facial feminization surgery had a "Scheduled Target Date" of February 13, 2025. *Id.*

These consultations were described by the BOP provider as "recommended in the Transgender Health clinical practice guidance." *Id.* BOP's 2023 Clinical Guidance regarding Gender-Affirming Care of Transgender and Gender Nonbinary Persons describes these treatments as "minimally invasive" and "non-invasive" gender-affirming treatments that are designed to "decrease or stabilize the gender dysphoria/incongruence experienced by the [patient] and improve the psychosocial functioning of the [individual]."[6] The 2023 Clinical Guidance also notes that facial hair is often a source of distress and suffering for patients who identify as trans female, and suggests professional laser hair removal may be necessary for individuals with unresolved gender dysphoria in lieu of other hair removal methods such as hair removal creams and razors. *Id.* ¶ 22–23. Importantly, these treatments are preliminary steps that lead towards the more

---

[6] Fed. Bureau of Prisons, *Gender-Affirming Care of Transgender and Gender Nonbinary Persons*, at p. 4, https://perma.cc/U5UT-S9PN, (June 2023).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

invasive and complex gender-affirming surgeries that can mark the final stage in an individual's transition process. *Id.*

To date, despite a BOP provider referring Ms. Buckingham for these consultations, she has not been able to consult with any specialist for speech therapy, laser hair removal, or gender-affirming surgery, including facial feminization surgery. Buckingham Decl. ¶¶ 16, 29. Through this Motion, Ms. Buckingham seeks relief from this Court to require BOP to schedule these consultations which have either been delayed or denied.

**D. BOP has delayed and/or denied Ms. Buckingham access to this medically necessary care.**

On September 12, 2024, Associate Warden M. Bowlin sent a memorandum to the TEC stating it was being sent "in response" to Ms. Buckingham's "request to receive facial feminization surgery" along with her requests for speech and communication therapy and professional facial hair removal. *Id.* ¶ 19, Exhibit 8.

On October 28, 2024, the TEC told Ms. Buckingham that she had been "reviewed by the TEC on 10/11/2024 with the following recommendations: Hormones are not on target. TEC recommends AIC Buckingham remain at a male institution, work with health services to maximize hormone levels, and follow institution rules." *Id.* ¶ 22, Exhibit 11. Two days later, the BOP told Ms. Buckingham she would have additional lab work performed to reevaluate her hormone levels and that she would be re-reviewed by the TEC "at least yearly." *Id.* ¶ 25, Exhibit 12.

Since October 2024, the BOP has not re-evaluated Ms. Buckingham or otherwise addressed her requests for facial feminization surgery, laser hair removal, or speech therapy. *Id.* ¶ 35. Nor have any of the Defendants facilitated her referrals for these consultations. *Id.* ¶ 36.

**E. Defendants persist in delaying and/or denying Ms. Buckingham medically necessary care after Ms. Buckingham filed suit.**

After filing suit, with the assistance of counsel Ms. Buckingham secured a psychologist for a pre-surgery assessment. *See* Nanfelt Decl. ¶ 5. On June 11, 2025, by telephone and email

Ms. Buckingham's counsel asked defense counsel whether BOP would agree to schedule a pre-surgery assessment for Ms. Buckingham, which, if agreed, would negate the need for motions practice. *Id*. ¶¶ 3–4. Ms. Buckingham's counsel provided defense counsel with the rate and availability for a telemedicine appointment with Dr. Meg Manthos, the only psychologist in the State of Washington with WPATH certification. *Id*. ¶ 5. As of June 11, 2025, Dr. Manthos had confirmed her availability for June 24, 2025, or June 25, 2025, and Ms. Buckingham's counsel requested a response from defense counsel in five days. *Id*. Despite multiple follow-ups by Ms. Buckingham's counsel, the defense did not confirm agreement to the proposed plan schedule an appointment with Dr. Manthos. *Id*. ¶ 6. Instead, at 8:35pm on Friday, June 20, 2025, defense counsel informed Ms. Buckingham's counsel that BOP had transferred Ms. Buckingham out of state to FCI Butner, a BOP facility in North Carolina. *Id*. ¶ 7.

