UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NANI LOVE BUCKINGHAM f/n/a BRIAN P. BUCKINGHAM,<br><br>      Plaintiff,<br> v.<br><br>FEDERAL BUREAU OF PRISONS, et al.,<br><br>      Defendants. | CASE NO. 2:25-CV-701-RSM-DWC<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: October 3, 2025 |

The District Court has referred this action to United States Magistrate Judge David W. Christel. Currently pending before the Court is Plaintiff Nani Love Buckingham's, f/n/a Brian P. Buckingham,[1] Motion for Preliminary Injunction (Dkt. 46) and Defendants Federal Bureau of Prisons ("BOP"), Pam Bondi, William K. Marshall, III, Dana R. DiGiacomo, Shane Salem, Christopher A. Bina, Andrew Cooper, Kevin Posalski, and Robert Mc Ginnis' Cross-Motion to Dismiss or Stay (Dkt. 56). After considering the record, the Court recommends the Honorable Ricardo Martinez grant Buckingham's Motion for Preliminary Injunction (Dkt. 46), deny Defendants' Cross-Motion (Dkt. 56), and issue a preliminary injunction.

---

[1] Plaintiff Buckingham's preferred pronouns are she/her. Therefore, the Court will use Buckingham's preferred pronouns throughout this Report and Recommendation.

REPORT AND RECOMMENDATION - 1

I.   Background

In the Amended Complaint, Buckingham, who is represented by Court-appointed counsel, alleges Defendants have failed to provide her with necessary medical care. Dkt. 38. Buckingham is a transgender woman incarcerated by the BOP. She has been diagnosed with gender dysphoria and "requires medically necessary care to treat her gender dysphoria and her psychological distress[.]" *Id*. at ¶ 2. Relevant to the pending Motion for Preliminary Injunction, Buckingham alleges a BOP provider recommended Buckingham receive consultations for voice and communication speech therapy, professional facial hair removal, gender-affirming surgery, and other medically necessary gender-affirming care as recommended. *Id*. at ¶ 3. Buckingham contends she continues to receive hormonal therapy, but the BOP has denied her requests for consultations, no longer uses her preferred pronouns, and has denied her access to feminine-typical clothing, grooming, and hygiene products. *Id*. As a result of these denials, Buckingham contends Defendants have denied her necessary medical care. *Id*. at ¶ 4.

On July 2, 2025, Buckingham filed the Motion for Preliminary Injunction. Dkt. 46. On July 23, 2025, Defendants filed their Opposition to Plaintiff's Motion for Preliminary Injunction and Cross-Motion to Dismiss or Stay. Dkt. 56. Buckingham filed her reply on August 21, 2025, and, on August 27, 2025, Defendants filed their reply. Dkts. 67, 74. On September 12, 2025, the Court held oral argument.

II.   Discussion

Buckingham seeks an order requiring Defendants to schedule medical consultations for speech therapy, laser hair removal, and facial feminization surgery ("the Consultations"). Dkt. 46.

A. *Request to Dismiss or Stay*

Defendants' primary argument is that the Motion for Preliminary Injunction should be denied and this case should be dismissed or stayed because Buckingham's requested relief has been subsumed by *Kingdom v. Trump*, No. 1:25-cv-00691-RCL (D.D.C.). Dkt. 56. Buckingham asserts that she is unable to receive relief for individualized care from the *Kingdom* court and, therefore, this Court should not dismiss or stay this matter.

In *Kingdom*, the plaintiffs are inmates in the custody of the BOP who have been diagnosed with gender dysphoria. *See* 2025 WL 1568238. The plaintiffs challenge Executive Order 14168 ("EO 14168") and the BOP's two implementing memoranda. *Id*. at * 1. The plaintiffs specifically challenge the BOP's denial of access to hormone medications and social accommodations. *Id*. The court in *Kingdom* certified a class "consisting of all persons who are currently or will be incarcerated in BOP facilities with a current diagnosis of gender dysphoria or who receive such a diagnosis in the future." *Id*. at *13. The *Kingdom* court also issued a preliminary injunction enjoining the defendants, including the BOP, from "implementing Section 4(c) of Executive Order 14168 against any class member in this action[.]" *Kingdom v. Trump*, No. 1:25-cv-00691-RCL (D.D.C. Aug. 20, 2025) at Dkt. 79 (order extending preliminary injunction).

