UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NANI LOVE BUCKINGHAM f/n/a BRIAN P. BUCKINGHAM, | Case No. C25-701-RSM-DWC |
| Plaintiff, | ORDER GRANTING DEFENDANTS' OBJECTIONS AND DENYING MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| FEDERAL BUREAU OF PRISONS, *et al.*, | |
| Defendants. | |

## I.    INTRODUCTION

This matter comes before the Court on Defendants' Objections, Dkt. #84, to the Report and Recommendation ("R&R") of United States Magistrate Judge David W. Christel, Dkt. #79. Having reviewed the R&R, Defendants' Objections thereto, and the remainder of the record, the Court declines to agree with the R&R in full and will grant in part Plaintiff's Motion and Defendants' Objections as described below.

## II.    BACKGROUND

The Court adopts and incorporates by reference the factual background set forth in the R&R. Dkt. #79 at 2. In the Amended Complaint, Plaintiff Buckingham alleges Defendants have failed to provide her with "medically necessary care to treat her gender dysphoria and her psychological distress[.]" Dkt. #38 at ¶ 2. Relevant to the pending Motion for Preliminary

Injunction, Plaintiff alleges a Bureau of Prison ("BOP") provider recommended she receive consultations for speech therapy, hair removal, gender-affirming surgery, and other medically necessary care as recommended. Plaintiff contends that, while she continues to receive hormonal therapy, BOP has denied her consultation requests, no longer uses her preferred pronouns, and has denied her access to feminine-typical clothing, grooming, and hygiene products, thus denying her necessary medical care.

On July 2, 2025, Plaintiff filed the Motion for Preliminary Injunction. Dkt. #46. On July 23, 2026, Defendants filed their opposition and a cross-motion to dismiss or stay. Dkt. #56. Following responsive briefings, Magistrate Judge Christel held oral argument on September 12, 2025. Dkt. #77.

On September 25, 2025, the parties stipulated to extending Defendants' deadline to file objection to October 6, 2025. Dkts. #81, #82. On October 2, 2025, Magistrate Judge Christel again held oral argument to hear Defendants' request for stay in these proceedings due to the lapse in funds during the current shutdown. Dkt. #83. Judge Christel denied the request but extended Defendants' deadline to October 8. *Id.* Defendants filed Objections on October 8, 2025. Dkt. #84. Plaintiff through counsel filed her Reply on October 21, 2025. Dkt. #85.

### III.    DISCUSSION

#### A.  Legal Standard

"A judge of the [district] court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Objections require "specific written objections to the proposed findings and recommendations" of a magistrate judge. *Id*. at (b)(2). "The statute makes it clear that the district judge must review the magistrate judge's findings and

recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (emphasis in original).

**B. Analysis**

**1. Defendants' Cross-Motion to Dismiss or Stay**

Before considering Plaintiff's Motion, Magistrate Judge Christel first looked at Defendants' request to dismiss or stay the case based on Plaintiff's requested relief being "subsumed" by an ongoing class action, *Kingdom v. Trump*, No. 1:25-cv-00691-RCL (D.D.C.) ("*Kingdom* Dkt."). Dkt. #79 at 3.

*Kingdom* concerns President Trump's Executive Order ("E.O.") 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," and BOP's subsequent implementing memoranda. 2025 WL 1568238, at *1 (D.D.C. June 3, 2025). The *Kingdom* plaintiffs, three current BOP inmates with gender dysphoria diagnoses, challenged BOP's denial of access to hormone medications and social accommodations and sought an injunction and class certification. *Id.* Finding for the plaintiffs, the *Kingdom* court certified a class "consisting of all persons who are currently or will be incarcerated in BOP facilities with a current diagnosis of gender dysphoria or who receive such a diagnosis in the future." *Id.* at *13. The court (1) stayed BOP's Implementing Memoranda, (2) enjoined the defendants from enforcing E.O. 14168 "as applied to medical hormone therapy and social accommodations" against the class, and (3) required the defendants to continue providing "hormone therapy and social accommodations in accordance with BOP policy and practice in effect immediately prior to" E.O. 14168. *Kingdom* Dkt. #68 at 2. When extending the preliminary injunction order, the court added provisions that specifically enjoined the defendants, including BOP, from implementing Section 4(c) of E.O. 14168 against the class members and ordered that they "restore and maintain access to those treatment modalities for

those who previously received them pursuant to a [BOP] prescription[.]" *Kingdom* Dkt. #79 at

2. Section 4(c) states:

> The Attorney General shall ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex.

