# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| NANI LOVE BUCKINGHAM f/n/a BRIAN P. BUCKINGHAM, | Case No. 2:25-cv-00701-RSM-DWC |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| v. | |
| FEDERAL BUREAU OF PRISONS *et al.*, | |
| Defendants. | |

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................... 1

II.    JURISDICTION AND VENUE ..................................................... 2

III.   PARTIES ................................................................................... 3

       A.    Plaintiff ......................................................................... 3

       B.    Defendants .................................................................... 3

IV.    FACTUAL ALLEGATIONS .......................................................... 4

       A.    Gender dysphoria is a serious medical condition that can cause
             significant harm if left untreated. ................................... 4

       B.    Before Executive Order 14168, BOP policies allowed
             individualized treatment for gender dysphoria. ................. 6

       C.    After Executive Order 14168, BOP policies prohibit treatment for
             gender dysphoria. ......................................................... 8

       D.    Before and after Executive Order 14168, Plaintiff did not receive
             medically necessary care ............................................. 10

             1.    Plaintiff's pre-EO 14168 care in custody ............... 10

             2.    Plaintiff's post-EO 14168 care in custody ............. 16

V.     CLAIMS FOR RELIEF ............................................................ 19

       COUNT One — Deprivation of Equal Protection of the Laws (Injunctive
             Relief) .................................................................... 19

       COUNT Two — Failure to Provide Adequate Medical Treatment
             (Injunctive Relief) ................................................... 21

       COUNT Three — Disability Discrimination ............................ 23

VI.    PRAYER FOR RELIEF ............................................................ 24

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - i

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Plaintiff Nani Love Buckingham ("Ms. Buckingham" or "Plaintiff"), by and through her undersigned counsel, hereby files this Second Amended Complaint against the Federal Bureau of Prisons ("BOP" or "Bureau"); Pamela J. Bondi, Attorney General of the United States; William K. Marshall III, Director of BOP; Christopher A. Bina, Assistant Director of the Health Services Division of BOP; Andrew Cooper, Warden at Federal Detention Center SeaTac ("FDC SeaTac"); Kevin Posalski, Health Services Administrator at FDC SeaTac; and Robert McGinnis, Clinical Director at FDC SeaTac, (collectively, "Defendants"), and alleges, upon information and belief, as follows:

## I.    INTRODUCTION

1.    Ms. Buckingham is a transgender woman, currently incarcerated by BOP in FCI Butner in Butner, North Carolina, and previously held at FDC SeaTac in Seattle, Washington. She has been in BOP custody since June 2020. Ms. Buckingham is an enrolled member of the federally recognized Makah Tribe. Prior to her incarceration, Ms. Buckingham lived on the Makah Reservation in Neah Bay, Washington.

2.    Ms. Buckingham has been diagnosed with gender dysphoria, a condition that causes certain transgender people to suffer clinically significant distress because their sex designated at birth does not line up with their gender identity. Ms. Buckingham requires medically necessary care to treat her gender dysphoria and her psychological distress, which includes feelings of hopelessness, anxiety, and suicidal ideation.

3.    After she was diagnosed with gender dysphoria, Ms. Buckingham sought appropriate medical treatment, was prescribed hormone therapy, began using female pronouns, and was given access to feminine-typical clothing, grooming, and hygiene products. A BOP provider placed a consult request for Ms. Buckingham to see a clinician who could further evaluate and manage her dysphoria. Another BOP medical provider also recommended that Ms. Buckingham receive consultations for gender-affirming surgery, voice and communication speech therapy, professional facial hair removal, and other medically necessary gender-affirming care as recommended. Though Ms. Buckingham continues to receive hormone therapy, BOP has

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

denied her requests for consultations for further medically necessary gender-affirming care, no longer uses her preferred pronouns, and has denied her access to feminine-typical clothing, grooming, and hygiene products.

4.     In refusing her requests for consultations for gender-affirming surgery, voice and communication speech therapy, and professional facial hair removal, Defendants have denied Ms. Buckingham medically necessary care, causing life-threatening suffering and harm to Ms. Buckingham, including attempted suicide.

5.     Defendants have continued to deny Ms. Buckingham access to medically necessary care after the issuance of Executive Order 14168, which prohibits BOP from providing inmates access to gender affirming care.[1]

6.     Through this action, Ms. Buckingham seeks the provision of medically necessary treatment for her gender dysphoria, including medical consultations regarding gender-affirming surgery; voice and communication speech therapy; and professional facial hair removal.

7.     Ms. Buckingham seeks injunctive and declaratory relief to remediate Defendants' violations of her constitutional and statutory rights.

## II.     JURISDICTION AND VENUE

8.     Plaintiff brings this suit under the Fifth and Eighth Amendments of the United States Constitution and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.     This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202, Fed. R. Civ. P. 57, 65, and this Court's inherent equitable powers.

---

[1] Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (referred to herein as, "EO 14168", "Executive Order", or "Executive Order 14168"). A pending class action challenges the legality of EO 14168 and its implementation by executive agencies. *See Kingdom v. Trump*, No. 1:25-cv-00691-RCL (D.D.C.).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

10. Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.    PARTIES

**A.    Plaintiff**

11. Plaintiff Nani Love Buckingham[2] is a transgender adult woman. Ms. Buckingham is an enrolled member of the federally recognized Makah Tribe. She is a convicted and sentenced federal prisoner previously incarcerated in FDC SeaTac until June 20, 2025, and is now incarcerated at FCI Butner, where she has been held since July 8, 2025.

**B.    Defendants**

12. The term "Defendants" refers to all Defendants named herein jointly and severally.

13. Defendant Federal Bureau of Prisons is the government entity tasked with medical care for Ms. Buckingham while in custody.

