District Judge Ricardo S. Martinez
Magistrate Judge David W. Christel

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| NANI LOVE BUCKINGHAM f/n/a BRIAN P. BUCKINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, *et al.,*<br><br>Defendants. | Case No. 2:25-cv-00701-RSM-DWC<br><br>**DECLARATION OF DR. DAN H. KARASIC IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE** |

I, Dan H. Karasic, M.D., hereby declare and state as follows:

1. This declaration supplements opinions set out in my two prior declarations.

2. In my prior declarations I described Ms. Buckingham's gender dysphoria diagnosis and recommendations made for three consultations of facial feminization surgery, laser hair removal, and voice/speech therapy as gender affirming care. I concluded that all three consultations were medically necessary and should be scheduled as soon as possible.

3. It is my understanding that a judge ordered BOP to conduct all three consultations by December 12, 2025.

4. In addition to prior medical records received, I have reviewed records from December 10, 2025 (USAO_1458-1490) and December 4, 2025 (USAO_1454-1457).

DECL. OF DR. KARASIC
(No. 2:25-cv-00701-RSM-DWC)

Docusign Envelope ID: 7B727373-6B5C-4183-ADAE-575BE0C533A7

5. One record (USAO_1458-1490) describes a consultation for voice/speech therapy. *See* USAO_1465 ("Pl presented to the ambulatory care office for gender-affirming voice therapy evaluation"). This consultation describes a diagnosis of Gender Dysphoria, with Ms. Buckingham having dysphoria about her voice establishing the medical necessity of this care, which was then scheduled.

6. An evaluation by Tiffany Williams, PA-C on 12/10/25 includes a diagnosis of Gender Dysphoria and discussion of distress from facial hair, but reports that the prison does not have a contract with a provider of laser hair removal. There is no plan in the record for the provision of this service.

7. Another record describes a telehealth "Clinical Encounter" 90 minutes in length on December 4, 2025 by Dr. E. Weidow. The described purpose of the evaluation was "to assess for medical necessity of requested gender-affirming procedures." USAO_1454.

8. As support for the opinion that it is "not possible" to make a definitive gender dysphoria diagnosis, Dr. Weidow cites the lack of medical and psychological stability, citing Statement 5.3d of the WPATH guidelines. USAO_1456.

9. WPATH Standards of Care 8 Statement 5.3d states, in part: "An assessment of mental health symptoms can improve transition outcomes, particularly when the assessment is used to facilitate access to psychological and social support during transition (Byne et al., 2012). A delay of transition in rare circumstances may be considered if, for example, the TGD person is unable to engage with the process of transition or would be unable to manage aftercare following surgery, even with support. Where a delay in GAMS as a last resort has been found to be necessary, the HCP should offer resources and support to improve mental health and facilitate re-engagement with the GAMST process as soon as practicable…. Delaying access to GAMSTs due to the presence of mental health problems may exacerbate symptoms (Owen-Smith et al., 2018) and damage rapport; consequently, this should be done only when all other avenues have been exhausted."

DECL. OF DR. KARASIC
(No. 2:25-cv-00701-RSM-DWC) - 2

10. WPATH SOC 8 Statement 5.3d does not support denial of care to Ms. Buckingham.

11. Ms. Buckingham has a longstanding diagnosis of Gender Dysphoria, for which she is currently being treated with social accommodations and hormones. Dr. Weidow's assertion that it is "not possible" to make a definitive gender dysphoria diagnosis is belied by the fact that Ms. Buckingham receives this diagnosis with each hormone prescription, and there is no indication that her gender dysphoria has resolved; to the contrary she has continued to report symptoms of the diagnosis. There is no indication in Dr. Weidow's note that the diagnosis of Gender Dysphoria has been made repeatedly by other providers when prescribing hormones.

12. The fact that Dr. Weidow could not interview family members to obtain "collateral information" does not mean that Ms. Buckingham cannot be diagnosed with gender dysphoria, as Dr. Weidow has asserted. USAO_1456. The Gender Dysphoria criteria in DSM-5-TR include the presence of symptoms for at least 6 months. Ms. Buckingham has exhibited symptoms for longer than that in the presence of prison staff.

13. At USAO_1456, Dr. Weidow describes "a number of unaddressed concerns regarding this case and the care of inmate Buckingham." Dr. Weidow lists the presence of depression and a past diagnosis of Borderline Personality Disorder, disputed by the patient, as inconsistent with a diagnosis of Gender Dysphoria. USAO_1456. But Dr. Weidow also states that symptoms of a serious mood disorder "[do] not seem present on exam." The presence of co-occurring mental health symptoms is not inconsistent with a diagnosis of Gender Dysphoria. In fact, many people with a Gender Dysphoria diagnosis also have a history of a mood disorder diagnosis, and some have been given a personality disorder diagnosis, but neither precludes a Gender Dysphoria diagnosis.

14. Dr. Weidow concludes that "a distinct lack of [] evidence currently, primarily [Ms. Buckingham's lack of psychological stability], . . . will not allow [Dr. Weidow] to be supportive of [Ms. Buckingham's] current requests for surgeries. I do not see gender-affirming surgery in

DECL. OF DR. KARASIC
(No. 2:25-cv-00701-RSM-DWC) - 3

this case to be medically necessary, and I also do not see it as advisable." USAO_1456. This statement is neither supported by WPATH Standards of Care 8 nor DSM-5-TR.

15. While Dr. Weidow discusses a past history of suicidality, Dr. Weidow states that current mood is stable and does not note current suicidal risk. WPATH Standards of Care 8 criteria do not require "psychological stability," but rather that risks and benefits of care be weighed, including the risks of delaying or denying care. There is no discussion in Dr. Weidow's note of this consideration of the risks and benefits of providing vs. delaying or denying care. Dr. Weidow's note indicates that depression and suicidality have been issues in the past but are not active at time of exam.

16. WPATH Standards of Care 8, in the section cited by Dr. Weidow, does not support indefinite deferral of providing gender affirming medical care in those with co-occurring mental health conditions, but rather requires providing necessary support for the patient to get needed care.

17. Dr. Weidow states he "cannot confirm the diagnosis of Gender Dysphoria," but he is not "denying its possibility." USAO_1456. Dr. Weidow does not state the steps he recommends to resolve this, e.g., an evaluation by a provider with expertise in making this diagnosis, or any other next steps. Dr. Weidow does, however, conclude the note with the "Assessment," which gives Ms. Buckingham the diagnosis of Gender Dysphoria F64.0.

18. There is no record of an assessment for the medical necessity of facial feminization surgery, which would include a description of the symptoms Ms. Buckingham is experiencing in requesting consideration of this surgery and whether facial feminization surgery is indicated to address these symptoms.

Executed this 22nd day of December 2025, at Sonoma County, California.

By: _____
Dan H. Karasic, M.D