On June 24, 2025, Ms. Buckingham's counsel made a second attempt to reach resolution with Defendants, proposing to stay the case if BOP would agree to schedule the provider-recommended and medically necessary consultations within 30 days of Ms. Buckingham's arrival at FCI Butner. *Id*. ¶ 8. In a telephonic call on June 26, 2025, the parties discussed the proposal made June 24, 2025, and the defense stated they needed more time to determine BOP's position. In response to a second follow-up email, on July 1, 2025, defense counsel stated that he had "been working to schedule something with [FCI] Butner but still no luck." *Id*. ¶ 11.

**F.     Ms. Buckingham's severe emotional distress will persist absent relief from this Court.**

"The consequences of denial or lack of access to gender-affirming surgeries for residents of institutions who cannot access such care outside of their institutions may be serious, including substantial worsening of gender dysphoria symptoms, depression, anxiety, suicidality, and the possibility of surgical self-treatment (e.g., autocastraction or autopenectomy)." WPATH SOC 8.

So, too, for Ms. Buckingham. After learning the TEC did not approve her referral for facial feminization surgery, Ms. Buckingham experienced thoughts of self-harm, including thoughts of self-castration. *See* Buckingham Decl. ¶ 23. In response, BOP conducted two suicide risk

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

assessments, noting that her "suicidality was associated with her surgery request not yet being approved." *Id* ¶ 20, Exhibit 9 and ¶ 21, Exhibit 10. Since that time, Ms. Buckingham has felt increased distress because her referrals for further gender-affirming care have not occurred. *Id.* ¶¶ 26–30. She feels that her gender dysphoria is "worsening" and has and continuously experiences increased thoughts of self-castrating or committing suicide. *Id.* ¶¶ 37–38. In her own words, without any further treatment, she questions "whether life is worth living." *Id.* ¶ 37. Without access to the gender-affirming care she was referred for in August 2024, she fears that her "thoughts of self-harm and suicide will be hard to resist." *Id.* ¶ 38.

## IV. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "At the same time, however, federal courts 'must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners.'" *Id.* (quoting *Brown v. Plata*, 563 U.S. 493, 511 (2011)). "Nor may federal courts 'allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration.'" *Id.* (quoting *Brown*, 563 U.S. at 511).

Under the traditional test to obtain a preliminary injunction, a plaintiff must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *See Porretti*, 11 F.4th at 1047 (citing *Winter*, 555 U.S. at 20). When the government opposes the injunction, the last two factors "merge into one inquiry." *Id.* at 1050 (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1037, 1092 (9th Cir. 2014)). Further, when a plaintiff seeks a mandatory injunction—which orders a responsible party to act—the injunction will issue only if "extreme or very serious damage will result" and not "in doubtful cases or where the injury complained of is capable of compensation in damages." *Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 8

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

In the Ninth Circuit, courts also employ the "serious questions" test, also known as a "sliding scale" variant of the *Winter* test. [7] *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024); *see also, e.g.*, *Robinson v. Labrador*, 747 F. Supp. 3d 1331, 1339 (D. Idaho 2024). Under this alternative test, a plaintiff need only establish "serious questions going to the merits" if there is "a balance of hardships that tips sharply towards the plaintiffs," in addition to the other two *Winter* factors. *See Flathead-Lolo-Bitterroot*, 98 F.4th at 1190 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Ms. Buckingham satisfies both tests.

## V.     ARGUMENT

### A.     The traditional *Winter* test is satisfied.

#### 1.     Ms. Buckingham is likely to succeed on her Eighth Amendment Claim.

"'Deliberate indifference to serious medical needs of prisoners' violates the Eighth Amendment." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To establish such a violation, "a prisoner must first 'show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Id.* (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)) (internal quotation marks omitted). Then, a plaintiff must "show the [official's] response to the need was deliberately indifferent." *Id.* at 786 (quoting *Jett*, 439 F.3d at 1096). Where a prisoner challenges a chosen treatment, they must show that "the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)); *accord Porretti*, 11 F.4th at 1047.