Section 4(c) of EO 14168 states:

> The Attorney General shall ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex.

Exec. Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025).

REPORT AND RECOMMENDATION - 3

1  Defendants assert Buckingham's request is a funding issue and EO 14168 prohibits
2  Defendants from spending funds on the Consultations. Regardless of whether EO 14168
3  specifically prohibits expending funding for the Consultations,[2] Buckingham's claims are not
4  subsumed by the *Kingdom* lawsuit.

5  A "district court may dismiss 'those portions of [the] complaint which duplicate the
6  [class action's] allegations and prayer for relief.' " *Pride v. Correa*, 719 F.3d 1130, 1133 (9th
7  Cir. 2013) (quoting *Crawford v. Bell*, 599 F.2d 890, 893 (9th Cir. 1979)). However, "a district
8  court may not 'dismiss[ ] those allegations of [the] complaint which go beyond the allegations
9  and relief prayed for in [the class action].' " *Id.* (citations omitted). In *Pride*, the Ninth Circuit
10 found the plaintiff's "[i]ndividual claims for injunctive relief related to medical treatment [were]
11 discrete from the claims for systemic reform addressed" by the class action. 719 F.3d at 1136–
12 37. The Ninth Circuit determined that, "where an inmate brings an independent claim for
13 injunctive relief solely on [her] own behalf for medical care that relates to [her] alone, there is no
14 duplication of claims or concurrent litigation." *Id,* at 1137 (concluding a California prisoner
15 could bring an independent claim for injunctive relief solely on his own behalf for specific
16 medical treatment denied to him). "To preclude an inmate from proceeding on a claim for

---

[2] The language of EO 14168 directs that Federal funds should not be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex. Buckingham is requesting the Court order consultations and stated the Consultations could lead to "treatment." EO 14168 explicitly states that funds cannot be used for "medical procedure[s], treatment[s], or drug[s]." EO 14168 does not define "medical procedure, treatment, or drug" and Defendants have not provided evidence showing the BOP's interpretation of EO 14168.

EO 14168 is silent as to whether funding can be used for medically necessary care that is not a medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex. As the plain language of EO 14168 does not necessarily prohibit medical care which is not a "medical procedure, treatment, or drug," it does not appear that the Consultations, which are arguably not treatment, are prohibited under EO 14168. *See* CONSULTATION, Black's Law Dictionary (12th ed. 2024) (defining consultation as an act of asking the advice or opinion of someone (such as a lawyer) or a meeting in which parties consult or confer).

REPORT AND RECOMMENDATION - 4

injunctive relief for [her] individual medical care would lead to unwarranted delay." *Id*. The court explained that "[a]n inmate who successfully proved that prison officials were deliberately indifferent to [her] serious medical needs would be powerless to petition the courts for redress of the violation until" a class action has been fully resolved. *Id.*

Here, in discussing the commonality and typicality prongs of class certification, the *Kingdom* court stated,

> Though the members of the putative class have their own distinctive medical needs, they are united insofar as they each share a diagnosis of a condition that is sometimes treated by the provision of gender-affirming care. The plaintiffs do not claim that all class members are actually injured by the denial of gender-affirming care, but rather by a blanket policy that may prevent them from accessing such care, should they be deemed to need it due to their shared medical condition. While the Court may not be able to answer whether all individual class members should receive gender-affirming care on a class basis, the questions that the plaintiffs *do* present—i.e. whether a uniform policy prohibiting people with a given medical condition from receiving a certain treatment for that condition violates the Eighth Amendment or the Administrative Procedure Act—*are* amenable to judicial consideration without the Court wading into a thousand personalized medical assessments.

*Kingdom*, 2025 WL 1568238, at *14. As clearly articulated by the *Kingdom* court, the claim at issue in *Kingdom* is whether a uniform policy prohibiting people with a given medical condition from receiving a certain treatment for that condition violates the Eighth Amendment or the Administrative Procedure Act.