90 Fed. Reg. 8615 (Jan. 20, 2025).

Defendants raise a discrepancy over the definition of "consultation." Finding that E.O.

14168 provides no definitions for "medical procedure, treatment, or drug" and that Defendants

did not provide evidence of an interpretation, Magistrate Judge Christel looked to Black's Law

Dictionary's definition of consultation: "an act of asking the advice or opinion of someone (such

as a lawyer) or meeting in which parties consult or confer." Dkt. #79 at 4 n.2 (citing to

CONSULTATION, Black's Law Dictionary (12th ed. 2024). Since this seemed to mean that

consultations "are arguably not treatment," Judge Christel found that E.O. 14168 did not prohibit

Plaintiff's consultations. *Id*.

Defendants look to a different dictionary definition to refute this analysis:

> First, in making its recommendation, the Report sought to sidestep the clear comity issue between the injunction Buckingham seeks and the *Kingdom* class action, by finding that the Executive Order bars "treatment" but not "consultation," Dkt. 79 at 4 n.2, and by disavowing any "opinion on [whether] treatment as a result of the consultations . . . would be subsumed by the *Kingdom* lawsuit," *id*. at 16 n.7. But in so doing, the Report refuses to see the forest for the trees. The interventions Buckingham seeks are subsumed by the *Kingdom* lawsuit, for all the reasons set out above. And medical consultations regarding these interventions are a step in treatment: self-evidently, no patient can receive surgery without undergoing a consultation regarding that surgery. The Report's quotation of *Black's Law Dictionary* for the definition of "consultation" (Dkt. 79 at 4) is inapposite: Buckingham is of course seeking, not legal consultations, but medical consultations. If a dictionary definition is required, *Merriam-Webster* is more applicable: a consultation is "a deliberation between physicians on a case or its treatment." Indeed, Buckingham has never argued that consultations fall outside of the scope of the Executive Order, and BOP's actions demonstrate that the Executive Order prohibits consultations for surgeries aimed at altering an inmate's appearance to that of the opposite sex. Ryder Decl. Ex. 2 at USAO_000300; Dkt.

38 ¶¶ 4-5, 103 (alleging that BOP denied the consultations on the basis of the Executive Order).  Notwithstanding the Magistrate Judge's contrary view of the matter, medical consultations are clearly and unequivocally an integral aspect of the process of medical treatment.

Dkt. #84 at 6-7.

Judge Christel ultimately determined that, "[r]egardless of whether EO 14168 specifically prohibits expending funding for the Consultations, Buckingham's claims are not subsumed by the *Kingdom* lawsuit."  Dkt. #79 at 4.  While the Court is not convinced that consultations are not a part of medical treatments, the Court agrees with Plaintiff that this "distinction was relegated to a footnote and otherwise not material to the outcome."  Dkt. #85 at 9.  While "the claim at issue in *Kingdom* is whether a uniform policy prohibiting people with a given medical condition from receiving a certain treatment for that condition violates the Eighth Amendment or the Administrative Procedure Act[,]" Judge Christel reasoned that Plaintiff's "claim, to have the BOP provide previously prescribed consultations, is precisely the type of claim that is discrete from the policy claims in *Kingdom*."  *Id*. at 5.

Both Judge Christel and Defendants look to the Ninth Circuit's decision in *Pride v. Correa* as well.  In *Pride*, the plaintiff California state prisoner claimed that various prison officials violated his Eighth Amendment rights by denying him prescribed knee braces and a mattress, resulting in pain and sleeplessness.  719 F.3d 1130, 1132 (9th Cir. 2013).  The defendants argued that the plaintiff's claim was subsumed by an ongoing class action of California prisoners.  *Id*. at 1133.  Concluding that the "class seeks systemic reform of medical care in the California prisons for inmates with serious medical needs[,]" the Ninth Circuit held that "where a California prisoner brings an independent claim for injunctive relief solely on his own behalf for specific medical treatment denied to him, *Plata* [the class] does not bar the prisoner's claim for injunctive relief."  *Id*. at 1136-37.