14. Defendant Pamela J. Bondi, the Attorney General of the United States, oversees the United States Department of Justice, including BOP. She is responsible for enforcing and implementing the Executive Order in federal prisons. Defendant Bondi is sued in her official capacity.

15. Defendant William K. Marshall III, the Director of BOP, is responsible for enforcing and implementing the Executive Order in federal prisons. Defendant Marshall is sued in his official capacity.

16. Defendant Christopher A. Bina, the Assistant Director of the Health Services Division of BOP, issued *Executive Order 14168 Compliance* on February 28, 2025. Defendant Bina is sued in his official capacity.

---

[2] Plaintiff is transgender and as such uses her chosen, legal name wherever possible. For identification purposes, Nani Love Buckingham was formerly known as Brian P. Buckingham. Her BOP Register Number is 50205086.

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 3

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

17.     Defendant Andrew Cooper is the Warden at FDC SeaTac. He is responsible for enforcing and implementing Executive Order 14168 ("EO 14168"), and the two BOP memoranda, issued on February 21, 2025, and February 28, 2025, that implement EO 14168 at FDC SeaTac, where Ms. Buckingham is in custody. He is sued in his official capacity.

18.     Defendant Kevin Posalski is the Health Services Administrator at FDC SeaTac. He is sued in his official capacity.

19.     Defendant Robert McGinnis is the Clinical Director at FDC SeaTac. He is sued in his official capacity.

## IV.     FACTUAL ALLEGATIONS

**A.     Gender dysphoria is a serious medical condition that can cause significant harm if left untreated.**

20.     BOP medical providers have diagnosed Ms. Buckingham with gender dysphoria.

21.     "[G]ender dysphoria" is a condition that causes certain transgender people to suffer clinically significant distress because their sex designated at birth does not line up with their gender identity.[3] To be diagnosed with gender dysphoria, the incongruence between one's birth sex and gender identity must have persisted for at least six months and be accompanied by clinically significant distress or impairment in social, occupational, or other important areas of functioning.[4]

22.     If left untreated, gender dysphoria causes serious physical and psychological harm. Symptoms of untreated gender dysphoria can include anxiety, depression, eating disorders, socially isolating behavior, self-harm, and suicidality.[5]

23.     The widely accepted treatment of gender dysphoria aims to resolve the distress associated with the incongruence between a transgender person's designated sex at birth and their

---

[3] *Diagnostic & Statistical Manual of Mental Disorders*, Am. Psychiatric Ass'n, Text Rev. F64.0 (5th ed. 2022), https://doi.org/10.1176/appi.books.9780890425596.

[4] *Id.*

[5] *Id.*

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

gender identity by enabling the individual to live consistently with that identity. This can involve social transition (such as dressing, styling one's hair, and using a name and pronouns that match one's gender identity); hormone treatment to masculinize or feminize the body; and surgeries to change primary and/or secondary sex characteristics.[6]

24. Clinical practice guidelines for the treatment of gender dysphoria in adults have been published by the *World Professional Association for Transgender Health* ("WPATH") and the *Endocrine Society*. WPATH is a professional organization of medical and mental health professionals focused on transgender health care that has issued these guidelines since 1979. The current version was published in 2022.[7] The *Endocrine Society*, a professional association of endocrinologists, first issued guidelines for the treatment of gender dysphoria in 2011 and updated its guidelines in 2017.[8] Major U.S. medical and mental health associations—including the American Medical Association, the American Psychiatric Association, and the American Psychological Association—support the WPATH SOC 8 guidelines; providers regularly refer to them to deliver evidence-based best-practice gender affirming care.

---

[6] *Id.*

[7] Eli Coleman *et al.*, *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8* ("WPATH SOC 8"), 23 Int'l J. Transgender Health S1 (2022), https://www.tandfonline.com/doi/pdf/10.1080/26895269.2022.2100644.

[8] *See* Wylie C. Hembree *et al.*, *Endocrine Treatment of Gender Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. Clinical Endocrinology & Metabolism 3869 (2017), https://doi.org/10.1210/jc.2017-01658, correction at 103 J. Clinical Endocrinology & Metabolism 699 (2018), https://doi.org/10.1210/jc.2017-02548, correction at 103 J. Clinical Endocrinology & Metabolism 2758 (2018), https://doi.org/10.1210/jc.2018-01268.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

**B.** **Before Executive Order 14168, BOP policies allowed individualized treatment for gender dysphoria.**

25. BOP "provides essential medical, dental, and mental health (psychiatric) services" to the incarcerated "in a manner consistent with accepted community standards for a correctional environment."[9]

26. Gender-affirming health care (social transition, hormone therapy, and surgeries) effectively alleviates gender dysphoria, as decades of peer-reviewed research and clinical experience have shown.

27. At least since 2016 and until the issuance of EO 14168 on January 20, 2025, BOP's express policy was to provide incarcerated persons with individualized treatment for gender dysphoria. Before EO 14168, BOP most recently updated its policies in 2023.

28. BOP's 2016 Clinical Guidance states: "Healthcare for [transgender] individuals requires a multidisciplinary approach. . . . The treatment and management of the [transgender] individual requires individualized care guided by treatment goals to allow for successful transition through education, counseling, real-life experience, medical evaluation, hormone treatment, and in some cases, sex reassignment surgery."[10]

29. BOP's 2023 Clinical Guidance states:

> A patient-centered multidisciplinary team approach is recommended for managing issues associated with the incarceration of [transgender] individuals. . . . It is important to have a system in place to allow for individualized treatment. Individuals requesting care for gender dysphoria should have access to a diverse range of treatment services. Patient-centered care explores individualized therapeutic options, which may vary from person to person.[11]

---

[9] *Custody & Care: Medical Care*, Fed. Bureau Prisons, https://www.bop.gov/inmates/custody_and_care/medical_care.jsp (last visited Dec. 2, 2025).