---

[7] While the Ninth Circuit has arguably expressed some doubt about the applicability of the "sliding scale" test to a request for a mandatory injunction, *see Doe v. Snyder*, 28 F.4th 103, 111 n.4 (9th Cir. 2022), the court has not explicitly foreclosed its application.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

### a. Ms. Buckingham's gender dysphoria is a serious medical need because it causes her significant mental and physical distress.

Under the Eighth Amendment, a serious medical need "exists if failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Jett*, 439 F.3d at 1096). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Here, gender dysphoria is a serious medical condition that causes "clinically significant distress—distress that impairs or severely limits an individual's ability to function in a meaningful way." *Edmo*, 935 F.3d at 785; *see also* Karasic Decl. ¶¶ 48–53. Ms. Buckingham's gender dysphoria causes her to feel distress, depression, and anxiety. Buckingham Decl. ¶ 11. The condition also causes her to experience thoughts of self-harm, including self-castration, and thoughts of suicide. *Id.* ¶ 12. Ms. Buckingham's feelings of depression and thoughts of self-harm and suicide have persisted despite the treatment she has received to date, including hormone therapy. *Id.* ¶¶ 11–12, 20–21, 26, 33–34, 37–38.

Accordingly, Ms. Buckingham's gender dysphoria is a serious medical need under the Eighth Amendment. *See Edmo*, 935 F.3d at 785 (holding gender dysphoria is a sufficiently serious medical need when it causes depression and thoughts of self-castration); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1186 (N.D. Cal. 2015) (holding that a prisoner establishes a serious medical need where they "continue[] to experience severe symptoms of gender dysphoria" despite "years of treatment in the form of hormone therapy and counseling"); *see also Hundley v. Aranas*, No. 21-15757, 2023 WL 166421, at *1 (9th Cir. Jan. 12, 2023) (on review of dismissal, holding that "[g]ender dysphoria is a serious medical condition under the Eighth Amendment"); *Gordon*

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

*v. Inslee*, No. 3:21-CV-5802-BJR-DWC, 2023 WL 2874062, at *13 (W.D. Wash. Feb. 6, 2023) (noting that "the Ninth Circuit has held" that gender dysphoria is a serious medical need).

> **b.** **Defendants were deliberately indifferent to Ms. Buckingham's gender dysphoria when they delayed and/or denied her recommended consultations for surgery, hair removal, and speech therapy.**

Defendants were deliberately indifferent to Ms. Buckingham's serious medical needs: their decision to delay and/or deny Ms. Buckingham's recommended consultations was medically unacceptable under the circumstances, and they delayed and/or denied the consultations in conscious disregard of an excessive risk to Ms. Buckingham's health. *See Edmo*, 935 F.3d at 785; *see also* Karasic Decl. ¶¶ 85–94. Indeed, failing to provide Ms. Buckingham with access to medically recommended referrals to be evaluated for facial feminization surgery, laser hair removal, and speech therapy is textbook deliberate indifference. *See, e.g.*, *Norsworthy*, 87 F. Supp. 3d at 1189–90 (finding deliberate indifference where defendants failed to refer plaintiff to a specialist for further evaluation and "chose to ignore the clear recommendations of her mental health provider").

> **(i)** **Defendants' decision to delay and/or deny Ms. Buckingham's recommended consultations was medically unacceptable under the circumstances.**

"Accepted standards of care and practice within the medical community are highly relevant in determining what care is medically acceptable and unacceptable." *Edmo*, 935 F.3d at 786. In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [a court] need not defer to the judgment of prison doctors or administrators." *Id.* (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)). "In the final analysis under the Eighth Amendment, [a court] must determine, considering the record, the judgments of prison medical officials, and the views of prudent professionals in the field, whether the treatment decision of responsible prison authorities was medically acceptable." *Id.*

Here, considering the record, the judgment of BOP healthcare providers, and the views of Ms. Buckingham's expert, Dr. Dan H. Karasic, Defendants' choice to delay and/or deny Ms. Buckingham the recommended consultations—which would merely maintain her medical

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

treatment consistent with the advice of her medical providers—was not medically acceptable under the circumstances. *See* Karasic Decl. ¶¶ 88–92. A BOP provider referred Ms. Buckingham for these consultations on August 13, 2024. No reason is given in the medical records for why these simple consultations have not occurred since then. Karasic Decl. ¶ 87. Delay in scheduling the consultations results in an increase of severe mental and physical distress to Ms. Buckingham from her diagnosed gender dysphoria, which has been documented to be exacerbated by delays in access to care. *Id.* ¶ 91.