Here, Buckingham seeks, on her own behalf, an independent claim for injunctive relief for her specific necessary medical need – the Consultations. Unlike the broad policy related relief requested in *Kingdom*, Buckingham's requested relief is narrow and specifically related to individualized care Buckingham has requested the BOP approve to treat her gender dysphoria. Her claim, to have the BOP provide previously prescribed consultations, is precisely the type of claim that is discrete from the policy claims in *Kingdom*. As in *Pride*, Defendants here also "fail

REPORT AND RECOMMENDATION - 5

1  to proffer any authority for their argument that a discrete, individual claim for injunctive relief
2  may be delayed because a pending class action seeks systemic reform relating to the same
3  general subject matter." 719 F.3d 1137. Therefore, Buckingham's claims "go beyond" the
4  allegations and relief prayed for in *Kingdom* and a dismissal or stay of her case before this Court
5  is not warranted. *See Pride*, 719 F.3d at 1133 (concluding the district court may not dismiss
6  claims that "go beyond" the allegations and relief requested in a separate class action).

7      In sum, Defendants assert this matter should be dismissed or stayed because the claims in
8  this action are included in the *Kingdom* class action. *See* Dkt. 56. While the parties do not dispute
9  Buckingham is part of the *Kingdom* class, Buckingham's claims extend beyond the allegations
10 and relief prayed for in *Kingdom*. Therefore, the Court recommends Defendants' request that this
11 matter be dismissed or stayed because Buckingham's case has been subsumed by the *Kingdom*
12 lawsuit be denied.

13     B.  *Ripeness and Exhaustion*

14     Defendants also argue Buckingham's claims are not ripe and are unexhausted. First,
15 Defendants argue the case is not ripe because the BOP has not approved nor denied the
16 Consultations she's requesting and Buckingham is being transferred to a different facility. Dkt.
17 56. Defendants contend that, because Buckingham is being transferred, she should be required to
18 wait until she can be evaluated at the new institution, the Low Security Correctional Institution
19 located in Butner, North Carolina ("FCI Butner"). *Id*. Buckingham has been transferred to FCI
20 Butner and has been evaluated. A BOP doctor at FCI Butner summarily discontinued the
21 requests for the Consultations. Dkt. 71. The record does not reflect that any additional action has
22 been taken related to the requests for consultations for speech therapy and laser hair removal.
23 The BOP, however, denied the request for a facial feminization consultation without explanation
24

REPORT AND RECOMMENDATION - 6

a day after the consultation request was discontinued. *See* Dkt. 71-1 at 4. The BOP had the opportunity to consider the requests for the Consultations and has provided no meaningful evidence to explain why the Consultations were discontinued or denied. Rather than consider the requests for the Consultations after arriving at FCI Butner, the BOP, without justification, discontinued the Consultations and summarily denied the request for a facial feminization consultation as not medically indicated. The BOP cannot obtain a dismissal of this action because it delayed in considering and denied medically necessary consultations. Thus, Buckingham's request is not unripe simply because the BOP has declined to decide if the Consultations should occur.

Second, Defendants argue Buckingham has not exhausted her administrative remedies. Dkt. 56. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), *accord, Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA"); *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc). The prisoner must complete the administrative review process in accordance with the applicable rules. *Woodford*, 548 U.S. at 92-95 (finding "proper" exhaustion means full compliance with all procedural requirements of an institution's grievance process).

A defendant bears the initial burden of showing there was an available administrative remedy and that the plaintiff did not exhaust that remedy. *Albino*, 747 F.3d at 1169, 1172. Here, Defendants have not met the initial burden of showing there was an available administrative

REPORT AND RECOMMENDATION - 7

remedy and that Buckingham did not exhaust that remedy. *See* Dkt. 56. Defendants provide argument that Buckingham could not have exhausted the administrative remedies because the care she has requested has not yet been denied. *Id*. at 11. Defendants have not provided evidence showing the BOP has an administrative grievance process. Further, Defendants have not shown a grievance process was available to Buckingham. Instead, the BOP delayed in determining if Buckingham should receive the Consultations. Defendants' delays have essentially made any administrative grievance process unavailable to Buckingham and should not foreclose Buckingham from being able to bring this lawsuit. As Defendants have not shown Buckingham had an available administrative remedy, Defendants' exhaustion argument fails.

For the above stated reasons, the Court is not persuaded by Defendants' arguments that Buckingham's requested relief is unripe and unexhausted.[3]

C. *Preliminary Injunction Standard*

As the Court determined Defendants have not shown the claims at issue are subsumed by the *Kingdom* lawsuit, unripe, or unexhausted, the Court will now turn to the merits of the request for injunctive relief.