1    Arguing the opposite, the *Kingdom* defendants contended that the proposed class failed

2    commonality, typicality, and adequacy requirements because the individual members would

3    likely have different medical conditions and needs for gender-affirming care.  2025 WL 1568238

4    at *14.  The *Kingdom* court disagreed:

> If the contemplated relief were for each class member to be provided with gender-
> affirming care, the defendants might be right; whether such care is appropriate for
> any given inmate is indeed a person-specific judgment.  But that is not the nature
> of the plaintiffs' claims, nor does it accurately describe the relief sought.  Though
> the members of the putative class have their own distinctive medical needs, they
> are united insofar as they each share a diagnosis of a condition that is sometimes
> treated by the provision of gender-affirming care.  The plaintiffs do not claim that
> all class members are actually injured by the denial of gender-affirming care, but
> rather by a blanket policy that may prevent them from accessing such care, should
> they be deemed to need it due to their shared medical condition.  While the Court
> may not be able to answer whether individual class members should receive gender-
> affirming care on a class basis, the questions that the plaintiffs *do* present—i.e.
> whether a uniform policy prohibiting people with a given medical condition from
> receiving a certain treatment  for that condition violates the Eighth Amendment or
> the Administrative Procedure Act—are amenable to judicial consideration without
> the Court wading into a thousand personalized medical assessments.
> . . .
> The defendants argue that because the plaintiffs' individual medical conditions may
> not be identical to those of the putative class members, they are not likely to be able
> to adequately represent the interests of the putative class members.  But this is
> clearly wrong. . . . As the plaintiffs point out, the named plaintiffs and putative class
> members all face the same *legal* injury: namely, the harm that will flow from a
> uniform policy prohibiting prescribed medical treatment.  The named plaintiffs
> have each been diagnosed with gender dysphoria and seek gender-affirming care
> just like every other member of the putative class. . . . Even if the defendants were
> right that the named plaintiffs suffer medical conditions different from the rest of
> the putative class, their harm flows from the same acts of the defendants as the rest
> of the putative class: the Executive Order and BOP implementing memoranda.
> Indeed, it would not be possible for the named plaintiffs to obtain full relief without
> enjoining the actions of the Executive branch.

20    *Id*. at *13-14 (internal cites omitted) (emphasis in original).

21    Like the *Kingdom* plaintiffs, Plaintiffs' Amended Complaint alleges that, while her

22    hormone treatment continues, BOP has denied her consultations, use of her preferred pronouns,

23    and access to clothing, grooming, and hygiene products because of E.O. 14168 and the

ORDER GRANTING DEFENDANTS' OBJECTIONS AND DENYING MOTION FOR
PRELIMINARY INJUNCTION - 6

Implementing Memoranda.  Dkt. #38 ¶¶ 4-6.  Plaintiff requests that the Court (1) find that E.O. 14168 violates her Eighth Amendment rights and the Administrative Procedure Act, and (2) enjoin Defendants "from implementing Section 4(c) of Executive Order 14168."  *See* Dkt. #38 at Sec. VI (Prayer for Relief).  These relief requests are the same as the systemic injunctive relief sought in *Kingdom*.  As Plaintiff states in her Reply, "[t]o the extent Ms. Buckingham's claims concern a challenge to the EO and the Implementing Memoranda, those claims may be dismissed without prejudice or stayed."  Dkt. #85 at 5.

However, along with the above systemic requested relief, Plaintiff also specifically requests the Court order Defendants to "schedule medical consultations regarding gender-affirming surgery; voice and communication speech therapy, and professional facial hair removal[.]"  Dkt. #38 at Sec. VI (Prayer for Relief).  The *Kingdom* court's initial order on June 3, 2025, stayed the BOP Implementing Memoranda, "enjoined [Defendants] from enforcing Executive Order 14168 [and the Memoranda] as applied to medical hormone therapy and social accommodations" and required Defendants provide "gender-affirming hormone therapy and social accommodations[.]"  *Kingdom* Dkt. #68 at 2.  Plaintiff's requested care is not included in that *Kingdom* court's order.  The *Kingdom* court's subsequent order on August 20, extending the above injunction, included enjoining Defendants "from implementing Section 4(c)" of E.O. 14168 and required BOP "to restore and maintain access to those treatment modalities for those who previously received them pursuant to a prescription rendered by BOP staff."  *Kingdom* Dkt. #79 at 2.  The Ninth Circuit has held that, where a plaintiff "brings an independent claim for injunctive relief solely on his own behalf for medical care that relates to him alone, there is no duplication of claims or concurrent litigation" because preclusion "from proceeding on a claim for injunctive relief for his individual care would lead to unwarranted delay."  *Pride* at 1137. Furthermore, Plaintiff claims that Defendants' failure to provide necessary care predated E.O.