[10] *Medical Management of Transgender Inmates* ("2016 Clinical Guidance") at 6, Fed. Bureau Prisons (Dec. 2016), https://perma.cc/K7RQ-8NTU.

[11] *Gender-Affirming Care of Transgender and Gender Nonbinary Persons* ("2023 Clinical Guidance") at 5, Fed. Bureau Prisons (June 2023), https://perma.cc/U5UT-S9PN.

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

The 2023 Clinical Guidance also states that "[g]ender-affirming health care involves supporting individuals through social, psychological, behavioral, or medical (including hormonal treatment or surgery) treatments—to support and affirm an individual's experienced gender identity."[12] It also notes that "appropriate gender-affirming care, including medical and surgical care, can lessen psychiatric symptoms" associated with gender dysphoria.[13]

30.    Under BOP's 2016 Clinical Guidance and 2023 Clinical Guidance policies and until issuance of EO 14168, BOP had a Transgender Utilization Review Advisory Group comprised of "physicians, psychiatrists, pharmacists, and social workers assigned by the Medical Director to provide clinical review of gender-confirming surgical requests."[14] BOP also had a Transgender Clinical Care Team comprised of "physicians (primary care and psychiatrists), pharmacists, and social workers devoted to advocating and advancing the treatment options for this population. The team provided education and the tools to institutional staff to develop clinical treatment plans for the [transgender] and gender nonbinary population."[15] BOP's Transgender Executive Council ("TEC") was "the agency's official decision-making body on all issues affecting the transgender population," including for individuals' gender-affirming surgery.[16] The TEC met "a minimum of monthly to offer advice and guidance on unique measures related to treatment and management needs of transgender inmates and/or inmates with [gender dysphoria]."[17]

31.    The BOP's *Transgender Offender Manual*, initially issued in 2017, and updated on January 13, 2022, provided for individualized assessment for hormone therapy and other

---

[12] *Id.* at 4.

[13] *Id.* at 4.

[14] *Id.* at 1.

[15] *Id.* at 1.

[16] *Program Statement: Transgender Offender Manual* at 4, U.S. Dep't Just. (Jan. 13, 2022), https://www.documentcloud.org/documents/21192200-2022-transgender-offender-manual/.

[17] *Id.* at 4.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

medical treatment in accordance with the clinical guidance policies.[18] Health care needs, clothing, commissary items, and other accommodations were to be provided to incarcerated transgender persons "based on an individualized assessment."[19]

**C.    After Executive Order 14168, BOP policies prohibit treatment for gender dysphoria.**

32.    On January 20, 2025, President Donald Trump issued EO 14168, titled *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*.[20] EO 14168 bans gender-affirming health care for individuals in BOP custody regardless of the impact on their health.

33.    EO 14168 declares that it is federal policy to recognize only two sexes. It defines "Sex" as "an individual's immutable biological classification as either male or female."[21] In turn, "Male" is defined as "a person belonging, at conception, to the sex that produces the small reproductive cell," and "Female" is defined as "a person belonging, at conception, to the sex that produces the large reproductive cell."[22] EO 14168 mandates that BOP "revise[] its policies concerning medical care to be consistent with this order" and prohibits BOP from expending any federal funds on any "medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."[23]

34.    The stated purpose of EO 14168 is to protect women from "men [who] self-identify as women . . . gain[ing] access to intimate single-sex spaces and activities designed for women," which EO 14168 says "fundamentally attack[s] women by depriving them of their

---

[18] *Id.* at 8.

[19] *Id.* at 12.

[20] EO No. 14168, *supra* note 1.

[21] *Id.* at § 2(a).

[22] *Id.* at §§ 2(d), 2(e).

[23] *Id.* at § 4(c).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

dignity, safety, and well-being."[24] The title of EO 14168 reflects this purpose of purportedly protecting women.[25]

35.    President Trump has issued multiple other executive orders targeting transgender persons.[26]

36.    On information and belief,[27] BOP has implemented EO 14168 through two implementing memoranda ("Memoranda").

37.    On February 21, 2025, Dana R. DiGiacomo, the Acting Assistant Director of BOP's Reentry Services Division and Shane Salem, the Assistant Director of BOP's Correctional Programs Division, issued the first of BOP's Memoranda.[28] The policy (1) prohibits purchase of

---

[24] *Id.* at § 1.

[25] *Id.*

[26] *See, e.g.*, Exec. Order No. 14148, 90 Fed. Reg. 8237 (Jan. 20, 2025) (*Initial Rescissions of Harmful Executive Orders and Actions*, rescinding several of former President Biden's administration orders that recognized rights of transgender people in schools, the workplace, housing, health care, and other settings, consistent with the Supreme Court's decision in *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020)); Exec. Order No. 14183, 90 Fed. Reg. 8757 (Jan. 27, 2025) (*Prioritizing Military Excellence and Readiness*, banning transgender people from serving in the U.S. military, accusing transgender servicemembers of expressing a "false 'gender identity'", and stating that being transgender "conflicts with a soldier's commitment to an honorable, truthful, and disciplined lifestyle, even in one's personal life"); Exec. Order No. 14187, 90 Fed. Reg. 8771 (Jan. 28, 2025) (*Protecting Children from Chemical and Surgical Mutilation*, ordering the federal government to withhold all federal funding from any institution that provides gender-affirming care to people under the age of 19); Exec. Order No. 14190, 90 Fed. Reg. 8853 (Jan. 29, 2025) (*Ending Radical Indoctrination in K-12 Schooling*, banning K-12 schools in the U.S. from recognizing youth's identities by using names or pronouns that align with their gender; threatening teachers who do not comply with criminal prosecution laws banning sexual exploitation of minors and the unlawful practice of medicine without a license); Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025) (*Keeping Men out of Women's Sports*, applying definitions from EO 14168 to "clearly specify[] and clarify[] that women's sports are reserved for women").