Defendants may argue that providing Ms. Buckingham with hormone treatment and offering certain social accommodations was sufficient medical treatment of Ms. Buckingham's gender dysphoria. But a plaintiff alleging deliberate indifference "need not prove complete failure to treat." *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). To the contrary, providing "some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements." *Edmo*, 935 F.3d at 793. After all, "[j]ust because defendants have provided a prisoner with *some* treatment consistent with the Standards of Care, it does not follow that they have necessarily provided her with *constitutionally adequate* treatment." *Norsworthy*, 87 F. Supp. 3d at 1187 (internal alterations omitted) (quoting *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (emphases in original)). If, for example, a prisoner has two excruciatingly painful teeth that require removal, removing just one is hardly sufficient (and it could even be evidence that the failure to remove the second tooth was deliberately indifferent).

As applied here, pointing to hormone treatment and social accommodations cannot shield Defendants reneging on their ongoing duty to continue to provide necessary medical care. Ms. Buckingham started hormone treatment on December 8, 2023. The WPATH SOC 8 recommends a period of only six months on hormones before undergoing *genital* surgery, a period that has already been well exceeded. Karasic Decl. ¶ 94. And here, Ms. Buckingham is seeking a medical consultation for *facial feminization* surgery, as well as for laser hair removal, and speech therapy. And by BOP's own guidance, these are ""minimally invasive" and "non-invasive"

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 12

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

gender-affirming treatments compared to genital surgery. Any attempt to point to hormone treatment is a ruse. By delaying and/or denying Ms. Buckingham access to these consultations for necessary gender-affirming care, Defendants have not provided medically acceptable—and thus constitutionally adequate—treatment.

> (ii) **Defendants have delayed and/or denied Ms. Buckingham's recommended consultations in conscious disregard of an excessive risk to Ms. Buckingham's health.**

Deliberate indifference is present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This standard "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

"Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, *or it may be shown by the way in which prison physicians provide medical care*.'" *Id.* (emphasis added) (quoting *McGuckin*, 974 F.2d at 1059). Indifference may also be shown "by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." *Norsworthy*, 87 F. Supp. 3d at 1189 (quoting *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994))). "A prisoner need not show his harm was substantial," although such a showing would provide "additional support" for their claim. *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). And a prison official "need not have intended any harm to befall the inmate; 'it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Edmo*, 935 F.3d at 793 (quoting *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 837)).

Here, Defendants acted with deliberate indifference when they delayed and/or denied Ms. Buckingham's recommended consultations for gender-affirming care. Karasic Decl. ¶ 89. First, Defendants failed to sufficiently respond to Ms. Buckingham's serious medical need. They

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

provided Ms. Buckingham with just enough medical care to know that her gender dysphoria caused her severe mental and physical distress, as demonstrated by her medical records and continual communications with Defendants. Karasic Decl. ¶ 91. Faced with the prospect of serious harm to Ms. Buckingham, including self-harm and suicide, Defendants still chose to delay and/or deny her the needed consultations for gender-affirming care. And second, Defendants' failure to sufficiently respond caused severe harm to Ms. Buckingham.

Beginning with the medical records, which are central to this case, Defendants knew that a BOP provider recommended on August 13, 2024, that Ms. Buckingham receive consultations for gender-affirming surgery, laser hair removal, and speech therapy. The recommendations listed a target date of November 13, 2024, for the speech therapy consultation; December 13, 2024, for laser hair removal; and February 13, 2025, for facial feminization surgery. Buckingham Decl. ¶ 14, Exhibit 4 at 000043. Other medical records confirm BOP employees knew these consultations had been recommended. *Id.* Clinical notes from Dr. Grant Haven acknowledge that "gender-affirming care was approved for facial surgery" and that Ms. Buckingham "hasn't felt listened to until now." *Id.* ¶ 18, Exhibit 7 at 000036. By ignoring the recommendations of Ms. Buckingham's medical provider, Defendants acted with deliberate indifference. *See Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) (holding that "a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon").