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). To obtain a preliminary injunction, the moving party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

---

[3] Defendants also assert Buckingham's claims are moot because the policies that were in effect when Defendants' alleged unconstitutional conduct began are barred by EO 14168. Dkt. 74. However, Defendants also argue Buckingham's claims are covered by the *Kingdom* court, which reinstated all policies in place prior to EO 14168's implementation. Therefore, Defendants argument that EO 14168 has negated the BOP's previous policies and has made Buckingham's claims moot is not persuasive.

1    relief, that the balance of equities tips in his favor, and that an injunction is in the public

2    interest." *Id.*

3        As an alternative to this test, a preliminary injunction is appropriate if "serious questions

4    going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's

5    favor," thereby allowing preservation of the status quo when complex legal questions require

6    further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35

7    (9th Cir. 2011). However, the "serious questions" approach supports the court's entry of an

8    injunction only so long as the plaintiff also shows that there is a likelihood of irreparable injury

9    and that the injunction is in the public interest. *Id*. at 1135. The moving party bears the burden of

10   persuasion and must make a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at

11   22.

12       Buckingham seeks a mandatory preliminary injunction. Dkt. 46. The Ninth Circuit has

13   "defined a mandatory injunction as one that goes beyond simply maintaining the status quo and

14   orders the responsible party to take action pending the determination of the case on its merits."

15   *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022). "The standard for issuing a mandatory

16   preliminary injunction is high." *Id*. "In general, mandatory injunctions are not granted unless

17   extreme or very serious damage will result and are not issued in doubtful cases or where the

18   injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v.*

19   *Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotations omitted).

20       1.  Evidence

21       The evidence shows, in December of 2023, a BOP healthcare provider diagnosed

22   Buckingham with gender dysphoria. Dkt. 47, Buckingham Dec., ¶ 7. Buckingham began

23   hormone therapy in December of 2023 and was given "access to and use[s] bras, female typical

24

REPORT AND RECOMMENDATION - 9

1  underwear, and gender-affirming commissary items including make-up." *Id*. at ¶¶ 8-9. Despite

2  her treatment, Buckingham continues to physically and mentally suffer from gender dysphoria.

3  *Id*. at ¶ 11. Buckingham has "had over 30 suicide risk assessments, been placed on suicide watch

4  at least seven times, attempted suicide three times, and [has] thoughts of self-castration." *Id*. at ¶

5  12. On August 13, 2024, a BOP medical provider submitted requests for Buckingham to receive

6  consultations for speech therapy, laser hair removal, and facial feminization surgery (identified

7  above as "the Consultations"). *Id*. at ¶ 14; Dkt. 51-4 at 4. "Despite having a BOP provider submit

8  these consultation requests, [Buckingham has] yet to consult with any specialist for speech

9  therapy, laser hair removal, or gender-affirming surgery including facial feminization surgery."

10 Dkt. 47, Buckingham Dec., ¶16. Treatment notes dated September 4, 2024, indicate

11 Buckingham's "gender-affirming care was approved for facial surgery." Dkt. 51-6 at 2.

12 Buckingham states that, on October 28, 2024, the Transgender Executive Council ("TEC")

13 denied Buckingham's request for facial feminization surgery because her hormones were not on

14 target. Dkt. 47, Buckingham Dec., ¶ 22; Dkt. 47 at 17. The response Buckingham received stated

15 Buckingham was reviewed by the TEC on October 11, 2024 and the TEC had the following

16 recommendations: "Hormones are not on target. TEC recommends AIC [(Adult in custody)]

17 Buckingham remain at a male institution, work with health services to maximize hormone levels,

18 and follow institution rules." Dkt. 47 at 17.

19      On July 1, 2025, counsel for Defendants stated BOP had not denied any of the

20 Consultations and stated that, hopefully, once Buckingham's transfer to FCI Butner was

21 complete the Consultations would "be considered during the intake and scheduled as [FDC]

22 Sea[T]ac was in the process of doing before the transfer." Dkt. 49 at 5. On July 8, 2025,

23 Buckingham arrived at FCI Butner. Dkt. 57, Cho Dec., ¶ 8. A treatment note from July 22, 2025

24

REPORT AND RECOMMENDATION - 10

1   states the Consultation requests were discontinued. Dkt. 71 at 7-8. The records indicate

2   consultation requests for breast augmentation, facial female feminization, and buttock

3   feminization/enlargement consultations were "Disapproved by URC[4] held on 7.23.25. Not

4   medically indicated, elective cosmetic surgery." Dkt. 71-1 at 4. There is no indication

5   consultations for speech therapy and laser hair removal have been approved or denied, only that

6   these requests were "discontinued." *See* Dkt. 71 at 7-8.