14168.  *See* Dkt. #85 at 5.  Accordingly, Plaintiff's request that the Court order Defendants "to provide Plaintiff with consultations with a gender dysphoria specialist . . . as promptly as possible" in the instant Motion and Amended Complaint are not precluded by the *Kingdom* class action.  Dkt. #46-1 (proposed order); *see Kingdom* at *14 (finding that, while the court could not "answer whether all individual class members should receive gender-affirming care on a class basis," questions of a BOP policy prohibiting treatment violating the Eight Amendment and APA "*are* amendable to judicial consideration"); *see also Robinson v. Labrador*, 747 F. Supp. 3d 1331, 1348 (D. Idaho 2024) (holding that, where a class sought prison-wide systemic relief for hormone therapy access, individual medical claims for injunctive relief from the challenged provision were not barred by the class action).

In sum, Defendants request that this case be stayed or all of Plaintiff's claims be dismissed.  Plaintiff's claims challenge E.O. 14168, Section 4(c) of said E.O., the BOP Implementing Memoranda, and the denial of her social accommodations, and she requests that Defendants be enjoined from implementing Section 4(c) and provide access to social accommodations.  *See* Dkt. #38 at ¶¶ 91-144 and Sec. VI.  While these are the same as the *Kingdom* class, some of Plaintiff's claims allege actions by the BOP from before E.O. 14168.  *Id.* at ¶ 110 (Count Two: Eight Amendment) and ¶ 125 (Count Three: Disability Discrimination).  Also, the denial of her consultations and request to schedule them are not included in *Kingdom*, and this denial is specifically included in her claims of Fifth Amendment (*id*. at ¶ 103, Count One) and Eighth Amendment violations.  *Id.* at ¶ 103 (Count One), ¶¶ 109 and 115-16 (Count Two).  However, Plaintiff's claims of APA violations are nearly identical to the *Kingdom* class, with only her name creating any difference.  ¶¶ 129-144.

Accordingly, the Court will not dismiss Plaintiff's Fifth Amendment, Eighth Amendment, and Disability Discrimination claims as applied to her specific medical

consultations because they are "independent claim[s] for injunctive relief solely on [her] own behalf for medical care that relates to [her] alone[.]" *Pride*, 719 F.3d at 1137.

Because Plaintiff's (1) APA claims; (2) Eighth and Fifth Amendment and Disability Discrimination claims for not providing social accommodations; and requests that the Court (3) enjoin Defendants from implementing Section 4(c) of E.O. 14168, (4) require Defendants provide social accommodations of clothing, cosmetic, and hygiene items, and (5) continue treatment consistent with medical provider advice are duplicative of the *Kingdom* class claims and preliminary injunction orders, the Court will dismiss these portions of the Amended Complaint. *Id*. at 1133 (holding that a "district court may dismiss 'those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief'") (quoting *Crawford v. Bell*, 599 F.2d 890,893 (9th Cir. 1979)); *see also Aroche v. Park*, No. SACV 17-0367-JGB (KK), 2017 WL 2857525, at *5-6 (C.D. Cal. June 5, 2017) (finding petitioner's arguments subsumed by class where the substantive legal grounds and relief were the same and "only individualized in the sense that it applies to his own particular financial circumstances").

The Court turns to Defendant's objections to Plaintiff's preliminary injunction motion, which is based on a likelihood of success on the merits of her surviving Eighth Amendment claim. *See* Dkt. #46 at 9-17.

## 2. Preliminary Injunction

Since the Court already addressed Defendants' "comity" objection above, the Court turns to Defendants' remaining objections involving Plaintiff's medical expert testimony, her showing of imminent harm, and the R&R's comparison to *Edmo v. Corizon*, Inc., 935 F.3d 757 (9th Cir. 2019). Dkt. #84 at 7-9.