[27] Plaintiff makes this allegation upon information and belief because BOP has purposely kept its implementing memoranda offline: "As we [Federal Bureau of Prisons] continue to ensure compliance with the Executive Order on 'Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government,' policies will gradually become available as they are cleared through our review process." *Policy & Forms*, Fed. Bureau Prisons, https://www.bop.gov/PublicInfo/execute/policysearch (last visited Dec. 2, 2025).

[28] Dana R. DiGiacomo & Shane Salem, *Memorandum for all Chief Executive Officers: Compliance with Executive Order "Defending Women from General Ideology Extremism and*

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

"any items that align with transgender ideology"; (2) prohibits granting requests for other accommodations to address gender dysmorphia such as "undergarments that do not align with an inmate's biological sex"; and (3) requires that all BOP staff members refer to inmates using "pronouns corresponding to their biological sex."[29]

38. The first of BOP's Memoranda carves out medical treatments from BOP's enforcement of EO 14168, citing a nationwide temporary restraining order.[30]

39. Defendant Bina issued the second of BOP's Memoranda, directing that "[c]onsistent with Executive Order (EO) 14168 . . . no Bureau of Prisons funds are to be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."[31]

40. On information and belief, BOP has implemented EO 14168 by disbanding the Transgender Utilization Review Advisory Group, the Transgender Clinical Care Team, and the TEC.

41. On information and belief, BOP has implemented EO 14168 by rescinding as policy BOP's 2016 Clinical Guidance, 2023 Clinical Guidance, and *Transgender Offender Manual*.

**D.     Before and after Executive Order 14168, Plaintiff did not receive medically necessary care.**

**1.     Plaintiff's pre-EO 14168 care in custody**

42. Prior to EO 14168 and BOP's Memoranda, and while in custody at FDC SeaTac, Ms. Buckingham received gender-affirming medical treatment; accessed feminine-typical

---

*Restoring Biological Truth to the Federal Government,* Fed. Bureau Prisons (Feb. 21, 2025), attached hereto as Exhibit 1.

[29] *Id.*

[30] *Id.*

[31] Chris Bina, *Memorandum for Chief Executive Officers: Executive Order 14168 Compliance*, Fed. Bureau Prisons (Feb. 28, 2025), attached hereto as Exhibit 2.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

clothing, grooming, and hygiene products; and used her preferred pronouns to address her gender dysphoria.

43. While Ms. Buckingham began socially transitioning over a decade ago, it was only in 2022 that she began living as a woman while in custody. Not until 2023 did Ms. Buckingham feel secure in notifying BOP of her transgender identity to seek medical treatment.

44. In December 2023, BOP providers diagnosed Ms. Buckingham with gender dysphoria and determined that hormone therapy was medically indicated for treatment. She has continuously received hormone therapy since that date.

45. To further address her gender dysphoria, BOP permitted Ms. Buckingham to access feminine-typical clothing, grooming, and hygiene products.

46. Between 2020 and 2022, prior to notifying BOP of her transgender identity, Ms. Buckingham was the subject of 28 suicide risk assessments and placed on suicide watch 7 times. After transitioning socially and openly living as a woman in custody, up until September 2024, Ms. Buckingham had a singular suicide risk assessment. That one instance occurred just after Ms. Buckingham began her hormone therapy.

47. During her January 2024 Suicide Risk Assessment, Ms. Buckingham discussed with a BOP provider "the loose trajectory of evolving her identity within BOP and the importance of maintaining the structural integrity of her male genitalia for her future gender-affirming surgery." Upon hearing this, Ms. Buckingham stated that learning this information was "'a huge deterrent' to acting on distress related to her genitalia," as she had hope that fulsome gender-affirming care would be available to her during her time in BOP custody at FDC SeaTac.

48. Still, in spring 2024, Ms. Buckingham expressed concern that she was "falling through the cracks" and requested adjusting her medication for her gender dysphoria treatment. In a note to Defendant Cooper, Warden at Federal Detention Center SeaTac, around the same time, Ms. Buckingham stated that "[h]aving issues with physical transitioning is causing me extreme stress and anxiety."

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

49.     On March 26, 2024, a BOP provider entered a new consultation request on behalf of Ms. Buckingham to "Other OB/Gynecology, NOS." The BOP provider stated that their reasoning for the request was that Ms. Buckingham was a patient with "transgender dysphoria; requesting an increase in the Estradiol; concern for BP elevation; blood clots and breast cancer with higher doses; request for GYN to further evaluate and manage."

50.     In their notes from that clinical encounter, the BOP provider stated the scheduled target date for the "GYN" consultation request was less than a month later, on April 17, 2024. Ms. Buckingham was not seen by a gynecologist or any other medical provider by that date.

51.     That summer, on July 31, 2024, Ms. Buckingham legally changed her name. Despite taking this gender-affirming step, in a note sharing the update to the TEC just over a week later, Ms. Buckingham stated, "my mental and physical health has continued to fester and deteriorate due to lack of access to care."

52.     On August 13, 2024, a BOP provider determined that Ms. Buckingham needed a more robust gender dysphoria treatment plan. The BOP provider entered several new medically necessary consultation requests on Ms. Buckingham's behalf, including setting scheduled target dates for a consultation with a transgender surgical specialist to evaluate Ms. Buckingham for facial feminization surgery by February 13, 2025, for professional facial hair removal by December 13, 2024, and for voice and communication speech therapy by November 13, 2024.

53.     On September 4, 2024, a different BOP provider who assessed Ms. Buckingham stated that her gender affirming surgery had been "approved" for facial feminization surgery.

54.     The next step in Ms. Buckingham's progress toward receiving this medically necessary surgical consultation lay with the Associate Warden. On September 12, 2024, under the direction of the Warden, the Associate Warden wrote a memorandum to the TEC conveying Ms. Buckingham's request for facial feminization surgery.

55.     Upon asking for an update about her facial feminization surgery request and learning a decision had not been made, Ms. Buckingham experienced suicidal thoughts— something she had not done for almost a year. During the consequent Suicide Risk Assessment

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

on October 24, 2024, Ms. Buckingham stated to a BOP provider that she was "feeling disappointed by the news that her [gender-affirming] surgery had not yet been approved as she desires to no longer look like a man."

56. On October 25, 2024, Ms. Buckingham stated in a note to the TEC that, "I have severe distress and thoughts of suicide every time I look in the mirror and see a man staring back at me. What I see does not match what I feel." Ms. Buckingham informed the TEC that her gender dysphoria had not been effectively treated through hormone therapy and psychiatric medication— consulting with a surgeon about gender-affirming surgery was medically necessary to treat her gender dysphoria and critical for her overall well-being and health.

57. On October 28, 2024, Ms. Buckingham received a message from the TEC stating that Ms. Buckingham's "[h]ormones not on target. TEC recommends AIC Buckingham remain at a male institution, work with health services to maximize hormone levels, and follow institution rules."

58. Ms. Buckingham disputed the TEC finding, initiating a BOP provider request for additional lab testing. Ms. Buckingham asserted that her hormone levels were presumably on target given that since her most recent blood draw—six months prior to the Associate Warden's memorandum to the TEC—her hormone replacement therapy dosage had been increased. An individual affiliated with the TEC told Ms. Buckingham she would share Ms. Buckingham's concerns about her lab work with the TEC.

59. On October 28, 2024, Ms. Buckingham expressed a desire to self-castrate "because at least that would be some improv[e]ment if theres [sic] nothing else to look forward to." As a result, BOP performed another Suicide Risk Assessment on Ms. Buckingham. A BOP provider noted that Ms. Buckingham's "suicidality was associated with her surgery request not yet being approved." BOP then increased Ms. Buckingham's care level to "CARE2-MH";[32] she then was seen monthly by BOP's Psychology Services.

---

[32] The BOP explained that the increase in Ms. Buckingham's care level from Care1-MH to Care2-MH was "due to . . . difficulty managing her mental health symptoms."

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 13

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

60. On October 30, 2024, Ms. Buckingham learned that based on the decision from the TEC, efforts would be made to try to have additional lab work done to reevaluate her hormone levels and her gender-affirming surgery request would be "re-reviewed by the TEC at least yearly. The final decision [was] not 'no,'" and that she would "remain status quo."

61. On December 21, 2024, Ms. Buckingham wrote to Defendant Posalski, Health Services Administrator at FDC SeaTac, inquiring about "[w]hy was I never scheduled for my referred consult to have a transgender specialist to evaluate and manage my gender-affirming care."

62. The next day, Ms. Buckingham followed up to share that she was not able to access a refill option for her estradiol and informed Defendant Posalski that "[a]ll of the problems with my gender affirming care are causing me severe distress every single day."

63. Near the end of the month, on December 26, 2024, Defendant McGinnis, Clinical Director at FDC SeaTac, had a clinical encounter with Ms. Buckingham, in which he noted that she had expressed some thoughts of self-harm related to her "frustration that [she had] not had an increase in [her] estradiol dose in about 9 months." Ms. Buckingham also informed Defendant McGinnis of her "feelings of frustration and bodily discomfort in terms of lack of physical transformation of [her] body." In Defendant McGinnis's report of this clinical encounter, he recorded Ms. Buckingham's "perceived need for eventual breast augmentation and body sculpting because of the lack of desired effects of the hormone therapy." Defendant McGinnis also wrote that "there has been little desired bodily change on the 8 mg daily dose, just some slight breast development."

64. At the end of Defendant McGinnis's December 26, 2024, clinical encounter note he wrote that he sent an email to Ms. Buckingham informing her that he wanted to "try to find and consult with others in BOP with more expertise." Defendant McGinnis also stated that he had conferred with Dr. Pelton, who said he would attempt to help Defendant McGinnis identify and confer with a BOP affiliate with "more expertise," as described above.

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 14

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

65.     In an email to Ms. Buckingham after their December 26, 2024, clinical encounter, Defendant McGinnis relayed his treatment plan for her:

> I want to hold off on the dose increase for now and get some more expert advice as to what to do for your situation. Whomever I consult with, I will give them the particulars of your situation: being on the 8mg daily oral dose for 9 months, the still suboptimal level of blood estrogen of 78 pg/ml, the lack of satisfactory change in body characteristics, etc. And I will see what they say.

> Having said the above, I will move as expeditiously as I can to try to help you achieve what you desire in terms of gender affirming care.

66.     Ms. Buckingham followed up with Defendant McGinnis that evening, conveying her desire for her care team to explore alternative options and consider starting her on a high dose of any alternative option they may select. She went on to inform Defendant McGinnis in her December 26, 2024, evening note that "[t]he potential risks of ineffective or undertreatment (suicide, self-harm, self-surgery) [sic] outweigh the potential risks of starting with too high a dose (there are no specific strong risks associated with a temporary elevation of estradiol). The risks of further ineffective treatment of my GD are very real."

67.     On December 28, 2024, Defendant McGinnis replied to Ms. Buckingham:

> I have determined that there is a team in BOP of people that are expert in Transgender Clinical Care. I will forward information on your case to them to get their advice, although they may not be able to start fully weighing in until after the holidays (Jan. 1, 2025).

68.     In a January 6, 2025, note to Defendant McGinnis, Ms. Buckingham stated that "[i]t has been more than a year without effective treatment of my GD despite my many, many requests for help throughout the year." She also informed Defendant McGinnis that in March 2024, she was "referred by my provider to have an outside transgender specialist assume evaluation and treatment of my GD due to lack of in-house providers with the required expertise. This was rejected/not scheduled."

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 15

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

## 2. Plaintiff's post-EO 14168 care in custody

69.     On January 23, 2025, Ms. Buckingham wrote to Defendant Posalski, relaying that she had been referred to a transgender specialist to manage her care in March 2024 because the BOP provider "didn't believe he could do it himself," and stating that "I was denied this because you said 'we can handle this in house.'"

70.     That same day, Ms. Buckingham also wrote to Defendant McGinnis and stated that Defendant McGinnis "has said that he is uncomfortable doing [her transgender care] himself because he doesn't know how."

71.     In a note addressed to Defendant Cooper on January 25, 2025—soon after EO 14168 went into effect—Ms. Buckingham stated, "I am very concerned that whatever resilience I've had in the past to give me enough of a fight to keep living will soon be gone because I don't see any light at the end of the tunnel in getting the help I need."

72.     Ms. Buckingham again wrote to Defendant Cooper on January 31, 2025, to inform him that "[Defendant] Posalski told me directly that he would not allow me to see a provider because he told me about my HRT [hormone replacement therapy] himself and the doctor wouldn't be doing anything else."

73.     The following day, February 1, 2025, upon reading a statement on a bulletin board at FDC SeaTac, Ms. Buckingham wrote to Defendant Cooper that she had learned that "BOP will comply with the executive order Defending Women from Gender Ideology Extremism and Restoring Biological Truth by removing access to the TEC. I am very distressed and scared about this and how else this will effect [sic] me."

74.     On February 2, 2025, Ms. Buckingham described in writing to Defendant Posalski her interest in seeing "a doctor from Region (Dr. Rutlidge) with experience in providing GA [gender affirming] care[,]" who Ms. Buckingham knew to be at the FDC SeaTac for a couple of weeks. Ms. Buckingham shared that "I think of suicide and self surgery daily and it's getting harder for me to control these urges. I've literally been begging for help with my medical GD [gender dysphoria] treatment." She directed her letter to Defendant Posalski personally "because

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 16

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

several staff have told me that [Posalski] seem[s] to have a personal vendetta in making sure I can't see a provider for the GD [gender dysphoria] treatment problems I'm having. Please don't deny me this opportunity to see a provider with experience in TG [transgender] care."

75. Also on February 2, 2025, Ms. Buckingham sent a note to Health Services stating that Defendant McGinnis told Ms. Buckingham that she is his first transgender patient and that "he has no training or experience with gender affirming (GA) care."

76. On February 3, 2025, Defendant Posalski told Ms. Buckingham that she would not be permitted to see a provider about her gender dysphoria treatment until her next chronic care visit in six months' time.

77. When the first of BOP's Memoranda was enforced on February 23, 2025, Defendants denied Ms. Buckingham access to feminine-typical clothing, grooming, and hygiene products. In a clinical encounter with a BOP provider mere days later, the BOP provider noted: [Ms. Buckingham] has been having more suicidal thoughts as she sees a loss of progress towards her gender transition. Surgery has been delayed and may be cancelled due to [the] EO. . . . She questions now if life is worth living. . . . Her gender dysphoria was improving, but now is worsening. Furthermore, the same BOP provider went on to note that Ms. Buckingham's chronic suicidal ideation had been absent while taking a particular medication, "except for resurgence in recent months with denial of medically necessary gender affirming care." They further stated that "[r]ecent policy changes are detrimental to her mental health and have increased suicidal ideation."

78. On February 27, 2025, a BOP provider informed Ms. Buckingham that "he [sic] has been receiving treatment in accordance with directives currently being provided, and he [sic] will continue to be updated if any future changes occur."

79. On March 4, 2025, Defendant Cooper informed Ms. Buckingham that individuals would no longer be referred for gender-affirming surgeries due to EO 14168. This update came nearly two months after the Warden's Office received Ms. Buckingham's Request for Administrative Remedy regarding her facial feminization surgery, on January 6, 2025.

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 17

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

80.     Later, Ms. Buckingham reported to a BOP provider that having the ability to express her gender identity with make-up, hair accessories, and hygiene products is necessary for her gender-affirming care. On March 6, 2025, that provider responded to Ms. Buckingham's above-described "[g]oal" by identifying the following "[i]nterventions": "Ms. Buckingham will continue to wear make-up, hair accessories, and clothing that align with her self-identified gender of female." The BOP provider further noted that "Ms. Buckingham has indicated that being afforded this opportunity has been helpful in alleviating her distress regarding her physical appearance."

81.     On March 20, 2025, Ms. Buckingham wrote to Defendants McGinnis and Posalski that she "had a lot of increasing distress and mental health problems caused by fear due to Trump's anti-trans executive orders." She also informed Defendants McGinnis and Posalski in another writing dated March 25, 2025, that she is "highly sensitized to unexpected changes in my medical GD [gender dysphoria] treatment due to the Trump EO [14168] trying to eliminate GD treatment in BOP."

82.     The next day, March 26, 2025, Defendant Cooper responded to Ms. Buckingham's Request for Administrative Remedy regarding access to feminine-typical clothing, grooming, and hygiene products. The Warden's Office had received Ms. Buckingham's request a few weeks prior, on March 7, 2025. Defendant Cooper's response was as follows:

> In accordance with national policy, Trust Fund will offer gender specific items for sale on commissary. Sports bras are still available for purchase on commissary, but all other items have been restricted by policy. This is in response to the Executive Order titled *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*.

83.     Less than a week later, on April 1, 2025, Ms. Buckingham described in writing to Defendants McGinnis and Posalski that her "thoughts and urges" to die by suicide and self-castrate "continue to get worse," and that she felt "increasingly hopeless, sad, depressed and anxious," when looking at herself in the mirror. In that same note, Ms. Buckingham wrote that,

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 18

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

"[a]s indicated by my 8/13/24 referral ordered by my FBOP provider in my medical record, surgical GD treatment is required and is the next step in my treatment. The WPATH SoC-8 and an abundance of scientific literature make it clear that my GD will not improve without this."

84.     On April 5, 2025, Ms. Buckingham wrote to Defendant Cooper, alerting him that:

> I really need help with my GD treatment, but Health Services has refused to change my treatment despite the fact that my GD continues to worsen. McGinnis made no changes when he saw me in December because he was not competent in evaluating and managing GD (he said he'd never done it before [sic].

85.     Defendant BOP has caused Ms. Buckingham severe and irreparable harm by denying her medically necessary care. She is experiencing anxiety, thoughts of self-harm and suicide, and thoughts of self-castration, as her gender dysphoria worsens.

86.     Defendants Cooper, McGinnis, and Posalski and BOP, through its agents and employees, knew that Ms. Buckingham suffered from physical and emotional distress stemming from her gender dysphoria and denial of access to medically necessary care.

87.     Despite knowing of Ms. Buckingham's medical need for gender-affirming care, Defendant BOP, through its agents and employees, and Defendants Cooper, McGinnis, and Posalski failed to take necessary steps to ensure Ms. Buckingham received consultations for gender-affirming surgery, voice and communication speech therapy, and professional facial hair removal, and other medically necessary gender-affirming care.

88.     To remedy the harm caused from delayed and denied medical treatment for her serious medical condition of gender dysphoria, Ms. Buckingham's constitutional and statutory claims follow.

## V.     CLAIMS FOR RELIEF

### COUNT ONE — DEPRIVATION OF EQUAL PROTECTION OF THE LAWS
### (INJUNCTIVE RELIEF)
### Fifth Amendment to the United States Constitution
### Against All Defendants in Their Official Capacities

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

89. Plaintiff repeats and re-alleges all allegations in the preceding paragraphs of this Complaint.

90. The Due Process Clause of the Fifth Amendment guarantees equal protection of the laws equivalent to the Equal Protection Clause of the Fourteenth Amendment. Under the Fifth Amendment, discrimination based on sex is presumptively unconstitutional and subject to heightened scrutiny.

91. Discrimination based on transgender status or gender identity is sex discrimination subject to heightened scrutiny.[33]

92. Discrimination based on transgender status is further subject to heightened scrutiny because transgender status is a quasi-suspect class under the Fifth Amendment.[34]

93. Defendants have disrupted Ms. Buckingham's medically necessary gender-affirming care by rejecting her requests for consultations for gender-affirming surgery, voice and communication speech therapy, and professional facial hair removal and other medically necessary gender-affirming care.

94. Defendants have denied Ms. Buckingham's medically necessary care because of her sex. Ms. Buckingham's gender identity and gender presentation are different than her sex assigned at birth and do not conform to stereotypes of her assigned sex. Prisoners whose gender identity and gender presentation match their sex assigned at birth are not denied the same care when it is medically necessary.

95. Defendants have denied Ms. Buckingham's necessary medical care because of her transgender status. Prisoners who are not transgender are not denied the same care when it is medically necessary.

96. Defendants' denial of medically necessary care is subject to heightened scrutiny and is not substantially related to an important governmental objective.

---

[33] *Hecox v. Little*, 104 F.4th 1061, 1079 (9th Cir. 2024).

[34] *Karnoski v. Trump*, 926 F.3d 1180, 1200-01 (9th Cir. 2019).

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 20

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

97.     Defendants' denial of medically necessary care is also motivated by discriminatory animus and is unconstitutional under any level of scrutiny.

98.     Defendants are causing and will continue to cause irreparable harm to Ms. Buckingham, including serious physical, psychological, and emotional harm, distress, and mental anguish.

## COUNT TWO — FAILURE TO PROVIDE ADEQUATE MEDICAL TREATMENT
## (INJUNCTIVE RELIEF)
### Eighth Amendment to the United States Constitution
### Against All Defendants in Their Official Capacities

99.     Ms. Buckingham repeats and re-alleges all allegations in the preceding paragraphs of this Complaint.

100.    In prohibiting the government from inflicting cruel and unusual punishment on individuals accused or convicted of crimes, the Eighth Amendment prohibits deliberate indifference by government officials to the serious medical needs of incarcerated individuals.

101.    To abide by the Eighth Amendment, government officials must provide incarcerated individuals adequate and necessary health care. The health care that government officials must provide must meet accepted standards of care within the medical community.

102.    Ms. Buckingham has been diagnosed with the serious medical condition of gender dysphoria, which causes her serious clinical distress. Without medically necessary treatment, her distress will result in serious and irreparable physical or psychological harm.

103.    Here, that medically necessary gender-affirming care includes gender-affirming surgery, voice and communication speech therapy, professional facial hair removal, and access to other medically necessary gender-affirming care that ameliorate her psychological symptoms, including feelings of hopelessness, anxiety, and suicidal ideation.

104.    Even before EO 14168 was enacted, Defendants delayed and denied Ms. Buckingham the medically necessary treatment of gender-affirming care, including gender-affirming surgery, voice and communication speech therapy, and professional facial hair removal. Despite a BOP provider recommending consultation requests for facial feminization surgery, hair

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

removal, and voice and communication speech therapy in August 2024, Defendants have not arranged for these consultations. Delaying and denying Ms. Buckingham access to such treatment was medically unacceptable under the circumstances.

105.	By denying Ms. Buckingham medically necessary treatment for her gender dysphoria, Defendants have knowingly failed to provide adequate and necessary treatment that is consistent with prevailing medical standards of care for gender dysphoria. Further, by denying Ms. Buckingham medically necessary care, Defendants have knowingly caused and will continue to cause Ms. Buckingham harm by withholding effective treatment for a serious medical need.

106.	By continuing to deny Ms. Buckingham medically necessary treatment for her gender dysphoria after EO 14168 was issued, Defendants have knowingly caused and will continue to cause Ms. Buckingham harm by withholding treatment for a serious medical need.

107.	Defendants have deliberately denied Ms. Buckingham medically necessary care and have caused and will continue to cause Ms. Buckingham serious physical and mental psychological harm, putting Ms. Buckingham at grave risk of worsening physical and psychological symptoms.

108.	Defendants have acted with deliberate indifference to Ms. Buckingham's serious medical needs and to the substantial risk of serious harm to Ms. Buckingham. Ms. Buckingham has continuously notified Defendants of her worsening gender dysphoria and resulting thoughts of suicide and self-castration. Despite knowing of these risks of serious harm, Defendants have not provided Ms. Buckingham with the medically necessary care she seeks, including gender-affirming surgery, voice and communication speech therapy, professional facial hair removal, and access to feminine-typical clothing, grooming, and hygiene products.

109.	Defendants remain deliberately indifferent to Ms. Buckingham's serious medical need to be adequately treated for gender dysphoria, including but not limited to evaluation for gender-affirming surgery by qualified medical personnel with expertise in the diagnosis and treatment of gender dysphoria and provision of such surgery, if determined appropriate, as well

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

as other medical treatments and accommodations that would alleviate Ms. Buckingham's serious medical symptoms.

110.    As a result of Defendants' actions, Ms. Buckingham will continue to suffer irreparable harm unless injunctive relief is granted.

111.    By failing to provide medically necessary treatment to Ms. Buckingham, Defendants have violated the Eighth Amendment to the United States Constitution.

112.    As a result of Defendants' actions and omissions, Ms. Buckingham has suffered and continues to suffer irreparable psychological and physical harm.

## COUNT THREE — DISABILITY DISCRIMINATION
### Rehabilitation Act of 1973, § 504
### Against All Defendants in Their Official Capacities

113.    Ms. Buckingham repeats and re-alleges all allegations in the preceding paragraphs of this Complaint.

114.    Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]" 29 U.S.C. § 794(a).

115.    Ms. Buckingham has a current record and diagnosis of gender dysphoria that is known to Defendant BOP.

116.    Gender dysphoria is a serious medical condition that qualifies as a disability. It is a physical impairment that substantially limits the major life activities of interacting with others, reproduction, social and occupational functioning, and caring for oneself.

117.    BOP is an executive agency that falls within the definition of a covered public entity that is responsible for providing benefits, services, and programs to all individuals in its custody.

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 23

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

118.   Before and after EO 14168 was enacted, Defendants discriminated against Ms. Buckingham because of her disability by failing to provide medically necessary treatment.

119.   Actions taken by Defendants are causing and will continue to cause irreparable harm to Ms. Buckingham, including serious physical, psychological, and emotional harm, distress, and mental anguish.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(1)   Issue a judgment under 28 U.S.C. §§ 2201, 2202 declaring that Defendants' denial of Plaintiff's adequate and medically necessary treatment violates Plaintiff's rights under the Fifth and Eighth Amendments to the United States Constitution and the Rehabilitation Act of 1973 for the reasons and on the Counts set forth above;

(2)   Enter a preliminary and permanent injunction requiring Defendants to provide Plaintiff with adequate and medically necessary care, and schedule medical consultations regarding gender-affirming surgery; voice and communication speech therapy; and professional facial hair removal;

(3)   Award Plaintiff her costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412 and any other applicable laws; and

(4)   Grant such other and further relief as the Court deems just and proper.

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 24

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900

Dated: December 3, 2025.

Respectfully Submitted,

**KELLER ROHRBACK L.L.P.**

By: _Chris N. Ryder_
    Chris N. Ryder, WSB No. 58732
    Benjamin B. Gould, WSB No. 44093
    Cari Campen Laufenberg, WSB No. 34354
    Nathan N. Nanfelt, WSB No. 45273
    Elizabeth W. Tarbell, WSB No. 62763
    Nicandro Iannacci, *pro hac vice*
    1201 Third Avenue, Suite 3400
    Seattle, Washington 98101
    Telephone: (206) 623-1900
    Facsimile: (206) 623-3384
    cryder@kellerrohrback.com
    bgould@kellerrohrback.com
    claufenberg@kellerrohrback.com
    nnanfelt@kellerrohrback.com
    etarbell@kellerrohrback.com
    niannacci@kellerrohrback.com

    ***Attorneys for Plaintiff***

SECOND AMENDED COMPLAINT
(No. 2:25-cv-00701-RSM-DWC) - 25

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
TELEPHONE: (206) 623-1900