Despite this knowledge, Defendants decided not to facilitate any of these three recommended consultations and have continued to delay and/or deny Ms. Buckingham's access to this medically necessary care. *See* Buckingham Decl. ¶¶ 35–36. Indeed, records from other BOP providers note that Ms. Buckingham's facial feminization surgery referral was either denied or delayed. *Id.* ¶ 26, Exhibit 13 at 000026 (noting on November 25, 2024, that Ms. Buckingham's suicidal ideation resurged "with denial of gender affirming facial surgery"); and ¶ 32, Exhibit 17 at 000009 (noting on February 26, 2025, that Ms. Buckingham's "[s]urgery has been delayed and may be cancelled due to EO").

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Ms. Buckingham's medical records demonstrate the acute consequences for delaying and denying the provider-recommended care, given the severe mental and physical distress she suffers due to her gender dysphoria, including her thoughts of self-harm, and her thoughts of suicide:

- BOP FOIA MedRec 000201 (noting a BOP provider diagnosed Ms. Buckingham with gender dysphoria in December 2023) (Buckingham Decl. ¶ 7, Exhibit 1 at 000201);[8]

- BOP FOIA MedRec 000133 (12/05/2023 clinical encounter notes confirming assessment of "Transgender/Gender Identity DO/Gender Dysphoria") (*Id.* ¶ 8, Exhibit 2 at 000133);

- BOP FOIA MentRec 000003 (4/30/2025 suicide risk assessment notes explaining that as of 1/26/2024, Ms. Buckingham "reported experiencing distress related to her male sexual organs and the desire to undergo gender-affirming surgery" and that she "submitted a cop-out reporting a strong urge to remove her testicles herself") (*Id.* ¶ 34, Exhibit 19 at 000003);

- BOP FOIA MentRec 000037 (10/24/2024 suicide risk assessment noting that Ms. Buckingham "has not endorsed suicidal thoughts for about a year and believed the news about her surgery attributed to her suicidal ideation") (*Id.* ¶ 20, Exhibit 9 at 000037);

- BOP FOIA MentRec 000034 (10/28/2024 suicide risk assessment noting that psychologist Dr. Harris was concerned about Ms. Buckingham's "stabilization due to her report of endorsing suicidal ideation 'each time [she] looks in the mirror'") (*Id.* ¶ 21, Exhibit 10 at 000034);

- BOP FOIA MedRec 000016 (12/26/2024 clinical encounter notes acknowledging Ms. Buckingham expressed thoughts of self-harm) (*Id.* ¶ 28, Exhibit 15 at 000016);

- BOP FOIA MedRec 000009–10 (02/26/2025 clinical encounter notes explaining Ms. Buckingham "has been having more suicidal thoughts as she sees a loss of progress towards her gender transition," "questions now if life is worth living" "[t]hinks more about killing herself[,]" that "[h]er gender dysphoria was improving, but now is worsening[,]" and that she has had a "resurgence" in suicidal ideation "in recent months with denial of medically necessary gender affirming care" and that "[r]ecent policy changes are detrimental to her mental health and have increased suicidal ideation") (*Id.* ¶ 32, Exhibit 17 at 000009–10).

Defendants' access to such records shows their awareness of Ms. Buckingham's serious medical needs. *See Edmo*, 935 F.3d at 793 (holding defendant physician acted with deliberate indifference where he knew the plaintiff suffered from gender dysphoria, experienced significant distress, and

---

[8] The Declaration of Dr. Rutledge that Defendants submitted in support of their opposition to Ms. Buckingham's Motion for a Temporary Restraining Order confirms the date of this diagnosis. ECF No. 22 ¶ 8.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

attempted to castrate herself); *Norsworthy*, 87 F. Supp. 3d at 1189 (explaining defendant prison officials had access to plaintiff's entire medical file, which confirmed her ongoing symptoms resulting from her gender dysphoria).

Yet the medical records are not the only form of notice Defendants received of Ms. Buckingham's severe distress. Ms. Buckingham has repeatedly contacted various BOP officials and employees, informing them of her distress and seeking additional medical care for her gender dysphoria. These communications include:

- Message sent to BOP staff on July 22, 2024, requesting formal evaluation and treatment plan for speech therapy, laser hair removal, and gender-affirming surgery (Buckingham Decl. ¶ 13, Exhibit 3);

- Message sent to HSA Director on August 14, 2024, asking when referral to transgender specialist for consults for speech therapy, laser hair removal, and gender affirming surgery will occur (*Id.* ¶ 15, Exhibit 5);

- Message sent to Transgender Executive Council on August 22, 2024, making formal request for gender affirming surgery (*Id.* ¶ 17, Exhibit 6); and

- Message sent to Defendant Posalski on December 21, 2024, asking why she was never referred to consult with a transgender specialist and that she continues "to have suicide ideation, urges to self harm (self surgery), depression, anxiety, and other problems related to ineffective treatment of my gender dysphoria" and that she is "continuing to mentally deteriorate and need medical help" (*Id.* ¶ 27, Exhibit 14).

Ms. Buckingham clearly communicated her need for this medical care to BOP officials and employees. BOP's ongoing refusal to schedule these medically necessary consultations despite communications from Ms. Buckingham's counsel, who proposed specific dates for a confirmed WPATH provider for consultation, further shows disregard for her ongoing medical needs. Nanfelt Decl. ¶¶ 3–11.

Ultimately, Defendants' failure to adequately respond to Ms. Buckingham's medical needs has caused her substantial harm. Ms. Buckingham has had increased thoughts of self-castration or killing herself. Buckingham Decl. ¶ 26, 28, 33–34. She questions whether life is worth living and feels that her gender dysphoria is worsening. *Id.* ¶ 37. "Without access to gender-affirming care like surgery, hair removal, and speech therapy," she states, "I fear that my thoughts of self-harm and suicide will be hard to resist." *Id.* ¶ 38.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 16

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

* * *

For all these reasons, Ms. Buckingham is likely to succeed on the merits of her Eighth Amendment claim. Faced with Ms. Buckingham's serious medical need of gender dysphoria, Defendants acted with deliberate indifference and offered inadequate medical care when they delayed and/or denied Ms. Buckingham consultations for facial feminization surgery, laser hair removal, and speech therapy.

**2.      Ms. Buckingham is likely to suffer irreparable harm absent an injunction.**

Under the second factor of the traditional *Winter* test, Ms. Buckingham must show that she would suffer irreparable harm absent injunctive relief. *See Porretti*, 11 F.4th at 1050. Where a plaintiff alleging a constitutional violation and injury has shown likelihood of success on the merits, "that showing usually demonstrates [they are] suffering irreparable harm no matter how brief the violation." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). As is applicable here, mandatory injunctions are not granted unless "'extreme or very serious damage will result.'" *Maryln Nutraceuticals, Inc.*, 571 F.3d at 879 (quoting *Anderson*, 612 F.2d at 1115). Injuries and risks of additional harm to a prisoner's mental health—including suicide or self-harm and "debilitating symptoms"—amount to "very serious or extreme damage" and may constitute irreparable harm. *Porretti*, 11 F.4th at 1050 (citing *Edmo*, 935 F.3d at 797–98).

Here, this standard is met. Defendants delayed and/or denied Ms. Buckingham access to medically recommended *and* necessary consultations for gender-affirming surgery, laser hair removal, and speech therapy. Delaying and/or denying Ms. Buckingham access to these consultations has caused, and will continue to cause Ms. Buckingham irreparable injury, including the exacerbation of her gender dysphoria and increased risk of depression, anxiety, self-harm (including attempts to self-castrate), and suicidality. Buckingham Decl. ¶¶ 26, 28, 33–34; Karasic Decl. ¶¶ 73, 80–84 (experiencing symptoms including anxiety, panic attacks, and thoughts of self-harm and suicide).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 17

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Like the plaintiff in *Edmo*, Ms. Buckingham has expressed that her gender dysphoria causes her feelings of hopelessness, depression, anxiety, and suicidal ideation, and she has felt concerned about her ability to avoid "acting on" her "thoughts and impulses" to perform self-surgery. *See* Buckingham Decl. ¶¶ 11–12, 20–21, 26, 28, 33–34, 37–38; Karasic Decl. ¶¶ 91–92; *see also Edmo*, 935 F.3d at 797 (describing plaintiff's testimony that her gender dysphoria caused her to feel "'depressed,' 'disgusting,' 'tormented,' and 'hopeless'" and finding that "severe, ongoing psychological distress and the high risk of self-castration and suicide" constitute irreparable harm); *Porretti*, 11 F.4th at 1050 (citing *Edmo*, 935 F.3d at 797–98) (holding that "[e]motional injuries, psychological distress, and risk of suicide" may also constitute irreparable harm). Because Ms. Buckingham's psychological distress arises from her negative perceptions of her appearance and her body, that distress is inescapable and omnipresent to her, exacerbated each time she looks in a mirror. *See* Buckingham Decl. ¶ 33.

Ms. Buckingham will also suffer irreparable harm by virtue of being denied her constitutional rights. Without an injunction, Ms. Buckingham will be deprived of the "constitutional right to adequate medical care," which "is sufficient to establish irreparable harm." *See Porretti*, 11 F.4th at 1050 (quoting *Edmo*, 935 F.3d at 798). For that reason, too, Ms. Buckingham has demonstrated irreparable harm.

### 3. The balance of equities and the public interest both favor granting an injunction.

The merged balance-of-the-equities and public-interest factors also favor granting an injunction. The "balance of the equities" analysis concerns the burdens or hardships to Ms. Buckingham compared with the burden on Defendants if an injunction is ordered. *Porretti*, 11 F.4th at 1050 (citing *Winter*, 555 U.S. at 24–31). The "public interest" analysis is focused on an injunction's "'impact on nonparties rather than parties.'" *Id.* (quoting *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003)).

The balance of equities strongly favors Ms. Buckingham. Absent an order enjoining Defendants from further delaying and/or denying necessary medical care, the harm Ms. Buckingham has suffered and will continue to suffer will be significant. Every day without

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

access to the necessary gender dysphoria treatment will cause Ms. Buckingham significant distress and impair her mental health, as well as increase the risk of suicidality and self-harm. *See* Buckingham Decl. ¶¶ 11–12, 20–21, 26, 28, 33–34, 37–38; *see also* Karasic Decl. ¶¶ 91–92. Further, Ms. Buckingham has shown a strong likelihood of success on her Eighth Amendment claim. Yet since Ms. Buckingham filed suit, Defendants have rejected offers by Ms. Buckingham's counsel to assist in providing the necessary medical care.

On the other side of the scale, Defendants will not suffer any harm from abiding by their constitutional duty to provide medically necessary health care to Ms. Buckingham. *Baird*, 81 F.4th at 1042 (9th Cir. 2023) (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) (stating that the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Furthermore, "the [government's] responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *see, e.g.*, *Gammett v. Idaho State Bd. of Corrs.*, No. CV05–257, 2007 WL 2186896, at *15–16 (D. Idaho July 27, 2007) (determining that the balance of the hardships tipped "sharply" in plaintiff's favor where plaintiff had attempted self-surgery and had suicidal ideation). BOP has been providing referrals for gender-affirming care, including gender-affirming surgery, for years and following through on scheduling these medically referred and necessary consultations will not cause any harm to Defendants. The consultations Ms. Buckingham seeks now are "minimally invasive" and "non-invasive" treatments compared to the invasive and complex gender-confirming surgeries that can mark the final stage in an individual's transition process. *See supra* Section III.C.

Any potential "logistical and financial burdens" Defendants might face in providing Ms. Buckingham with the consultations pales in comparison to the hardships Ms. Buckingham faces. *See Porretti*, 11 F.4th at 1046 (finding that burdens to plaintiff that included "ongoing and severe mental-health symptoms" "overwhelmingly outweigh[ed]" the defendants' "logistical and financial burdens" in providing the requested relief).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 19

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Finally, the public interest strongly weighs in favor of an injunction. As the district court in *Porretti* explained (later quoted and affirmed by the Ninth Circuit), "[t]he public has an interest in ensuring the continued dignity of [individuals] incarcerated in federal prisons," and "[i]nherent in that dignity is the recognition of serious medical needs, and their adequate and effective treatment" pursuant to the Eighth Amendment. *Porretti*, 11 F.4th at 1046. As with irreparable harm, where a plaintiff alleging a constitutional violation and injury has shown likelihood of success on the merits, that showing "tips the public interest sharply in [her] favor." *Baird*, 81 F.4th at 1040; *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). It is "always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1040 (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).

*   *   *

For all these reasons, a preliminary injunction should issue under the traditional *Winter* test. Defendants should be ordered to schedule Ms. Buckingham's medically recommended and necessary consultations regarding gender-affirming surgery, laser hair removal, and speech therapy to take place within 30 days of Ms. Buckingham's arrival in Butner, North Carolina.

**B.    The "serious questions" or "sliding scale" test is also satisfied.**

Ms. Buckingham has also satisfied the Ninth Circuit's "sliding scale" test. Ms. Buckingham has at least established "serious questions going to the merits" of this case. *Flathead-Lolo-Bitterroot*, 98 F.4th at 1190. Ms. Buckingham has a serious medical need, and as demonstrated by Dr. Karasic's declaration, there is no medical reason for delaying consultations for gender-affirming care. *See supra* Section V.A.1. Further, the balance of hardships "tips sharply" in Ms. Buckingham's favor. *Flathead-Lolo-Bitteroot*, 98 F.4th at 1190. The harm Ms. Buckingham has suffered and will continue to suffer as a result of the delay and/or denial of care amounts is serious and extreme, whereas the harm to Defendants should they be ordered to provide this care by scheduling the consultations is virtually nonexistent, particularly where

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 20

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Defendants have a constitutional obligation to provide this care. *See supra* Section V.A.3. Finally, Ms. Buckingham has also demonstrated irreparable harm, and an injunction is in the public interest. *See supra* Sections V.A.2, V.A.3. Therefore, a preliminary injunction should also issue under the "sliding scale" test.

## VI.    CONCLUSION

Ms. Buckingham respectfully requests that the Court grant her Motion for Preliminary Injunction. Defendants should be enjoined from any further delay to her provider-recommended and medically necessary consultations, all three of which should be ordered to occur within 30 days of Ms. Buckingham's arrival in Butner, North Carolina, or some other reasonable period as determined by the Court.

Dated: July 2, 2025.                      Respectfully Submitted,

                                          **KELLER ROHRBACK L.L.P.**

                                          By: *Chris N. Ryder*
                                              Chris N. Ryder, WSB No. 58732
                                              Benjamin B. Gould, WSB No. 44093
                                              Cari Campen Laufenberg, WSB No. 34354
                                              Nathan N. Nanfelt, WSB No. 45273
                                              Elizabeth W. Tarbell, WSB No. 62763
                                              Nicandro Iannacci, *pro hac vice*
                                              1201 Third Avenue, Suite 3400
                                              Seattle, Washington 98101
                                              Telephone: (206) 623-1900
                                              cryder@kellerrohrback.com
                                              bgould@kellerrohrback.com
                                              claufenberg@kellerrohrback.com
                                              nnanfelt@kellerrohrback.com
                                              etarbell@kellerrohrback.com
                                              niannacci@kellerrohrback.com

                                          *Attorneys for Plaintiff*

                                          I certify that this memorandum contains 7,151
                                          words, in compliance with the Local Civil Rules.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
(No. 2:25-cv-00701-RSM-DWC) - 21

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900