7      Buckingham presented evidence from a medical expert. Dkt. 48, Karasic Dec. Dr. Dan H.

8   Karasic, M.D., stated he reviewed Buckingham's medical records and found Buckingham was

9   diagnosed with gender dysphoria in December 2023. *Id*. at ¶ 85. He determined Buckingham was

10  referred for the Consultations (for speech therapy, laser hair removal, and facial feminization

11  surgery), the Consultations have not occurred, and no reason was given in the medical records

12  for why the Consultations have not occurred. *Id*. at ¶¶ 86-87. Dr. Karasic opined that "[g]iven the

13  documented distress of Ms. Buckingham associated with gender dysphoria and prolonged delays

14  in receiving care, these consultations should be scheduled as soon as possible." *Id*. at ¶ 88. Dr.

15  Karasic also states that "denial of medically necessary evaluations for and the provisions of

16  gender-affirming surgical treatments and necessary aftercare is inappropriate and inconsistent

17  with [the World Professional Association of Transgender Health (WPATH)] Standards of Care."

18  *Id*. at ¶ 90. Dr. Karasic also reviewed Buckingham's July 2025 medical records that denied a

19  facial feminization consultation. *See* Dkt. 68, Karasic Supp. Dec. Dr. Karasic stated the BOP's

20  decision did not change his opinion about whether a consultation is needed for facial

21  feminization. *Id*. at ¶ 4. Dr. Karasic's opinion is that the "[C]onsultations are still medically

22  necessary." *Id*. at ¶ 3.

23

24      [4] While not defined, it appears the "URC" is the Utilization Review Committee.

REPORT AND RECOMMENDATION - 11

2. <u>Success on the Merits</u>

Buckingham argues she is likely to succeed on the merits of her claims. Dkt. 46. To prove an Eighth Amendment violation based on deliberate indifference, a plaintiff must show that both an objective and subjective element are met: the plaintiff must be confronted with an "objectively intolerable risk of harm," and prison officials must knowingly or recklessly subject the plaintiff to such a known risk. *Farmer v. Brennan*, 511 U.S. 825, 839–40, 846 (1994).[5]

According to the Ninth Circuit, "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotes omitted). "[A] serous medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). However, a mere difference of opinion over proper medical care is insufficient to establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). To have a viable Eighth Amendment claim involving alternative medical treatment, a plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances ... and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id.* at 332 (citations omitted).

Here, Buckingham has presented evidence that she suffers from a serious medical need, gender dysphoria. She also has presented evidence that Defendants were aware of her need for the Consultations. The evidence shows BOP healthcare providers at FDC SeaTac referred

---

[5] The Supreme Court has extended *Bivens* to include inadequate medical care claims against federal defendants. *See Carlson v. Green*, 446 U.S. 14, 19 (1980) (allowing a damages remedy under the Eighth Amendment against federal jailers for failure to provide adequate medical care to an inmate).

REPORT AND RECOMMENDATION - 12

Buckingham for the Consultations, and then BOP healthcare providers at FCI Butner discontinued the requests for the Consultations without reason and summarily denied her request for the facial feminization consultation.[6] Finally, Buckingham has provided medical expert testimony that the Consultations are medically necessary. The Court notes that, during oral argument, counsel for Defendants stated there was no evidence in the record showing the Consultations are not medically necessary.

Based on the record, the BOP delayed approving or denying the Consultations by nearly a year and has not provided record citations explaining the delays and denials of care. Counsel for Defendants stated the decision on the Consultations had not occurred as of July 1, 2025 and would hopefully occur at FCI Butner. *See* Dkt. 45 at 5. At this time, Defendants have still not considered whether Buckingham should receive the laser hair removal and speech therapy consultations; rather, the BOP summarily discontinued the requests. At most, Defendants have cited to evidence that shows the facial feminization consultation was denied by the BOP as "[n]ot medically indicated, elective cosmetic surgery." However, the treatment note does not explain why the facial feminization consultation is not medically indicated and Defendants have provided no medical expert testimony to refute Buckingham's showing that the Consultations are medically necessary. The undisputed evidence shows the Consultations are medically necessary.

In sum, Buckingham has presented undisputed medical expert testimony showing the Consultations are medically necessary and should be scheduled as soon as possible. The undisputed evidence also shows Buckingham has experienced harm from the delay and denial of access to medically necessary care. *See* Dkt. 48, Karasic Dec. Buckingham's evidence shows

---

[6] The Court notes that the medical records are unclear on if Buckingham requested the Consultations or if the medical providers recommended the Consultations. It is clear BOP medical providers requested the Consultations and, regardless, Buckingham has submitted undisputed medical expert testimony showing the Consultations are medically necessary.

REPORT AND RECOMMENDATION - 13

failure to provide the necessary evaluations is inconsistent with the standards of care. The medical records indicate the BOP was aware of Buckingham's diagnosis and need for the Consultations. Defendants have not provided sufficient evidence to rebut Buckingham's showing and the Court finds Buckingham has shown she is likely to succeed on the merits of her claim. Therefore, Buckingham has met the first prong of the preliminary injunction standard.

         3.   <u>Irreparable Harm</u>

Second, for a preliminary injunction to be issued, Buckingham must show she faces immediate and irreparable injury as a result of Defendants' denial of the Consultations. Buckingham has submitted sufficient evidence showing she has suicidal ideations and is a suicide risk because of her gender dysphoria. Buckingham's distress from her gender dysphoria has been exacerbated by the delays in access to care. Dkt. 48, Karasic Dec., ¶¶ 91-92. Buckingham has shown sufficient likelihood of irreparable harm in the absence of preliminary injunctive relief. *See Kingdom*, 2025 WL 1568238, at *11-12 (finding likelihood of irreparable harm in gender dysphoria inmates who experienced suicidal thoughts, lost sleep, and regularly contemplated auto-castration). Further, the deprivation of Buckingham's constitutional right to adequate medical care is sufficient to establish irreparable harm. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th Cir. 2019) (finding irreparable harm prong met for a mandatory injunction where the inmate was suffering from psychological distress and risk of self-castration). The Court finds Buckingham has met the second prong of the preliminary injunction standard.

         4.   <u>Balance of Hardships and Public Interest</u>

The remaining two factors of the preliminary injunction standard—balance of hardships and the public interest—merge when, as here, the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants have not shown a hardship will occur if they have

to provide Buckingham with the Consultations. Defendants argue only that there is serious debate about scientific and policy concerns related the necessity and efficacy of treatments for gender dysphoria and the courts should not involve itself the decisions left to the President of the United States. *See* Dkt. 56 at 15. As the court did in *Kingdom*, this Court also finds that argument unpersuasive. *See Kingdom*, 2025 WL 1568238, at *12. Defendants have not presented factual support for their assertions that such a debate exists. Further, the Court is not taking a position on any policy matters by concluding Buckingham has sufficiently shown she is entitled to the Consultations. Therefore, the Court finds a preliminary injunction does not cause Defendants undue hardships, nor does the issuance of a preliminary injunction in this case cause any significant public consequences.

### 5. Bond Amount

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, a district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The undersigned finds any potential costs and damages to Defendants are de minimis and therefore recommends the Court decline to impose a bond requirement.

### III. Conclusion

For the above stated reasons, the undersigned recommends Buckingham's Motion for Preliminary Injunction (Dkt. 46) be granted and a preliminary injunction be issued ordering Defendants to provide Buckingham with medical consultations for speech therapy, laser hair

removal, and facial feminization surgery.[7] The undersigned also recommends the Court decline to impose a bond requirement. Last, the undersigned recommends Defendants' cross-motion to stay or dismiss (Dkt. 56) be denied without prejudice.[8]

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 3, 2025**.

Dated this 18th day of September, 2025.

David W. Christel
United States Magistrate Judge

---

[7] This Report and Recommendation makes no opinion on treatment as a result of the Consultations and if such treatment would be subsumed by the *Kingdom* lawsuit.

[8] Defendants provide a one sentence request to stay the injunction, if one is issued, so the Solicitor General can determine whether to appeal and, if so, appeal the injunction. Dkt. 56 at 16. As the request lacks any argument or authority, the Court recommends the conclusory request be denied.