Magistrate Judge Christel found that Plaintiff "presented undisputed medical expert testimony showing the Consultations are medically necessary and should be scheduled as soon

as possible." Dkt. #79 at 13.  Judge Christel found that Defendants cited-to BOP treatment note indicating that the facial feminization consultation was "[n]ot medically indicated, elective cosmetic surgery" did not include any explanation, and Defendants failed to provide any refuting medical expert testimony.  *Id.*

Defendants argue that their "briefing in fact set out several recent cases demonstrating how the WPATH [World Professional Association of Transgender Health] standards of care . . . have been shown to be unreliable[.]"  Dkt. #84 at 7.  Defendants point to *Clark v. Valletta*, 23-7377-CV, 2025 WL 2825325, at *12 (2d Cir. Oct. 6, 2025) and an article from the European Journal of Developmental Psychology for their argument.  *Id.*  However, as Plaintiff points out, the defendants in Clark presented refuting medical expert testimony, versus when Judge Christel asked Defendants' counsel at oral argument if anything in the record shows the consultations are not medically necessary, counsel answered "no."  Dkt. #85 at 9 (citing transcript exhibit).  And the proposed journal article, which the Court may take general judicial notice of, concerns only pediatric gender care.  Accordingly, the Court finds no basis here to disturb the R&R's finding.

The Court is also unconvinced by Defendants' objections to the R&R's finding of irreparable harm.  Defendants note that much of Plaintiff's history of suicidality occurred before her gender dysphoria diagnosis (*see* Dkt. #84 at 8), Defendants ignore her later suicide risk assessments and provide no convincing evidence to refute the R&R's finding that Plaintiff continues to pose a suicide risk due to the alleged denials of care.  *See* Dkts. #85 at 10 (citing to two later risk assessments after denying facial feminization surgery) and #79 at 14.

The Court disagrees with Defendants' argument that "the Report summarily compared Buckingham's circumstances to those at issue in *Edmo* . . . and in so doing understatedly described the plaintiff in *Edmo* as 'suffering from psychological distress and risk of self-castration.'"  Dkt. #84 at 9 (quoting R&R at 14).  In the R&R, Judge Christel stated:

ORDER GRANTING DEFENDANTS' OBJECTIONS AND DENYING MOTION FOR PRELIMINARY INJUNCTION - 10

> Further, the deprivation of Buckingham's constitutional right to adequate medical care is sufficient to establish irreparable harm. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 798 (9th Cir. 2019) (finding irreparable harm prong met for a mandatory injunction where the inmate was suffering from psychological distress and risk of self-castration).

Dkt. #79 at 14. Defendants suggest that Plaintiff "has shown nothing remotely approaching such severe circumstances" as the *Edmo* plaintiff, who struggled with improvement after seven years of treatment and twice attempted self-castration. Dkt. #84 at 9. However, the Ninth Circuit found that that the "persistent distress [plaintiff] Edmo's gender dysphoria causes, as well as the credited expert testimony that absent GCS, Edmo is at risk of further attempts at self-castration, and possibly suicide." *Edmo*, 935 F.3d at 798. This does not require self-castration or the same circumstances to find irreparable harm. Contradicting Defendants' assertion that Plaintiff "undisputably suffers from *less* distress now" (Dkt. #84 at 9), Judge Christel considered Plaintiff's "sufficient evidence" showing suicidal ideations and suicide risk and that "distress from her gender dysphoria has been exacerbated by the delays in access to care." Dkt. #79 at 14 (citing exhibits). The Court does not have to wait and see if Plaintiff's circumstances will equate to the *Edmo* plaintiff's or otherwise to find irreparable harm. Accordingly, the Court agrees with the R&R that Plaintiff has made a sufficient showing of irreparable harm.

## IV.    CONCLUSION

Having reviewed the Report and Recommendation, Defendants' objections, Plaintiff's response, and the remainder of the record, the Court hereby finds and ORDERS:

(1) The Court ADOPTS IN PART the Report and Recommendation, Dkt. #79, as stated above.

(2) Plaintiff's Motion for Preliminary Injunction, Dkt. #46, is GRANTED IN PART.

(3) The Court hereby ENTERS a mandatory preliminary injunction and ORDERS Defendants provide Plaintiff with medical consultations for speech therapy, laser hair

ORDER GRANTING DEFENDANTS' OBJECTIONS AND DENYING MOTION FOR PRELIMINARY INJUNCTION - 11

removal, and facial feminization surgery within thirty (30) days from the date of this Order.

(4) Defendants' Cross-Motion, Dkt. #56, is DENIED AND GRANTED IN PART as stated above.    Plaintiff's claims and requested relief that are duplicative of the *Kingdom* class are DISMISSED.

(5) Plaintiff will file a second amended complaint consistent with this Order within twenty-one (21) days of this Order.

DATED this 12th day of November, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE